# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY MITCHELL, | Case No. _____ |
| *Plaintiff*, | |
| v. | **COMPLAINT** |
| RYAN COHEN, an individual; ROBINHOOD FINANCIAL LLC, a Delaware Limited Liability Company; ROBINHOOD SECURITIES, LLC, a Delaware Limited Liability Company; ROBINHOOD MONEY, LLC, a Delaware Limited Liability Company; THE DEPOSITORY TRUST & CLEARING CORPORATION, a New York Corporation; 20230930-DK-BUTTERFLY-1, INC., a New York Corporation doing business as BED BATH & BEYOND; OVERSTOCK.COM, INC., a Delaware Corporation doing business as  BED BATH & BEYOND; RC VENTURES LLC, a Delaware Limited Liability Company; SUE E. GOVE, an individual, | DEMAND FOR JURY TRIAL |
| *Defendants*. | |

ANTHONY MITCHELL ("Mitchell" or "Plaintiff"), hereby brings this action for violations of the federal securities laws and fraud against RYAN COHEN ("Cohen"), ROBINHOOD FINANCIAL LLC, ROBINHOOD SECURITIES, LLC, ROBINHOOD MONEY, LLC (Robinhood defendants hereafter collectively referred to as "Robinhood"), THE DEPOSITORY TRUST & CLEARING CORPORATION ("Depository Trust"), 20230930-DK-BUTTERFLY-1, INC. doing business as BED BATH & BEYOND ("BBB-1"), and

1

OVERSTOCK.COM, INC., doing business as  BED BATH & BEYOND ("BBB-2") (Bed Bath & Beyond defendants hereafter collectively referred to as "Bed Bath"), RC VENTURES LLC ("RC Ventures") and states as follows:

1.     Plaintiff incorporates herein by reference, the same as if set forth herein factual allegations against defendants containing in the Second amended class action complaint filed in the United States District Court District of Columbia case No. 1:22-cv-02541-TNM. A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

## NATURE OF THE ACTION

2.     This complaint is seeking to recover damages caused by Defendants' violations of the federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder. Plaintiff asserts claims against COHEN under Sections 9(a), 9(f), 10(b), 20(a) and 20(A) of the Exchange Act and Rule 10b-5, and against BED BATH under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5.

## PARTIES

3.     At all times mentioned in this Complaint Plaintiff ANTHONY MITCHELL is an individual residing in the city of Henderson, within the County of Clark, in the State of Nevada.

4.     Plaintiff is informed and believes and thereupon alleges that Defendant RYAN COHEN is the former CEO of Chewy, Inc., an online retailer of pet food and other pet-related products. Cohen currently serves as the Chairman of the Board of Directors of GameStop Corp. He also purports to be an activist investor with an alleged long-term

interest in turning around troubled companies.

5.     Plaintiff is informed and believes and thereupon alleges that Defendant ROBINHOOD FINANCIAL LLC is a company established in Delaware. Defendant may be served by its registered agent Incorporating Services, Ltd. at 3500 South DuPont Hwy. Dover, DE 19901.

6.     Plaintiff is informed and believes and thereupon alleges that Defendant ROBINHOOD SECURITIES, LLC is a company established in Delaware. Defendant may be served by its registered agent Incorporating Services, Ltd. at 3500 South DuPont Hwy. Dover, DE 19901.

7.     Plaintiff is informed and believes and thereupon alleges that Defendant ROBINHOOD MONEY, LLC is a company established in Delaware. Defendant may be served by its registered agent Incorporating Services, Ltd. at 3500 South DuPont Hwy. Dover, DE 19901.

8.     Plaintiff is informed and believes and thereupon alleges that Defendant THE DEPOSITORY TRUST & CLEARING CORPORATION is a company incorporated in New York with a principal place of business at 570 Washington Blvd, Jersey City, NJ 07310.

9.     Plaintiff is informed and believes and thereupon alleges that Defendant 20230930-DK-BUTTERFLY-1, INC. is a company incorporated in New York with a principal place of business at 650 Liberty Ave, Union, NJ 07083.

10.     Plaintiff is informed and believes and thereupon alleges that Defendant OVERSTOCK.COM, INC. is a company incorporated in Delaware.

COMPLAINT

11.    Defendant RC Ventures LLC ("RC Ventures") is a Delaware limited liability company founded and controlled by Cohen, with its principal place of business in Miami, Florida. Cohen used RC Ventures to purchase and sell Bed Bath's common stock and call options.

12.    Defendant Sue E. Gove ("Gove") served as the interim CEO of Bed Bath from June 2022 to October 2022. Gove was appointed as the permanent CEO of Bed Bath in October 2022 and currently serves in that role. Since May 2019, Gove has also served as a member of the Company's Board of Directors, including as the Chair of the Strategy Committee of the Board of Directors from March 2022 to June 2022. The Strategy Committee was responsible for evaluating the Company's options for buybuy BABY's future.

<u>JURISDICTION AND VENUE</u>

13.    The claims asserted herein arise under and pursuant to Sections 9(a), 9(f), 10(b), 20(a) and 20A of the Exchange Act (15 U.S.C. §§ 78(i), 78j(b), 78t(a) and 78t-1), and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

14.    This Court has jurisdiction over the subject matter of this Action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

15.    The Court has personal jurisdiction over Defendants for the following reasons: (1) Defendants are present within or have minimum contacts within the State of Nevada and the district of Delaware; (2) Defendants have purposefully availed themself of the privileges of conducting business in the State of Nevada and in this district; (3) Defendants have sought protection and benefit from the laws of the State of Nevada; and

(4) Defendants regularly conduct business within the State of Nevada and within this district, and Plaintiff's cause of action arises directly from Defendants' business contacts and other activities in the State of Nevada and in this district.

16.     Venue is proper in this District pursuant to Section 27(a) of the Exchange Act (15 U.S.C. §78aa(a)), and 28 U.S.C. § 1391(b). Many of the acts and conduct that constitute the violations of law complained of herein occurred in substantial part in this District, including the dissemination of materially misleading information on the Internet that was accessible in this District.

## **FACTUAL BACKGROUND**

17.     Between July 2022 and April 2023 Plaintiff purchased 8847 shares of Bed Bath stock ("BBBY shares") from Robinhood.

18.     On October 20, 2023, Plaintiff noticed that his 8847 shares were no longer in Robinhood's account and contacted Robinhood's support.

19.     Robinhood provided Plaintiff with a full accounting of his BBBY purchase history and informed him that his shares "hold no value" and that the instructions to remove the BBBY shares from the Robinhood platform were given to Robinhood investor relations from Depository Trust a few days prior.

20.     Plaintiff conducted an investigation and discovered that Defendants involved in the scheme to defraud Plaintiff as described in more detail below.

21.     Plaintiff discovered that the class lawsuit was filed in the United States District Court District of Columbia, case No. 1:22-cv-02541-TNM ("Class complaint"). The class complaint, factual allegations of which are incorporated herein, alleges among other

things the following:

22.     Bed Bath is a home goods retailer with a chain of big-box stores that sells products for the home such as bed linens, bath accessories, kitchen textiles, dinnerware and electric appliances. It also owns and operates a specialty retailer called buybuy BABY Inc. ("buybuy BABY"), which sells products meant for infants and children. Over the last few years, the Bed Bath has experienced a dramatic decline in sales and earnings, persistent losses, and a significant loss of market share to behemoths such as Amazon.com Inc. ("Amazon"), Walmart Inc. ("Walmart") and Target Corporation ("Target"). Bed Bath has effectively lost relevance with customers, and its poor financial performance has been accompanied by a lethal combination of sky-high debt and an endangered cash balance that has now left it days away from filing for bankruptcy.

23.     However, the severity of these problems was known to the Defendants with a high degree of specificity before the market was able to fully understand their implications, and billionaire Cohen used his access to Bed Bath executives and his information advantage to exit his large position in the Bed Bath at a substantial profit. Along the way, Cohen manipulated the market for Bed Bath securities to create liquidity and secretly sold the entirety of his interests in Bed Bath while abandoning ordinary investors, who looked to him for guidance.

24.     Cohen became one of the principal leaders of the "meme stock" movement. Meme stocks are stocks that gained viral popularity on discussion threads on Reddit and/ or social media platforms like Twitter, where online communities of retail investors dedicated their attention to particular stocks, sometimes for purposes of initiating a

squeeze on short investors and hedge funds, and other times based on genuine beliefs about a company's prospects. Cohen publicly embraced these retail investors, affirmatively told them that he was in the best position to look out for their long-term interests and that his turnaround strategies would be far more effective than anything conjured by more experienced executives with management responsibilities because they earned undeserved, risk-free and excessive compensation detached from actual results. By the time Cohen purchased nearly 10% of the Bed Bath's outstanding shares in March 2022, he was one of the key leaders of the meme stock movement. By his own admission, the mere disclosure of his interest in a particular company would encourage retail investors to purchase that stock and lead to an exponential rise in its price. Cohen had also tweeted about his investments to hundreds of thousands of followers and saw evidence of dramatic stock price movements solely due to his words and actions.

25.     In March 2022, after Cohen threatened to take control of Bed Bath's Board of Directors, Bed Bath quickly entered into a cooperation agreement (hereafter the "Cooperation Agreement") with him that required him to stand down in exchange for influence and access. Key terms of the Cooperation Agreement allowed Cohen to obtain three new seats on the Board, and outsized influence over a new Board Strategy Committee charged with evaluating options for buybuy BABY's future. buybuy BABY was then considered the "crown jewel" of Bed Bath, but the subsidiary's financial performance turned lackluster and its value greatly diminished right before Cohen formed a secret plan to dump all his holdings.

26.     Cohen was initially fixated on buybuy BABY, stating that he believed it was

worth at least several billion dollars, and that a sale or spinoff of this asset would be the solution to the Bed Bath's longstanding struggles with soaring debt and a deteriorating balance sheet. Unbeknownst to investors, but known to Cohen weeks before the Class Period commenced, the Bed Bath had rejected Cohen's proposal to sell or spinoff buybuy BABY because a serious liquidity crisis threatened its ability to remain a going concern. Investors did not learn all of these facts until after the Class Period ended and Cohen had already cleaned out his account.

27.     At the time he dumped his holdings, Cohen knew that Bed Bath's liquidity and credit crises had worsened beyond repair and that buybuy BABY's sale or spinoff was off the table. This caused Cohen to sour on Bed Bath's securities and sell his holdings, but he did not disclose these facts as he was required to do by the federal securities laws. Cohen knew that the Board had rejected his proposal to sell or spinoff buybuy BABY weeks before he formed a plan to liquidate his entire position, as demonstrated by the following facts:

- Cohen controlled multiple Board seats and was an active participant in Bed Bath's affairs and communicated with the Board and management about Bed Bath's strategy. For instance, Cohen's communication with the Board precipitated the termination of Bed Bath's previous Chief Executive Officer ("CEO") in June 2022;

- Also in June 2022, Bed Bath hired a consultant to focus on cash and balance sheet optimization, demonstrating that the Board and management were aware that problems with liquidity had worsened. The Strategy Committee, dominated by Cohen's appointees, would not overlook whether a sale of buybuy BABY enhanced or undermined the goals

of increasing cash and optimizing the balance sheet;

- On July 14, 2022, the Chairman of the Board of Directors told investors that the Strategy Committee, dominated by Cohen's Board nominees, had already studied the issue and "identified several options" for buybuy BABY. By that time, the value of buybuy BABY had already deteriorated to the point that its sale or spinoff would not resolve Bed Bath's financial problems. Cohen's appointees on the Strategy Committee and his communications with management gave him access to and knowledge of these facts;

- Cohen communicated with Bed Bath's Chief Financial Officer ("CFO") and other senior executives in conference calls;

- On the evening of August 16, 2022, after Cohen had already dumped most of his Bed Bath common stock, The Wall Street Journal (hereafter "The WSJ") reported that Bed Bath was "hunting" for an extension of an existing credit line that would provide hundreds of millions of dollars in relief and would be backed by an equity interest in buybuy BABY. This article was published in the print edition of the paper on the next day, when Cohen liquidated his remaining holdings in Bed Bath;

- On August 31, 2022, within two weeks of Cohen's sales, Bed Bath executed a final version of an amended loan agreement that contained extremely onerous restrictions preventing asset sales in excess of an aggregate amount of $10 million and locking up buybuy BABY as collateral to secure the obligations;

- Bed Bath has admitted that it had worked on this loan agreement for "several weeks," confirming that it was being finalized as Cohen was dumping shares and options on unsuspecting investors. News about the law firm hired by Bed Bath to advise on the loan

agreement emerged on the day Cohen revealed that he dumped his entire stake. The loan agreement involved negotiations between an administrative agent, sixteen different lenders, six different law firms, management, Bed Bath's Board (including Cohen's Board nominees) and other counterparties. It is inconceivable that the substance of the contract, including the covenants prohibiting Cohen's desired sale of buybuy BABY, was not known to Cohen at the time he sold his shares and options; and

- Subsequent reporting in the press in September 2022 confirmed that the expanded loan package was contingent on including buybuy BABY as collateral.

- Armed with this information, Cohen formed a plan to sell all his shares and options. But, knowing that this information would destroy retail investor interest in Bed Bath, starting on August 12, 2022, Cohen began to manipulate the market for Bed Bath securities by publicly encouraging retail investors to buy while he planned to sell. With misleading statements, filings, and a false Twitter post with a moon-emoji suggesting he believed Bed Bath's stock price was going "to the moon," he rallied hundreds of thousands of his followers to drive up its price.

- Investors unambiguously understood Cohen's moon-emoji tweet to mean that he expected Bed Bath's stock price to rise dramatically. As a result, trading volume and Bed Bath's stock price surged over the next few days. On August 15, 2022 after-market hours and on August 16, 2022, Cohen encouraged further buying by strategically filing delayed SEC Forms (which were due several months earlier and had nothing to do with any change in circumstances), both reminding investors that he was then a holder of more than 10% of Bed Bath's stock. Cohen subsequently admitted understanding (and on nine

previous occasions confirmed to him) that the price of Bed Bath's stock dramatically rises when he files these Forms because of how retail investors perceive his moves. As such, Cohen deliberately filed these Forms when he did in order to stimulate retail activity and increase liquidity to sell his own securities. In one of these filings, Cohen further failed to disclose that he had already formed a plan to sell Bed Bath securities in violation of the Exchange Act.

- After the market closed on August 16, 2022, Cohen submitted to the SEC a Form 144 regarding his intention to sell shares. While the SEC encourages filing these forms on its EDGAR system, which would immediately provide investors access, he instead submitted it by email, which the SEC publishes the following day or thereafter. Cohen's delay allowed him to surreptitiously liquidate his holdings at artificially high prices and volume, stoked by his encouragement that retail investors buy, not sell, Bed Bath shares. On August 17, 2022, after the market closed, Cohen's Form 144 was publicly released, and identified a "potential" plan to sell but was otherwise untruthful. In the Form 144, Cohen falsely stated that he had not sold any securities when the Form was submitted. However, Lead Plaintiff's review of intraday and aftermarket trade data demonstrates with certainty that Cohen had already sold massive amounts of Bed Bath securities at that time.

- On August 17, 2022, CNBC specifically asked Bed Bath to comment on the information disclosed in Cohen's Form 144 and its implications. Bed Bath did not candidly disclose the truth about Bed Bath's deteriorated relationship with Cohen, instead stating that it was "pleased to have reached a constructive agreement" with Cohen and his LLC, and had

"been working expeditiously over the past several weeks with external financial advisors and lenders on strengthening our balance sheet." But the agreement with Cohen was anything but "constructive" at the time, since he had sold all of his holdings, because of the strategic plans that Bed Bath had chosen with the very "financial advisors and lenders" Bed Bath referenced.

- On August 18, 2022, after the market closed, Cohen finally disclosed that he had sold his entire stake in Bed Bath. As a result, Bed Bath's stock price plunged over the next three trading days. It closed at $11.03 on August 19, 2022 from its previous day's closing price of $18.55, on heavy trading volume, dropped further to close at $9.24 on August 22, 2022, and again slid to close at $8.78 on August 23, 2022.

28.     More detailed Cohen's Pump-and-Dump Scheme is described in the class complaint attached as **Exhibit A**.

29.     On August 17, 2022, CNBC published a story entitled "Bed Bath & Beyond shares fall after investor Ryan Cohen reveals intent to sell entire stake." The centerpiece of the story was a report on Cohen's Form 144, describing its contents, and speculating that "[i]f Cohen hypothetically managed to sell all of his Bed Bath common stock at Wednesday's closing price of $23.08, he'd net about $60 million, according to a CNBC calculation. Cohen's hypothetical profits could [sic] [be] larger if he also sold the options contracts." Lauren Thomas and Jesse Pound, Bed Bath & Beyond shares fall after investor Ryan Cohen reveals intent to sell entire stake, CNBC, (August 17, 2022, 4:41 PM), https://www.cnbc.com/2022/08/17/bed-bath-beyond-shares-fallmore-than-10percent-after-investor-ryan-cohen-reveals-intent-to-sell-entire-stake.html. CNBC directly reached

out to Bed Bath for comment on Cohen's Form 144. In response, an emailed statement attributed to a woman with authority to speak on behalf of Bed Bath said that Bed Bath was "pleased to have reached a constructive agreement with RC Ventures in March and are committed to maximizing value for all shareholders. Specifically, we have been working expeditiously over the past several weeks with external financial advisors on strengthening our balance sheet."

30.    On August 18, 2022, before the market opened, Bed Bath filed a Current Report on Form 8-K, in which it disclosed that Bed Bath had made the following statements in response to media inquiries on August 17, 2022:

> We were pleased to have reached a constructive agreement with RC Ventures in March and are committed to maximizing value for all shareholders. We are continuing to execute on our priorities to enhance liquidity, make strategic changes and improve operations to win back customers, and drive cost efficiencies; all to restore our company to its heritage as the best destination for the home, for all stakeholders. Specifically, we have been working expeditiously over the past several weeks with external financial advisors and lenders on strengthening our balance sheet, and Bed Bath will provide more information in an update at the end of this month.

31.    As the Interim CEO of Bed Bath in August 2022, Sue E. Gove ("Gove") had ultimate authority over the statements identified in Paragraphs 27 and 28, and authorized their release and dissemination. In June 2022, just before her appointment as Interim CEO, Bed Bath entered into a settlement agreement for past improper practices acknowledging its CEO's "responsibility to oversee the accuracy, completeness and timeliness" of "material public disclosures made by Bed Bath to its security holders or the investment community." The settlement agreement, which Bed Bath posts on the

corporate governance portion of its website, also requires the CEO and CFO to comply with policies and procedures set by a Disclosure Committee "to ensure that information required to be disclosed by Bed Bath in its filings with the SEC and other material information that Bed Bath discloses to the investment community is reported accurately and timely." Thus, Gove's specific responsibilities required her to oversee the contents of the August 17, 2022 emailed statement to CNBC and the August 18, 2022 Form 8-K. In addition, Gove, as Chairman of the Strategy Committee until July 2022, knew that material, nonpublic information about Bed Bath was shared with Cohen.

32.    The statements identified in Paragraphs 27 and 28 were materially misleading when made because Bed Bath omitted to disclose that Cohen and RC Ventures had already formed a plan to liquidate all their holdings and, in fact, had already liquidated the vast majority if not all of their holdings before these statements were made. In addition, by speaking about Bed Bath's attempt to "enhance liquidity" and seek additional financing to "strengthen" its balance sheet, Bed Bath put these issues at play but failed to disclose that the 2022 Credit Agreement eliminated the strategic plan vigorously advanced by Cohen, undermining any incentive for him to remain a holder of Bed Bath securities. As a result, Bed Bath's relationship with Cohen was no longer "constructive," and Cohen's decision to exit from his positions undermined Bed Bath's stated goal of "maximizing value for all shareholders."

33.    Indeed, reactions from retail investors confirm the materially misleading nature of Bed Bath's statements identified in Paragraphs 179 and 180. At 8:01 PM on August 17, 2022, a user posted a thread on r/WallStreetBets entitled "$BBBY AND RYAN COHEN

UPDATE!" that posted a link to an article published by Reuters regarding Bed Bath's statements identified in Paragraphs 27 and 28. The thread received over 1,800 upvotes. A comment on the thread stated: "Very nice. Actual bullish news right after to counter that pathetic misleading headline earlier about RC liquidating. Next two days should be interesting after this dip." Another user named u/Glass_Cellist_345 interpreted Bed Bath's statements to mean that "they've agreed to leverage buy buy baby to bring in Capitol. BULLISH AF!" Another user commented: "To the moon baby[.]" And user u/Jfri33ss asked whether "[t]his means buy BBBY… Right?"

34.     The statements identified in Paragraphs 27 and 28 were recklessly misleading when made for, at least, the following reasons:

A)     Gove and other senior executives knew or recklessly disregarded that Cohen had lost interest in Bed Bath securities because the 2022 Credit Agreement effectively destroyed Cohen's turnaround strategy and his ultimate interest in retaining his holdings;

B)     Gove and other senior executives knew or recklessly disregarded the facts described in Paragraph 184 (A) because the Strategy Committee of the Board of Directors, which Gove chaired, and other senior executives at Bed Bath informed Cohen about the options considered for buybuy BABY's future before Cohen liquidated the entirety of his interests in Bed Bath securities; and

C)     Even if Bed Bath or Gove did not know that Cohen had already formed a plan to sell the entirety of his holdings, their failure to check whether Cohen had done so or otherwise investigate or question whether he rendered Bed Bath's statements recklessly misleading when made.

35.     Due to the wrongful conduct detailed herein, Plaintiff suffered significant losses.

## COUNT I
### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b) Promulgated Thereunder Against Defendants Cohen, RC Ventures, Bed Bath and Gove)

36.     Plaintiff incorporates the above paragraphs herein by reference.

37.     Defendants made various misleading statements of material fact and omitted to state material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading. Defendants' misleading statements were designed to, and, did: (i) deceive the investing public, including Plaintiff, as alleged herein; (ii) artificially inflate and maintain the market price of Bed Bath's securities; and (iii) cause Plaintiff to purchase or otherwise acquire Bed Bath's shares and options at artificially inflated prices.

38.     Specifically, Cohen made misleading statements on Twitter and filed documents with the SEC that contained false and misleading statements as particularized above.

39.     Bed Bath made misleading statements on August 17, 2022, and August 18, 2022, as particularized in previous paragraphs and in class complaint attached as **Exhibit A**.

40.     Cohen and Bed Bath either had actual knowledge of the materially misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff or, in the alternative, acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially misleading nature of the statements made, although such facts were readily available to them. In addition to the facts alleged herein demonstrating a strong inference of scienter, certain information showing that Defendants acted knowingly or with reckless disregard for the

truth is peculiarly within these Defendants' knowledge and control. As the senior managers and/or directors of Bed Bath, Defendants had knowledge of the details of Bed Bath's internal affairs that virtually all investors did not.

41.     Defendants had a duty to disseminate timely, accurate, and truthful information regarding Bed Bath's business, operations, management and prospects when they made positive representations in public. As a result of the dissemination of the aforementioned misleading statements and material omissions, the market price of Bed Bath's securities was artificially inflated.

42.     In ignorance of the adverse facts concerning Bed Bath's operations, management and prospects, which were concealed by the misrepresentations and omissions alleged herein, Plaintiff purchased or otherwise acquired Bed Bath's securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

43.     Bed Bath's securities were traded on an active and efficient market. Plaintiff directly relying on the materially misleading statements described herein, and/or relying upon the integrity of the market, purchased or otherwise acquired shares of Bed Bath's securities at prices artificially inflated by Defendants' wrongful misconduct. Had Plaintiff known the truth, he would not have purchased or otherwise acquired said securities or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff the true value of Bed Bath's securities was substantially lower than the prices paid by Plaintiff. The market price of

Bed Bath's securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff.

44.     By reason of the conduct alleged herein, Cohen and Bed Bath either knowingly or recklessly violated Section 10(b) of the Exchange Act and Rule 10b-5(b) promulgated thereunder.

45.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff suffered damages in connection with his respective purchases, acquisitions and sales of Bed Bath's securities. Cohen and Bed Bath are thus liable for damages in connection with these losses under Section 10(b) of the Exchange Act and Rule 10b-5(b) promulgated thereunder.

## <u>COUNT II</u>
**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) & (c) Promulgated Thereunder Against Defendant Cohen)**

46.     Plaintiff incorporates the above paragraphs herein by reference.

47.     Cohen employed devices and artifices to defraud, and carried out a plan, scheme and course of conduct which was intended to, and did: (a) deceive the investing public, including Plaintiff, as alleged herein; and (b) caused Plaintiff to purchase Bed Bath's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, made the misleading statements alleged below and in the class complaint incorporated herein and attached as Exhibit A, and engaged in additional unlawful acts as alleged herein.

48.     Cohen directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct

to conceal a plan to sell Bed Bath's common stock and call options based on material, nonpublic information that was known to Cohen before it was known, or could be known, to other investors.

49.     Specifically, Cohen employed the following devices, schemes and artifices to defraud while in possession of material adverse non-public information and engaged in the following acts, practices and a course of conduct in an effort to secretly sell Bed Bath's securities and conceal their sales from other investors and the market:

- Cohen secretly instigated and coordinated a campaign to promote Bed Bath securities while they had already planned to sell Bed Bath securities, knowing that retail investors would understand Cohen's statements and conduct as an encouragement to purchase Bed Bath securities;

- Cohen leveraged Cohen's Twitter account and used Cohen's notoriety amongst retail investors as devices or artifices to defraud in furtherance of their scheme;

- On August 15, 2022, and August 16, 2022, Cohen used Form 3 and an amendment to Schedule 13D as artifices to deceive and trick investors. Cohen purposely filed Form 3 and an amendment to Schedule 13D to stimulate demand in Bed Bath's securities knowing that the mere act of filing these documents with the SEC would increase trading activity and cause the price of Bed Bath's securities to rise. Cohen delayed the filing of these Forms and failed to timely file them when he was required to do so in violation of the Exchange Act even though he knew or recklessly disregarded that he was required to file them no later than 10 days after Bed Bath's Annual Report was filed with the SEC on Form 10-K in April 2022;

- Cohen formed a plan to sell his holdings before he promoted the purchase of Bed Bath's securities after using material, nonpublic information about Bed Bath's desperate need for financing and its deteriorating liquidity before the market was aware of the severity of these issues. Cohen learned this inside information from his direct communications with the Strategy Committee of Bed Bath's Board of Directors and senior executives of Bed Bath, including the CFO who oversaw the negotiations with lenders and signed the 2022 Credit Agreement in August 2022. Cohen used this material, nonpublic information to his advantage and to the detriment of other investors to manipulate the market of Bed Bath's securities and create liquidity that would allow him to sell his own shares;

- Cohen purposely sent his Form 144 to the SEC after the market had closed and in a manner designed to ensure that its release would be delayed, so that he could secretly sell his entire stake before the market learned about his sales. On the Form 144, Cohen falsely represented that he had not yet sold any Bed Bath securities even though he had engaged in the act of ordering his broker to sell all or most of his holdings before he sent Form 144 to the SEC on the evening of August 16, 2022; and

- Cohen engaged in insider trading and earned over $188 million from his sales of Bed Bath's securities for an approximate profit of over $68 million. Cohen's insider sales also appear to be coordinated with Arnal's insider sales on the same day.

50.    As a result of Cohen's fraudulent scheme and failure to disclose material facts, as set forth above, the market price for Bed Bath's securities was artificially inflated.

51.    In ignorance of the fact that market prices of Bed Bath's publicly traded securities were artificially inflated, and relying upon the integrity of the market in which Bed

Bath's securities trade, and/or on the absence of material adverse information concealed from them as detailed herein, Plaintiff acquired Bed Bath's common stock and options at artificially high prices and were damaged thereby.

52.     At the time Cohen orchestrated this fraudulent scheme, Plaintiff was ignorant of its nature or existence. Had Plaintiff known the truth about this unlawful scheme, Plaintiff would not have purchased or otherwise acquired Bed Bath's securities, or, if he had acquired such securities, he would not have done so at the artificially inflated prices at which they did.

53.     As a direct and proximate result of Cohen's wrongful scheme, Plaintiff suffered damages in connection with his respective purchases and sales of Bed Bath's securities.

54.     By virtue of the foregoing, Cohen violated Section 10(b) of the Exchange Act, and Rule 10b-5(a) & (c) promulgated thereunder and are liable to Plaintiff who has been damaged as a result of such violations.

## COUNT III
**(Violations of Section 20(a) of the Exchange Act Against Defendant Cohen)**

55.     Plaintiff incorporates the above paragraphs herein by reference.

56.     Cohen participated in the operation and management of RC Ventures. Cohen conducted and participated, directly and indirectly, in the conduct of the business affairs of RC Ventures. Because of his senior position, Cohen knew or recklessly disregarded the adverse non-public information that RC Ventures concealed from investors.

57.     Gove participated in the operation and management of Bed Bath. Gove conducted and participated, directly and indirectly, in the conduct of the business affairs of Bed Bath.

Because Gove served as Bed Bath's CEO Gove knew or recklessly disregarded the adverse non-public information that Bed Bath concealed from investors.

58.     As officers and/or directors of RC Ventures and Bed Bath respectively, Cohen and Gove had a duty to disseminate accurate and truthful information, and to correct promptly any public statements, which had become materially misleading.

59.     Because of their positions of control and authority as senior officers, Cohen and Gove were able to, and did, control the contents of their direct communications with investors, which Cohen and Bed Bath disseminated in the marketplace concerning RC Ventures' and Bed Bath's operations, management, financial condition and prospects. Cohen and Gove exercised their power and authority to cause RC Ventures and Bed Bath respectively to engage in the wrongful acts complained of herein. Cohen and Gove, therefore, were "controlling persons" of RC Ventures and Bed Bath respectively within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Bed Bath's securities.

60.     By reason of their senior management positions and/or being controlling persons of RC Ventures or Bed Bath, Cohen and Gove had the power to direct the actions of, and exercised the same to cause, RC Ventures and Bed Bath to engage in the unlawful acts and conduct complained of herein. Each of these Defendants exercised control over the general operations of RC Ventures or Bed Bath and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff complains.

61.     By reason of the above conduct, Cohen and Gove are liable pursuant to Section

20(a) of the Exchange Act for the violations committed by RC Ventures and Bed Bath, respectively.

## COUNT IV
### (Violations of Section 9(a)(2) and 9(f) of the Exchange Act Against Defendants Cohen and RC Ventures)

62.   Plaintiff incorporates the above paragraphs herein by reference.

63.   Defendants Cohen and RC Ventures, directly or indirectly, alone or with one or more other persons, effected a series of transactions in Bed Bath securities, as outlined above, creating actual or apparent active trading activity in such securities, raising the price of such securities, for the purpose of inducing the purchase of Bed Bath securities by others.

64.   Defendants Cohen and RC Ventures willfully engaged in these transactions for the purpose of inducing Plaintiff to purchase Bed Bath securities.

65.   As a direct and proximate result of Defendants Cohen's and RC Ventures' wrongful conduct, Plaintiff has suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Bed Bath securities.

66.   Had Plaintiff known that the prices for Bed Bath securities were artificially and falsely inflated due to Defendants Cohen's and RC Ventures' conduct, he would not have purchased the securities at the prices they paid, or at all.

## COUNT V
### (Violations of Section 9(a)(3) and 9(f) of the Exchange Act Against Defendants Cohen and RC Ventures)

67.   Plaintiff incorporates the above paragraphs herein by reference.

68.   Defendants Cohen and RC Ventures circulated and disseminated materially false

COMPLAINT

and misleading statements as alleged in this Complaint and in Class complaint attached as Exhibit A, which they knew or deliberately disregarded were misleading in that they contained misrepresentations or failed to disclose material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading.

69.    Defendants Cohen and RC Ventures circulated and disseminated the false and misleading statements with the purpose and to the effect that the price of Bed Bath securities would or was likely to rise.

70.    Defendants Cohen and RC Ventures willfully made false and misleading statements for the purpose of inducing Plaintiff to purchase Bed Bath securities.

71.    As a direct and proximate result of Defendants Cohen's and RC Ventures' wrongful conduct, Plaintiff has suffered damages in that, in reliance on the integrity of the market, he paid artificially inflated prices for Bed Bath securities.

72.    Had Plaintiff known that the prices for Bed Bath securities were artificially and falsely inflated due to Defendants Cohen's and RC Ventures' conduct, he would not have purchased the securities at the prices they paid, or at all.

## <u>COUNT VI</u>
**(Violations of Section 9(a)(4) and 9(f) of the Exchange Act Against Defendants Cohen and RC Ventures)**

73.    Plaintiff incorporates the above paragraphs herein by reference.

74.    Defendants Cohen and RC Ventures had authority over or controlled the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and

failed to disclose material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading.

75.     Defendant Cohen's and RC Ventures' materially false and misleading statements had the purpose and effect of inflating the price of Bed Bath securities.

76.     Defendants Cohen and RC Ventures also made materially false and misleading statements for the purpose of inducing Plaintiff to purchase Bed Bath securities.

77.     Defendants Cohen and RC Ventures willfully made false and misleading statements for the purpose of inducing Plaintiff to purchase Bed Bath securities.

78.     In reliance on Defendants Cohen's and RC Ventures' materially false and misleading statements, Plaintiff purchased Bed Bath securities at artificially inflated prices.

79.     As a direct and proximate result of Defendants Cohen's and RC Ventures' wrongful conduct, Plaintiff was damaged thereby. Had Plaintiff known that Defendants Cohen's and RC Ventures' statements were materially false and misleading, he would not have purchased the securities at the prices they paid, or at all.

## <u>COUNT VII</u>
### (Violations of Section 20A of the Exchange Act Against Defendants Cohen and RC Ventures)

80.     Plaintiff incorporates by reference and realleges the allegations above, as if fully set forth herein.

81.     This Count is asserted for violations of Section 20A of the Exchange Act, 15 U.S.C. §78t-1, by Defendants Cohen and RC Ventures, who sold Bed Bath securities while in possession of material, non-public information, as alleged herein, including

COMPLAINT

specific facts about Bed Bath's exponential liquidity crisis that resulted in a desperate attempt to seek additional loans after pledging its interests in buybuy BABY, which destroyed Cohen's interest in Bed Bath.

82.    These specific facts were known to Cohen before they were known to other investors and the market and before Cohen engaged in a scheme to pump and dump Bed Bath's securities.

83.    Section 20A(a) of the Exchange Act provides that: Any person who violates any provision of [the Exchange Act] or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information shall be liable in an action in any court of competent jurisdiction to any person who, contemporaneously with the purchase or sale of securities that is the subject of such violation, has purchased (where such violation is based on a sale of securities) or sold (where such violation is based on a purchase of securities) securities of the same class.

84.    As set forth herein, Cohen and RC Ventures violated Section 10(b), Section 9(a) and Section 9(f) of the Exchange Act for the reasons stated in Counts I through VI above. Additionally, Cohen and RC Ventures violated multiple provisions of the Exchange Act while in possession of material, non-public adverse information concerning Bed Bath.

85.    Cohen's and RC Ventures' sales of Bed Bath securities made between August 16, 2022, and August 17, 2022, were made contemporaneously with Plaintiff's purchases of Bed Bath securities, which were made between July 2022 and April 2023. Plaintiff who purchased Bed Bath securities contemporaneously with Defendants Cohen and RC Ventures have suffered damages.

86.     By reasons of the violations of the Exchange Act alleged herein, Defendants Cohen and RC Ventures are liable to Plaintiff who purchased shares of Bed Bath contemporaneously with Defendants Cohen's and RC Ventures' sales of Bed Bath securities.

87.     Plaintiff, who purchased contemporaneously with Defendants Cohen's and RC Ventures' insider sales of Bed Bath securities, seek disgorgement by Defendants Cohen and RC Ventures of profits and gains from Defendants Cohen's and RC Ventures' transactions.

88.     This Action was brought within five years after the date of the last transaction which is the subject of Defendants Cohen's and RC Ventures' violations of Section 20A.

## COUNT VIII

(Breach of Contract – Against Defendants Robinhood and Depository Trust)

89.     Plaintiff incorporates by reference and realleges the allegations above, as if fully set forth herein.

90.     Plaintiff has fulfilled all of his obligations under the Agreement and is not in breach of any contract or agreement with Defendants Robinhood and Depository Trust.

91.     Defendants Robinhood and Depository Trust have materially breached the Agreement by removing Plaintiff's shares from the Robinhood's account.

92.     As a direct and proximate result of Defendants' breach of contract, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

## COUNT IX

(Breach of Covenant of Good Faith and Fair Dealing – Against Defendants Robinhood and Depository Trust)

COMPLAINT

93.     Plaintiff incorporates by reference and realleges the allegations above, as if fully set forth herein.

94.     Implied in all contracts governed by the Uniform Commercial Code is a covenant of good faith and fair dealing, which obligates the parties to act in good faith, to use their best efforts to deal fairly with one another, and to avoid impeding the other party from obtaining the benefits of the contract.

95.     Defendant Robinhood based on Depository Trust's instruction, improperly removed Plaintiff's shares from Robinhood's account.

96.     Buy their conduct set forth above, Defendants Robinhood and Depository Trust have breached the covenant of good faith and fair dealing and have wrongfully deprived, impaired, and injured Plaintiff's rights, benefits and full value of Plaintiff's property despite Plaintiff's performance of all of his contractual obligations owed to Defendant.

COUNT X
(Unjust Enrichment Against Overstock.com, Inc.)

97.     Plaintiff incorporates by reference and realleges the allegations above, as if fully set forth herein.

98.     After Bed Bath and Beyond was removed from the NYSE stock market - Overstock.com changed its name to Beyond Inc. and adopted the Bed Bath & Beyond logo and website bedbathandbeyond.com. Overstock.com continued to sell shares of Bed Bath & Beyond.

99.     At all times relevant to this litigation, Defendant Overstock.com, Inc. owed a legal duty to Plaintiff to not unfairly or unduly take advantage of Plaintiff or commit

wrongful acts in order to unjustly enrich itself at Plaintiff's expense or at the expense of Plaintiff's property or financial interests.

100.   During the relevant period alleged in the complaint, Defendant Overstock.com unjustly enriched itself by wrongfully converting, taking, utilizing or managing the property and financial interests of Plaintiff.

101.   Such acts and omissions leading to Defendant Overstock.com's unjust enrichment was the actual and proximate cause of harm to Plaintiff.

102.   Accordingly, Defendant Overstock.com is liable in damages to Plaintiff in an amount to be proven at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Requiring Defendants to pay damages sustained by Plaintiff by reason of the acts and transactions alleged herein;

B. Awarding Plaintiff prejudgment and post judgment interest, as well as his reasonable attorneys' fees, expert fees and other costs; and

C. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.


Dated: May 29, 2024                    Respectfully submitted,

                                       _____

                                       ***ANTHONY MITCHELL, pro se***

COMPLAINT