Bradley Austin (Nevada Bar #13064)
SNELL & WILMER L.L.P.
1700 S Pavilion Center Drive, Suite 700
Las Vegas, NV 89135
Tel.  702.784.5200
Fax.  702.784.5252
Email:  baustin@swlaw.com

Jared M. Gerber (*Pro Hac Vice application forthcoming*)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Email: jgerber@cgsh.com

*Attorneys for Sue Gove*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY MITCHELL,<br><br>                              Plaintiff,<br><br>                    v.<br><br>RYAN COHEN, an individual; ROBINHOOD FINANCIAL LLC, a Delaware Limited Liability Company; ROBINHOOD SECURITIES, LLC, a Delaware Limited Liability Company; ROBINHOOD MONEY, LLC, a Delaware Limited Liability Company; THE DEPOSITORY TRUST & CLEARING CORPORATION, a New York Corporation; 20230930-DK-BUTTERFLY-1, INC., a New York Corporation doing business as BED BATH & BEYOND; OVERSTOCK.COM, INC., a Delaware Corporation doing business as BED BATH & BEYOND; RC VENTURES LLC, a Delaware Limited Liability Company; SUE E. GOVE, an individual,<br><br>                              Defendants. | Case No. 2:24-cv-01042-RFB-DJA<br><br>**DEFENDANT SUE GOVE'S MOTION TO DISMISS THE COMPLAINT** |

**DEFENDANT SUE GOVE'S**

**<u>MOTION TO DISMISS THE COMPLAINT</u>**

Pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6), and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, Defendant Sue Gove ("Gove"), by her undersigned counsel, hereby respectfully moves this Court to dismiss with prejudice the claims asserted against her in the Complaint (ECF No. 7) (the "Complaint") filed by Plaintiff Anthony Mitchell ("Plaintiff"). This Motion is supported by the accompanying Memorandum of Points and Authorities. Given that identical claims have been dismissed against Gove in a related action, Gove does not believe that oral argument is necessary in this *pro se* action but would be prepared to provide it should this Court find it beneficial.

Dated: November 6, 2024               SNELL & WILMER L.L.P.

                                       <u>/s/ Bradley Austin</u>
                                       1700 S Pavilion Center Drive, Suite 700
                                       Las Vegas, Nevada 89135

                                       Jared M. Gerber (*Pro Hac Vice application*
                                       *forthcoming*)
                                       CLEARY GOTTLIEB STEEN & HAMILTON
                                       LLP
                                       One Liberty Plaza
                                       New York, New York 10006

                                       *Attorneys for Sue Gove*

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In this securities fraud action, *pro se* plaintiff Anthony Mitchell expressly "incorporates [] by reference" each and every "factual allegation[] against defendants contain[ed] in the Second amended class action complaint filed in the United States District Court [for the] District of Columbia case No. 1:22-cv-02541-TNM," a putative securities class action concerning meme-stock investing in Bed Bath and Beyond Inc. ("Bed Bath" or the "Company"). ECF No. 7 ("Compl.") ¶ 1. Although Plaintiff incorporates that complaint in its entirety, and even attaches it as an exhibit to his Complaint in this matter, he fails to inform the Court of one highly significant fact about it: the court presiding over that action dismissed <u>with prejudice</u> all of the claims asserted against Defendant Sue Gove ("Gove"), the former CEO of Bed Bath, finding that the complaint did not identify any "false, misleading, or actionable" statement by Gove and that "she had no reason to hide [anything] from investors." *In re Bed Bath & Beyond Corp. Sec. Litig.*, 687 F.Supp.3d 1, 8-10 (D.D.C. 2023). Plaintiff here presents no additional factual allegations in support of those claims against Gove, and those copied claims should therefore be dismissed with prejudice for the same reasons.

## FACTUAL BACKGROUND

### I.     BED BATH AND RYAN COHEN

Bed Bath was a home goods retailer that sold products such as "bed linens, bath accessories, kitchen textiles, dinnerware, and electric appliances." Compl. ¶ 22. It also owned and operated buybuy BABY, Inc. ("buybuy BABY"), a specialty retailer that sold products for infants and children. *Id.* Plaintiff alleges that, "[o]ver the last few years, [] Bed Bath has experienced a dramatic decline in sales and earnings, persistent losses, and a significant loss of market share." Compl. ¶ 22. Defendant Sue Gove "served as the interim CEO of Bed Bath from June to October 2022." Compl. ¶ 12.

In the beginning of 2022, Defendant Ryan Cohen ("Cohen") purchased about 10% of Bed Bath's outstanding shares through his investment company RC Ventures LLC ("RC Ventures"). Compl. ¶ 11, 24. Cohen is an entrepreneur and the former CEO of pet e-commerce company Chewy, Inc. Compl. ¶ 4. Plaintiff alleges that "Cohen became one of the principal leaders of the 'meme

stock' movement," which involved "online communities of retail investors dedicat[ing] their attention to particular stocks, sometimes for purposes of initiating a squeeze on short investors and hedge funds, and other times based on genuine beliefs about a company's prospects."  Compl. ¶ 24.

After Cohen acquired his Bed Bath shares in early 2022, he was allegedly "initially fixated on buybuy BABY, stating that he believed it was worth at least several billion dollars, and that a sale or spinoff of this asset would be the solution to the Bed Bath's longstanding struggles."  Compl. ¶ 26.  That March, Cohen reached a cooperation agreement with Bed Bath, pursuant to which Cohen agreed to "stand down" from any alleged attempt to take control of the Company.  Compl. ¶ 25.  In exchange, Bed Bath agreed to add three new directors nominated by Cohen.  *Id.*

## II.  BED BATH'S CONTINUED FINANCIAL STRUGGLES AND COHEN'S SUBSEQUENT SALE OF HIS BED BATH SHARES

The Complaint alleges that Bed Bath's financial results continued to deteriorate after Cohen's investment.  Compl. ¶ 27.  Against this backdrop, in August 2022, Cohen allegedly began to "manipulate the market for Bed Bath securities by publicly encouraging retail investors to buy while he planned to sell."  Compl. ¶ 27.  This alleged manipulation was purportedly undertaken by means of "misleading statements, filings, and a false Twitter post with a moon-emoji suggesting he believed Bed Bath's stock price was going 'to the moon;'" as a result, the Complaint suggests that Cohen "rallied hundreds of thousands of his followers to drive up its price."  *Id.*  Subsequently, after the close of trading on August 15, 2022, Cohen filed certain "SEC Forms" concerning his share ownership, which allegedly "stimulate[d] retail activity and increase[d] liquidity to sell his own securities."  *Id.*  Purportedly as a result of meme investors' positive reaction to Cohen's filings, Bed Bath's stock price "surged" during this period.  *Id.*  On August 16 and 17, with the stock price allegedly increased by these actions by Cohen, Cohen privately sold all of his shares of Bed Bath stock, "for an approximate profit of over $68 million."  Compl. ¶¶ 27, 49.

After the close of trading on August 17, 2022, a Form 144 that Cohen had submitted to the SEC the prior day was released to the public.  Compl. ¶ 27.  That Form 144 indicated that Cohen had not sold any Bed Bath securities during the prior three months, but disclosed a "potential plan to sell" his shares.  Compl. ¶¶ 27, 49.  That filing created uncertainty about Cohen's plans, as members of

the media speculated that Cohen may have "hypothetically managed to sell all of his Bed Bath common stock" on August 17.  Compl. ¶ 29.  In response to press inquiries about Cohen's filing, Bed Bath did not comment on whether Cohen had sold his shares or would sell his shares, but instead stated that it was "pleased to have reached a constructive agreement with RC Ventures in March and [was] committed to maximizing value for all shareholders."  Compl. ¶¶ 27, 29, 30.  Bed Bath further stated that it had "been working expeditiously over the past several weeks with external financial advisors and lenders on strengthening [its] balance sheet," and that it would "provide more information in an update at the end of this month."  *Id.*

After the market closed on August 18, 2022, Cohen publicly disclosed for the first time that he had sold his entire stake in Bed Bath.  Compl. ¶ 27.  Over the next three trading days, Bed Bath's stock price dropped from $18.55 to $8.78.  Compl. ¶ 27.

### III.    THE PRIOR SECURITIES CLASS ACTION AND THE FILING OF THIS ACTION

On August 23, 2022, a putative securities class action was filed on behalf of Bed Bath investors in the United States District Court for the District of Columbia.  Compl., *In re Bed Bath & Beyond Corp. Sec. Litig.*, No. 1:22-cv-02541-TNM (D.D.C. Aug. 23, 2022) (the "Securities Class Action").   The operative Second Amended Complaint ("SAC") in the Securities Class Action primarily alleged across its first 66 pages and 178 paragraphs that "Cohen manipulated the market for Bed Bath securities" from August 12, 2022 to August 18, 2022 (the "Class Period") to "create liquidity and secretly s[ell] the entirety of his interests in the Company" before the Company released negative financial news during subsequent weeks, "while abandoning ordinary investors, who looked to him for guidance."  *See* Second Amended Complaint, *In re Bed Bath & Beyond Corp. Sec. Litig.*, No. 1:22-cv-02541-TNM, ¶ 3 (D.D.C Jan. 30, 2023), ECF No. 66, ("SAC").  On that basis, the SAC alleged that Cohen and RC Ventures violated Section 9 of the Exchange Act of 1934 (the "Exchange Act") by committing market manipulation, Section 20A of the Exchange Act by engaging in insider trading, and Sections 10(b) and 20(a) of the Exchange Act by making the allegedly fraudulent tweet and SEC filings discussed above.  SAC ¶¶ 222, 230–38, 240, 246–71.  With respect to Gove, the SAC only claimed in a passing 3 pages and 6 paragraphs that Bed Bath's statements on August 17 and 18—that it was pleased to reach the cooperation agreement with Cohen in March—were false in

1    violation of Sections 10(b) and 20(a) of the Exchange Act because Bed Bath and Gove somehow

2    knew or should have known that Cohen had already "secretly" sold his shares in the Company.  SAC

3    ¶¶ 223, 241.  Crucially, however, the District Court granted Gove's motion to dismiss those claims

4    in their entirety and with prejudice, finding that the SAC failed to plead the necessary elements of

5    falsity and scienter.  *In re Bed Bath & Beyond Corp. Sec. Litig.*, 687 F.Supp. 3d 1, 8-10 (D.D.C.

6    2023).

7         The complaint in this *pro se* action was filed on May 29, 2024, by an individual investor who

8    claims to have purchased 8847 shares of Bed Bath stock from Robinhood between July 2022 and

9    April 2023.  Compl. ¶ 27.  Notwithstanding that the claims against Gove in the Securities Class

10   Action were dismissed in their entirety with prejudice, Plaintiff incorporated those claims by

11   reference into the Complaint here.

12                                    **ARGUMENT**

13        "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to

14   state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

15   (citation omitted).  This requires the plaintiff to "plead[] factual content that allows the court to draw

16   the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Thus, even

17   under Rule 8, "[a] pleading that offers labels and conclusions . . . will not do," "[n]or does a complaint

18   suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.*  Fraud allegations

19   must also satisfy Rule 9(b), which requires a plaintiff to "state with particularity the circumstances

20   constituting fraud," Fed. R. Civ. P. 9(b), including the "who, what, when, where, and how of the

21   misconduct charged."  *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019)

22   (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).  In addition, securities

23   fraud actions must meet the heightened pleading requirements of the PSLRA, which require that

24   "complaints specify each misleading statement; that they set forth the facts on which [a] belief that a

25   statement is misleading was formed; and that they state with particularity facts giving rise to a strong

26   inference that the defendant acted with the required state of mind."  *Merrill Lynch, Pierce, Fenner*

27   *& Smith Inc. v. Dabit*, 547 U.S. 71, 81–82 (2006) (citation omitted).  The Complaint here fails to

28   plead the necessary elements of falsity, scienter, and reliance against Gove under these standards.

                                           4

1   I.    **THE COMPLAINT FAILS TO PLEAD THAT GOVE MADE ANY ACTIONABLY**

2         **FALSE STATEMENTS**

3         Plaintiff challenges just two (nearly identical) sets of statements purportedly made by Bed

4   Bath and Gove, which were first quoted in part in a CNBC story published after the market closed

5   on August 17, 2022 and then issued in full on a Form 8-K filed before the market opened on August

6   18, 2022.  Compl. ¶ 27.  The full text of the statement is as follows:

7         We were pleased to have reached a constructive agreement with RC Ventures
          in March and are committed to maximizing value for all shareholders.  We are
8         continuing to execute on our priorities to enhance liquidity, make strategic
          changes and improve operations to win back customers, and drive cost
9         efficiencies; all to restore our company to its heritage as the best destination
          for the home, for all stakeholders.  Specifically, we have been working
10        expeditiously over the past several weeks with external financial advisors and
          lenders on strengthening our balance sheet, and the Company will provide
11        more information in an update at the end of this month.

12

13  Compl. ¶ 30.  Plaintiff alleges that this statement was "materially misleading" because it failed to

14  disclose that Cohen had already sold his Bed Bath holdings, failed to disclose that an amended credit

15  agreement that was not finalized until two weeks later would "undermin[e] any incentive for [Cohen]

16  to remain a holder of Bed Bath securities" because it would not allow the sale of buybuy BABY, and

17  as a result "the Company's relationship with Cohen was no longer 'constructive.'"  Compl. ¶ 32.

18  Plaintiff also contends the statement was false because "Cohen's decision to exit from his positions

19  undermined Bed Bath's stated goal of 'maximizing value for all shareholders.'"  *Id.*  Plaintiff alleges

20  that Gove's position as CEO "required her to oversee the contents of the August 17, 2022 emailed

21  statement to CNBC and the August 18, 2022 Form 8-K."  Compl. at ¶ 31.

22        These allegations fail, as the challenged statements were true and non-actionable, and did not

23  give rise to any duty to disclose the speculative information demanded by Plaintiff, as the District

24  Court presiding over the related Securities Class Action correctly held in dismissing with prejudice

25  the identical claims asserted against Gove there.  *See In re Bed Bath & Beyond Corp. Sec. Litig.*, 687

26  F.Supp. 3d 1, 8-10 (D.D.C. 2023).

27        A.    **Plaintiff Fails To Adequately Plead That The Alleged Misstatements Were**

28              **False Or Misleading When Made**

5

1    "To be actionable [under Section 10(b)], a statement or omission must have been misleading

2    at the time it was made; liability cannot be imposed on the basis of subsequent events." *In re NAHC,*

3    *Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002) (citing *In re Nice Sys., Ltd. Sec. Litig.*, 135 F.

4    Supp. 2d 551, 586 (D.N.J. 2001)); *see also*, *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681 (9th Cir.

5    2011) (expressing the same general principle). Moreover, "Section 10(b) and Rule 10b-5 'do not

6    create an affirmative duty to disclose any and all material information,'" *Weston Fam. P'ship LLLP*

7    *v. Twitter, Inc.*, 29 F.4th 611, 620 (9th Cir. 2022), and "[a] corporation is not required to disclose a

8    fact merely because a reasonable investor would very much like to know that fact." *In re Morgan*

9    *Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010) (citing *In re Time Warner Inc. Sec.*

10   *Litig.*, 9 F.3d 259, 267 (2d Cir. 1993)). Nor do these provisions "create an affirmative duty to disclose

11   any and all material information"; rather, "[d]isclosure is required ... only when necessary to make

12   ... statements made, in the light of the circumstances under which they were made, not misleading."

13   *Weston Fam.*, 29 F.4th at 620. Plaintiff fails to adequately allege that any aspect of the challenged

14   statements by Bed Bath and Gove were false or misleading under these standards.

15           **1.    *The Company's Statement That It Was "Pleased To Have Reached A***

16                   ***Constructive Agreement With [Cohen] In March" Was Not Misleading***

17           Plaintiff initially claims that the Company's statement that it was "pleased to have reached a

18   constructive agreement" with Cohen and RC Ventures in March 2022 was "materially misleading

19   when made" because the Company failed to disclose "that Cohen and RC Ventures had already

20   formed a plan to liquidate all their holdings and, in fact, had already liquidated the vast majority if

21   not all of their holdings before these statements were made," and "[a]s a result, [the Company's]

22   relationship with Cohen was no longer 'constructive.'" Compl. ¶¶ 27, 32. These arguments fail to

23   plead that the challenged statement was false or misleading for several reasons.

24           *First*, Plaintiff does not plead any facts plausibly alleging that the Company's statement, that

25   it "w[as] pleased to have reached a constructive agreement with [Cohen] in March," was untrue.

26   Compl. ¶ 29. As the Complaint itself acknowledges, "[i]n March 2022," the Company "entered into

27   a cooperation agreement" with Cohen, under which he agreed he would desist from his attempts to

28   establish control of the Company and the Company agreed to accommodate directors nominated by

Cohen and form a strategy committee to consider its strategy for buybuy Baby.  Compl. ¶ 25.  Plaintiff presents no reason to believe that this cooperation agreement was anything other than "constructive" in March, let alone that the Company was not "pleased" to reach that agreement then.  In short, as the court presiding over the Securities Class Action concluded:  "the statement was not false, misleading, or actionable" because "Bed Bath *had* 'reached a constructive agreement with RC Ventures in March'" meaning "that part of the statement was true." *In re Bed Bath & Beyond Corp. Sec. Litig.*, 687 F.Supp. 3d at 9.

*Second*, although Plaintiff further contends that this statement was misleading because it failed to disclose that Cohen "had already formed a plan" to secretly sell his shares and had begun selling those shares at the time of the challenged statement, Compl. ¶ 32, Plaintiff presents no reason why the truthful statement, that the Company "was pleased to have reached a constructive agreement with [Cohen] in March," gave rise to a further duty to disclose that Cohen had "secretly" sold his shares in August (even assuming Gove had any way of knowing that).  Compl. ¶ 32.  The Company's disclosure accurately referred, in the past tense, to the cooperation agreement reached in March, without any reference to Cohen's past, present, or future holdings of Company stock.  It thus did not imply that Cohen currently held Company stock, and therefore could not give rise to an obligation to disclose that Cohen had "secretly" sold that stock, as the District Court presiding over the related Securities Class Action held.  *See* 687 F.Supp. 3d at 9 ("the statement specifically says that the constructive agreement was from five months earlier" and therefore "[n]o reasonable investor would assume that meant Bed Bath and Cohen remained in lock step").  Indeed, if anything "the much more plausible takeaway [from the statement] is that Bed Bath and Cohen were on the outs.  Imagine this: You ask a coworker how he is getting along with a friend and he responds, 'we had a solid relationship last year.'  Would you assume that they are close now?  Of course not.  You would assume the opposite.  Dated praise implied current disgruntlement." *Id.*

In any event, it is well settled that merely disclosing a historical fact does not give rise to a duty to disclose current information on the same topic.  *See In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 513 (9th Cir. 1991), *as amended on denial of reh'g* (Dec. 6, 1991) (rejecting contentions that statements were misleading that "simply report[ed] past performance and assert specific limited

predictions for the future"); *see also In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 401 n.3 (6th Cir. 1997) ("It is clear that a violation of federal securities law cannot be premised upon a company's disclosure of accurate historical data."); *In re Ferroglobe PLC Sec. Litig.*, 2020 WL 6585715, at *7 (S.D.N.Y. Nov. 10, 2020) ("The Court fails to see how discussion of a company's historical success would mislead a reasonable investor into any particular belief about that company's present or future performance.").  "Rule 10b-5 . . . prohibit[s] only misleading and untrue statements, not statements that are incomplete . . . .  Often, a statement will not mislead even if it is incomplete or does not include all relevant facts."  *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (emphasis in original and internal citation omitted).[1]

    *Finally*, courts have routinely held that companies do not have an obligation to characterize their relationships with third parties in negative terms or disclose problems in those relationships even where they have described those relationships much more positively than the Company did here.  *See, e.g.*, *In re Express Scripts Holding Co. Sec. Litig.*, 773 F. App'x 9, 11–13 (2d Cir. 2019) (statement that company "really enjoys" its relationship with a third party was not "false, misleading, or incomplete" even though it did not disclose that "in fact both parties had accused each other privately of not proceeding in good faith" and the partner had served "two notices of breach").[2]  This is so because "[w]hen valuing corporations . . . investors do not rely on vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers."  *In re Cutera Sec. Litig.*, 610 F.3d 1103,

---

[1] *See also In re Twitter, Inc. Sec. Litig.*, 506 F.Supp. 3d 867, 886 (N.D. Cal. 2020) ("merely mentioning a topic does not require the company to disclose every tangentially related fact that might interest investors"), *aff'd sub nom. Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611 (9th Cir. 2022); *In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *10 (S.D.N.Y. Mar. 30, 2018) ("[I]t is well settled that a corporation is not required to reveal all facts on a subject just because it reveals a single fact.") (citations omitted).

[2] *See also Pipefitters Union Loc. 537 Pension Fund v. Am. Express Co.*, 773 F. App'x 630, 632–33 (2d Cir. 2019) (statement that company "work[s] with [a third party] on an ongoing basis" did not give rise to duty to disclose that relationship had "deteriorated"); *River Birch Cap., LLC v. Jack Cooper Holdings Corp.*, 2019 WL 1099943, at *7–8 (S.D.N.Y. Mar. 8, 2019) (Plaintiff failed to plead omission concerning company's "deteriorating relationships" with third parties because plaintiff's "Jenga tower of assumptions" that it was "highly unlikely" that company was not aware of problems at time of challenged statement was "insufficient to establish the existence of a duty to disclose.").

1111 (9th Cir. 2010); *see also In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 42 (2d Cir. 2000) ("[p]eople in charge of an enterprise are not required to take a gloomy, fearful or defeatist view," and courts "would not expect" a company to disparage its prospects based "on what, at the time, would have been speculation."). Thus, the Company stating that it was "pleased to have reached a constructive agreement" with Cohen in March 2022 did not give rise to an obligation to disclose the Company's purportedly "deteriorated relationship with Cohen," as Plaintiff contends. Compl. ¶ 27.

> **2.** ***The Complaint Confirms That The Company Was "Working . . . On Strengthening [Its] Balance Sheet," "Enhanc[ing] Liquidity," And "Maximizing Value For All Shareholders"***

As with the prior challenged statement about the Company reaching a "constructive agreement with [Cohen] in March," the facts alleged in the Complaint likewise establish that the remaining challenged statements by the Company—that it was "working . . . on strengthening [its] balance sheet," "continuing to execute on [its] priorities to enhance liquidity," and "committed to maximizing value for all shareholders,"—were unquestionably true. Compl. ¶¶ 29, 30. Indeed, Plaintiff itself concedes that:

- "in June 2022, Bed Bath hired a consultant to focus on cash and balance sheet optimization," Compl. ¶ 27;
- by July 2022, it had "already studied . . . and 'identified several options' for buybuy BABY," Compl. ¶ 27;
- in mid-August 2022, it was "'hunting' for an extension of an existing credit line that would provide hundreds of millions of dollars in relief," Compl. ¶ 27;
- in late August 2022, it "executed . . . an amended loan agreement," Compl. ¶ 27;

All of these allegations confirm that the Company was working to strengthen its balance sheet, execute on its priorities to enhance liquidity, and maximize value for shareholders.

Plaintiff does not appear to dispute this, but nonetheless contends that these statements were misleading because they supposedly "put these issues at play but failed to disclose that the [amended] Credit Agreement eliminated the strategic plan vigorously advanced by Cohen, undermining any incentive for him to remain a holder of Bed Bath securities" and "undermin[ing] Bed Bath's stated

goal of maximizing value for all shareholders."  Compl. ¶ 32.  Again, however, these generic statements said nothing about Cohen, and therefore could not give rise to a duty to make statements about him.

Moreover, the amended credit agreement that Plaintiff cites was not entered into until August 31, 2022, which was nearly two weeks after the challenged statements.  SAC ¶ 7. As such, the later entry into the amended credit agreement does nothing to establish that these earlier statements were false when made or that the Company could disclose the terms of that amended agreement at the time of the alleged misstatements.  *In re GlenFed*, 42 F.3d 1541, 1548 ("[T]here is no reason to assume that what is true at the moment plaintiff discovers it was also true at the moment of the alleged misrepresentation").[3]  Indeed, the sources cited in the Complaint make clear that the amended agreement was just a "proposal" at the time of the challenged statements, and one that the Company had not yet received responses to.  Compl. ¶ 27.  "[I]n the circumstances here, where the discussions were ongoing, Defendants did not have a duty to disclose more about the uncertain state of the negotiations."  *In re Express Scripts*, 773 F. App'x at 14; *see also Freeburg v. Wolf*, 42 F. App'x 715, 715–16 (6th Cir. 2002) (rejecting claim that defendant had "misl[ed] investors as to the true status of the negotiations" with a third party because "defendants had no legal duty to inform the public of these developments until the outcome of the negotiations became as certain as hard facts").

### B.    The Challenged Statements By Bed Bath and Gove Are Non-Actionable As A Matter Of Law

In addition to the foregoing, the challenged statements by the Company and Gove must also be dismissed because they are generic statements of corporate puffery that are not actionable as a matter of law, as well as mere statements of opinion that Plaintiff has failed to adequately plead were

---

[3] *See also City of Phila. v. Fleming Cos., Inc.*, 264 F.3d 1245, 1260 (10th Cir. 2001) ("allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud"); *In re NAHC, Inc. Sec. Litig.*, 2001 WL 1241007, at *14 (E.D. Pa. Oct. 17, 2001), *aff'd*, 306 F.3d 1314 (3d Cir. 2002) ("For an actionable claim of a misleading omission, the plaintiffs must show that the omitted information in fact existed at the time the statement was made.").

false, as the District Court presiding over the related Securities Class Action correctly recognized. *See* 687 F.Supp. 3d at 9.

### 1. *The Alleged Misstatements By Bed Bath and Gove Were Inactionable Puffery*

It is well settled that "statements of 'mere puffing' cannot state actionable material misstatements of fact under federal securities laws." *Ferris v. Wynn Resorts Ltd.*, 462 F.Supp. 3d 1101, 1120 (D. Nev. 2020). Similarly, "mildly optimistic, subjective assessment[s] ... [do not] amount[] to a securities violation." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010).

Here, the disclosures by the Company that are challenged in the Complaint are riddled with generic statements that courts have uniformly rejected as inactionable puffery, including statements that the Company was:

- "pleased to have reached a constructive agreement with RC Ventures,"[4]

- "committed to maximizing value for all shareholders,"[5]

---

[4] *See, e.g.*, *In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*, 543 F.Supp. 3d 96, 117 (D. Md. 2021) ("the statement that Marriott was pleased with the results is another statement of puffery and opinion that is not actionable"), *aff'd sub nom. In re Marriott Int'l, Inc.*, 31 F.4th 898 (4th Cir. 2022); *City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*, 412 F.Supp. 3d 206, 223 (E.D.N.Y. 2019) ("[B]road characterizations of Foot Locker's vendor relationships as 'strong,' 'positive,' and 'great' [are] statements that amount to puffery, and are insufficient to sustain a 10(b) action."); *In re Dot Hill Sys. Corp. Sec. Litig.*, 594 F.Supp. 2d 1150, 1159–60 (S.D. Cal. 2008) (statements about third party "speaking vaguely of an 'excellent relationship' [and] 'highly positive and mutually beneficial' interactions" are "non-actionable puffery").

[5] *See, e.g.*, *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014) (rejecting contention that statements were misleading where statements "plainly project[ed] expectations for future growth."); *In re Synergy Pharms., Inc. Sec. Litig.*, 2021 WL 4480625, at *11 (E.D.N.Y. Sept. 30, 2021) (statement that a loan "will ultimately maximize long-term shareholder value" was "too vague to be actionable"); *Rochester Laborers Pension Fund v. Monsanto Co.*, 883 F.Supp. 2d 835, 882 (E.D. Mo. 2012) ("statements about being . . . 'committed' to reaching the predicted goals" are "vague statement[s] of corporate optimism constitut[ing] inactionable puffery").

- "continuing to execute on [its] priorities to enhance liquidity, make strategic changes and improve operations to win back customers, and drive cost efficiencies,"[6]
- working "to restore [the] company to its heritage as the best destination for the home,"[7] and
- "working expeditiously . . . on strengthening [its] balance sheet."[8]

These are the types of vaguely optimistic statements that all companies make, and on which reasonable investors therefore do not rely.  *See Fosbre v. Las Vegas Sands Corp.*, 2013 WL 5970250, at *4 (D. Nev. Nov. 7, 2013) ("Such statements are immaterial because they are so exaggerated or vague that a reasonable investor would not rely on [them] in considering the total mix of available information.") (internal citations omitted).  Indeed, the District Court presiding over the related Securities Class Action rejected these precise statements as "[m]ere puffery, a generalized statement of optimism" that "is not actionable.  687 F. Supp. 3d at 9.  The same result is appropriate here.

---

[6] *See, e.g.*, *Sinnathurai v. Novavax, Inc.*, 645 F.Supp. 3d 495 (D. Md. 2022) ("[V]ague statements about the defendant's priorities and other non-factual boasting statements constitute puffery."); *In re Baan Co. Sec. Litig.*, 103 F.Supp. 2d 1, 13 (D.D.C. 2000) (statements about company's "strong momentum" and that "business performance continues to develop according to our plan" constitute puffery).

[7] *See, e.g.*, *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014) (holding that optimistic characterizations of company's position in industry, *e.g.*, that it "believe[d] that [its] track record for enrollment and revenue growth is attributable to our offering comprehensive services," and that it provided "all the advantages only the nation's largest wireless company can provide" were "vague and provided nothing concrete upon which a plaintiff could reasonably rely."); *SE Penn. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2015 WL 3833849, at *30 (M.D. Pa. June 22, 2015) (statements company was "'deep and experienced,' 'strong,' and [had a] 'proven track record' are all examples of corporate puffery"); *Hoyte v. Yum! Brands, Inc.*, 489 F.Supp. 2d 24, 30 (D.D.C. 2007) ("KFC's claims that its restaurants serve the 'best food' is a non-measurable, bald statement of superiority that is non-actionable puffery.").

[8] *See, e.g.*, *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 708 (9th Cir. 2021) (holding statement that company was taking "great pains to make sure that people have great control and notice over their data" ultimately "amount[ed] to [a] vague and generalized corporate commitment[], aspiration[], or puffery that cannot support statement liability under Section 10(b) and Rule 10b-5(b)."); *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) (statement company would "continue to reposition and strengthen [its] franchises with a focus on financial discipline" was "no more than puffery"); *Plumley v. Sempra Energy*, 2017 WL 2712297, at *9 (S.D. Cal. June 20, 2017) (statements company was "working as quickly as safety will allow" were "not actionable because they are vague statements of optimism, i.e. inactionable corporate puffery").

12

2.   *The Alleged Misrepresentations By Bed Bath and Gove Were Statements Of Opinion That Are Not Adequately Alleged To Be False*

The disclosures by the Company that are challenged by Plaintiff also reflect numerous statements of opinion that the Complaint fails to adequately allege were false.  For example, whether the Company's agreement with Cohen was "constructive," whether a particular action was expected to "maximiz[e]" value for shareholders, and whether a contemplated financial arrangement could be seen as "strengthening" the balance sheet are all matters of subjective judgment rather than objective fact, and are therefore statements of opinion.  *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183 (2015) ("A fact is a thing done or existing or an actual happening.  An opinion is a belief, a view, or a sentiment which the mind forms of persons or things.").  Accordingly, because an opinion "convey[s] some lack of certainty as to the statement's content," Plaintiff cannot plead that these opinions were false merely by alleging a contrary view that the agreement with Cohen was not constructive, or that the actions the Company was taking did not maximize value or strengthen the balance sheet.  *Id.* at 187, 194 ("an investor cannot state a claim by alleging only that an opinion was wrong").  Instead, Plaintiff must adequately allege either that the Company and Gove did not "actually hold[] the stated belief" or omitted "fact[s] show[ing] that [the Company and Gove] lacked the basis for making those statements that a reasonable investor would expect." *Id.* at 184, 196.  Plaintiff makes no attempt to satisfy this burden, and its claims against Gove fail for this additional reason.

II.   **THE COMPLAINT FAILS TO RAISE A STRONG INFERENCE OF SCIENTER AGAINST GOVE**

To state a claim under Section 10(b) of the Exchange Act, a plaintiff must also plead scienter, meaning "that defendants acted with the intent to deceive or with deliberate recklessness as to the possibility of misleading investors." *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 535 (9th Cir. 2024). "Deliberate recklessness" in this context "is a higher standard than mere recklessness and requires more than a motive to commit fraud," and can only be shown where there is an "extreme departure from the standards of ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* at

Case 2:24-cv-01042-RFB-DJA    Document 31    Filed 11/06/24    Page 16 of 22

536.  To allege a strong inference of deliberate recklessness, a plaintiff must "state facts that come closer to demonstrating intent, as opposed to mere motive and opportunity.  *DSAM Glob. Value Fund v. Altris Software, Inc*., 288 F.3d 385, 389 (9th Cir. 2002) (citing *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999)).  Moreover, under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference" of scienter, 15 U.S.C. § 78u-4(b)(2), meaning one that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007).  As the District Court presiding over the related Securities Class Action correctly concluded, the generic and illogical allegations of scienter asserted against Gove in the Complaint—including that she supposedly misled Bed Bath investors for just one day—do not come close to satisfying these standards.  687 F. Supp. 3d at 10.

A.    **Plaintiff Fails To Allege Any Strong Circumstantial Evidence That Gove Acted With Scienter**

For several reasons, Plaintiff does not satisfy his burden of pleading particularized facts that Gove acted with scienter.

*First*, the Complaint's scienter allegations against Gove amount to little more than a string of conclusory assertions devoid of any particularized factual support.  Plaintiff variously asserts that Gove "knew or recklessly disregarded" that Cohen "lost interest in Bed Bath securities because the 2022 Credit Agreement" Compl. ¶ 34; that the Strategy Committee of the Board of Directors "informed Cohen about the options considered for buybuy BABY's future before Cohen liquidated the entirety of his interests in Bed Bath securities"; *Id*. and Gove "knew or recklessly disregarded" that Cohen "formed a plan to sell the entirety of his holdings," *Id*.  But Plaintiff provides no contemporaneous factual support for any of these assertions:  the Complaint does not cite a single internal document, former Bed Bath employee, or confidential witness connected with Cohen supporting any of these points.  This pleading approach plainly fails under the PSLRA, which mandates that where "an allegation regarding [a] statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  Pleading a strong inference of scienter requires particularized facts, not unsupported conjecture.  *In re Silicon Graphics, Inc. Sec. Litig.*, 970 F.Supp. 746, 766 (N.D. Cal. 1997) (In order

14

1  to plead scienter, "plaintiffs must do more than speculate as to defendants' motives or make

2  conclusory allegations of scienter; plaintiffs must allege specific facts.") (internal citations omitted).

3      *Second*, Plaintiff's repeated attempts to fill this gap by relying on the benefit of hindsight fail

4  under clearly established law.  As discussed above, "[t]he fact that [a] prediction proves to be wrong

5  in hindsight does not render the statement untrue when made." *Daniels Fam. 2001 Revocable Tr. v.*

6  *Las Vegas Sands Corp.*, 709 F. Supp. 3d 1217, 1229 (D. Nev. 2024) (citing *In re VeriFone Sec. Litig.*,

7  11 F.3d 865, 871 (9th Cir. 1993)); *see also In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1419

8  (9th Cir. 1994) ("Plaintiffs cannot use the benefit of 20–20 hindsight to turn management's business

9  judgment into securities fraud.") (quoting *In re Worlds of Wonder Sec. Litig.*, 814 F.Supp. 850

10  (N.D.Cal.1993)).  Thus, Plaintiff's citations to a credit agreement executed on August 31, 2022,

11  which supposedly "contained extremely onerous restrictions preventing asset sales in excess of an

12  aggregate amount of $10 million and locking up buybuy BABY as collateral to secure the

13  obligations," Compl. ¶ 27, provide no support for the Complaint's assumption that Gove knew that

14  the Company would agree to those terms at the time of its challenged statements weeks earlier (let

15  alone Plaintiff's further unsupported assumptions that Cohen was informed of this and lost his

16  "interest in retaining his holdings" as a result, Compl. ¶ 34).[9]

17      *Third*, the Complaint's reliance on Gove's positions within the Company, Compl. ¶¶ 12, 31,

18  likewise does nothing to establish scienter.  "The existence of a 'reasonable inference' as to an

19  officer's knowledge of facts critical to a business' core operations" is insufficient to "allege scienter

20  on the part of Defendants."  *In re Apple Computer, Inc.*, 127 F. App'x 296, 300 (9th Cir. 2005); *see*

21  *also Ross v. Walton*, 668 F.Supp. 2d 32, 40 (D.D.C. 2009) ("[A] vague assertion that a defendant

22  must have known about the fraud by virtue [of] a position of authority does not result in a strong

23  inference of scienter.").  Instead, "corporate management's general awareness of the day-to-day

24  workings of the company's business does not establish scienter—at least absent some additional

25

---

26  [9] In fact, as discussed above, the Complaint itself makes clear that the proposed credit agreement
   remained in its early stages at the time of the alleged misstatements.  Compl. ¶ 27 (conceding that
27  at the time of the alleged misstatements, the Company was still "'hunting' for an extension of an
   existing credit line").
28

15

allegation of specific information conveyed to management and related to the fraud." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008).  No such details are provided here.

*Finally*, perhaps acknowledging the complete lack of support for the Complaint's assertions that Gove knew that Cohen had "secretly" sold his shares at the time of the challenged statements, Plaintiff alternatively claims that it would be reckless for Gove to "fail[] to check whether Cohen had done so or otherwise investigate or question whether he" did so.  Compl. ¶ 34.  But this last-ditch theory also fails:  it is little more than an attempt to impose a "should have known" standard, which is insufficient to plead scienter.  *See Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008) ("the inference that [a corporate officer] *should* have known" a given fact is insufficient to plead scienter) (emphasis in original).

## B.    When Considered Collectively, Plaintiff's Allegations Fail To Raise A Strong Inference That Gove Acted With Scienter

For the reasons discussed above, the Complaint fails to allege particularized facts raising any inference that Gove acted with scienter.  That alone is sufficient to reject Plaintiff's scienter allegations.  *See In re Stratosphere Corp. Sec. Litig.*, 66 F.Supp. 2d 1182, 1190 (D. Nev. 1999) ("[a] plaintiff ... must offer more than conclusory allegations, and if the defendant presents affidavits or other evidence establishing a lack of scienter, the plaintiff must come forward with some affirmative showing.") (internal citations omitted).

But even if those individually defective allegations could be seen as raising any inference of scienter when viewed collectively, they do not raise an inference that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs*, 551 U.S. at 314.  To the contrary, Plaintiff's scienter theory with respect to Gove makes no sense at all:  that Gove somehow knew or should have known that Cohen liquidated his position even though he "secretly" and "surreptitiously" sold his shares, Compl. ¶¶ 23, 27, 49; decided to obliquely mislead investors on that subject by making a truthful reference to Bed Bath's prior agreement with Cohen, rather than just directly saying he still held his shares, Compl. ¶ 27; and thought it made sense to defraud investors for just one day before Cohen's sales would be publicly disclosed, Compl. ¶ 27, without making any

16

1    attempt to profit off of that fraud in the interim.  As the District Court presiding over the related

2    Securities Class Action correctly held, this nonsensical string of assumptions fails to raise a strong

3    inference of scienter.  687 F.Supp. 3d at 10.

4         In contrast to any weak and improbable inference of scienter raised by Plaintiff's allegations,

5    the far more likely inference is one of nonfraudulent intent:  that Gove (like the market more broadly)

6    was uncertain of Cohen's intentions, Compl. ¶¶ 42–43, and therefore Bed Bath made statements

7    accurately describing the Company's historical agreement with him, as well as its current efforts to

8    address its financial condition, without intending to make any reference to whether Cohen still held

9    his shares.  The District Court presiding over the Securities Class Action recognized as much, stating:

10            [A]ny inference of recklessness is less compelling that the
             'nonculpable explanations' for the statement:  it was meant to describe
11            Bed Bath's efforts to right the ship.[]  Indeed, had Gove known of
             Cohen's impending sale, she had no reason to hide this knowledge
12            from investors.  A coverup would only help Cohen while further
             damaging the brand when investors learned the truth.
13

14   687 F.Supp. 3d at 10.  Accordingly, the Complaint's claims against Gove fail to plead a strong

15   inference of scienter and must therefore be dismissed.

16   **III.    THE COMPLAINT DOES NOT PLEAD RELIANCE ON THE CHALLENGED**

17   **         STATEMENTS BY BED BATH AND GOVE**

18         Plaintiff's claims against Gove also independently fail because the Complaint does not

19   adequately plead the element of reliance with respect to any statement made by Bed Bath or Gove.

20   "Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b)

21   private cause of action . . . because proof of reliance ensures that there is a proper connection between

22   a defendant's misrepresentation and a plaintiff's injury."  *Erica P. John Fund, Inc. v. Halliburton*

23   *Co.*, 563 U.S. 804, 810 (2011).  Here, Plaintiff's meager allegations about his purchases fail to

24   plausibly allege that he relied on any statements by Bed Bath or Gove in connection with those

25   purchases.  In particular, Plaintiff only vaguely alleges that he purchased shares of Bed Bath stock

26   "[b]etween July 2022 and April 2023."  Compl. ¶ 17.  However, with respect to any purchases made

27   in July 2022, Plaintiff plainly could not have relied on the challenged statements by Bed Bath or

28   Gove, which were not made until the following month. *Halliburton Co. v. Erica P. John Fund, Inc.*,

17

573 U.S. 258, 278 (2014) ("if the plaintiff did not buy or sell the stock after the misrepresentation was made . . . then he could not be said to have acted in reliance on a fraud-tainted price."). Similarly, with respect to purchases made by Plaintiff in April 2023, there could be no basis for Plaintiff to rely on the challenged statement made by Gove months earlier, given that Plaintiff concedes the supposed truth about Gove's alleged misstatements was fully "reveal[ed]" on August 17, 2022. Compl. ¶ 27; *Halliburton Co. v*, 573 U.S. at 278 (2014) ("if the plaintiff did not buy or sell the stock . . . before the truth was revealed, then he could not be said to have acted in reliance on a fraud-tainted price."). In short, Plaintiff's complaint does not adequately allege that he made any purchases in reliance on the alleged misstatements by Bed Bath or Gove on August 17 or 18, 2022, mandating the dismissal of those claims.

## IV.     THE CONTROL PERSON CLAIM AGAINST GOVE ALSO FAILS

Because Plaintiff fails to plead a primary violation under Section 10(b) of the Exchange Act, the Complaint's control person claim against Gove under Section 20(a) must also be dismissed. *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014) ("To establish a cause of action under this provision, a plaintiff must first prove a primary violation of underlying federal securities laws, such as Section 10(b) or Rule 10b–5") (citing *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir.2000)); *see also Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543, 547 (9th Cir. 2018) ("Plaintiffs cannot raise a genuine dispute under § 20(a) for controlling person liability against [Defendants] because, as discussed above, they cannot 'prove a primary violation of underlying securities laws.'") (internal citation omitted).

This is precisely why, on the basis of essentially identical pleadings, the District Court in the related Securities Class Action dismissed the control person claims against Gove. *See* 687 F. Supp. 3d at 10.

///

///

///

## **CONCLUSION**

For the foregoing reasons, the claims asserted against Gove in the Complaint should be dismissed with prejudice.

Dated: November 6, 2024

SNELL & WILMER, L.L.P.

/s/ *Bradley Austin*
Bradley Austin, Esq.
1700 S Pavilion Center Drive, Suite 700
Las Vegas, NV 89135

Jared M. Gerber (*Pro Hac Vice application forthcoming*)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Email: jgerber@cgsh.com

*Attorneys for Defendant Sue Gove*

1

## **CERTIFICATE OF SERVICE**

On November 6, 2024, I served the foregoing document on all parties appearing in this case when filing said document through the court's PACER system with automatic e-service on all persons who have registered for e-service on PACER for this case.


*/s/ Lyndsey Mosbey*
An employee of SNELL & WILMER L.L.P.