Kelly A. Evans, Esq. (SBN 7691)
David W. Gutke, Esq. (SBN 9820)
Brennen D Marshall, Esq. (SBN 16578)
**EVANS FEARS SCHUTTERT MCNULTY MICKUS**
6720 Via Austi Parkway, Suite 300
Las Vegas, NV 89119
Telephone: (702) 805-0290
kevans@efsmmlaw.com
dgutke@efsmmlaw.com
bmarshall@efsmmlaw.com

Dane H. Butswinkas (*pro hac vice*)
Steven M. Farina (*pro hac vice*)
Madeline C. Prebil (*pro hac vice*)
Jenna L. Romanowski (*pro hac vice*)
**WILLIAMS & CONNOLLY LLP**
680 Maine Ave. SW
Washington, DC 20024
Telephone: (202) 434-5000
dbutswinkas@wc.com
sfarina@wc.com
mprebil@wc.com
jromanowski@wc.com
*Attorneys for Defendants RC Ventures LLC and Ryan Cohen*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY MITCHELL,<br><br>       Plaintiff,<br><br>  v.<br><br>RYAN COHEN, an individual; ROBINHOOD FINANCIAL LLC, a Delaware Limited Liability Company; ROBINHOOD SECURITIES, LLC, a Delaware Limited Liability Company; ROBINHOOD MONEY, LLC, a Delaware Limited Liability Company; THE DEPOSITORY TRUST & CLEARING CORPORATION, a New York Corporation; 20230930-DK-BUTTERFLY-1, INC., a New York Corporation doing business as BED BATH & BEYOND; OVERSTOCK.COM, INC., a Delaware Corporation doing business as BED BATH & BEYOND; RC VENTURES LLC, a Delaware Limited Liability Company; SUE E. GOVE, an individual,<br><br>       Defendants. | **Case No. 2:24-cv-01042-RFB-DJA**<br><br>**DEFENDANT RC VENTURES LLC'S MOTION TO DISMISS** |

**INTRODUCTION**

Plaintiff Anthony Mitchell cannot state a claim against RC Ventures LLC or Ryan Cohen (collectively "the Cohen Defendants") for allegedly manipulating the stock of Bed Bath & Beyond ("BBBY") between August 12-16, 2022 because Mitchell does not allege that he purchased BBBY stock between August 12-16, 2022. To make matters worse, Mitchell also fails to allege that he saw the Cohen Defendants' statements, relied on the Cohen Defendants' representations, or lost money on the Cohen Defendants' account. Because Mitchell conspicuously refuses to allege the core elements of his claims, RC Ventures respectfully requests the Court dismiss the Complaint with prejudice and without leave to amend.[1]

**BACKGROUND**

**I.    BBBY, the Cohen Defendants, and Mitchell**

In early 2022, it was no secret that BBBY was beleaguered. BBBY filed a quarterly report to the Securities and Exchange Commission ("SEC") on January 6, 2022, revealing that its net sales had plunged 28% compared to the prior year. Compl. Ex. A (Second Amended Class Complaint, *In re Bed Bath & Beyond Corp. Sec. Litig.* ("*In re BBBY*"), 22-cv-02541 (D.D.C. Jan. 20, 2023) (Dkt. 66) ("Class Compl.") ¶ 91.[2] BBBY's net losses during that same period, by contrast, had surged from $75.4 million to $276.4 million. *Id.* Financial analysts observed that BBBY "meaningfully underperformed the industry," particularly given "the extremely robust US housing market and strong F3Q 2021 showings by other home goods purveyors." *Id.* (citations omitted).

The Cohen Defendants bought BBBY's slump. Between January 13 and March 3, 2022, the Cohen Defendants acquired 9,450,100 shares of BBBY, amounting to 9.8% of the Company's outstanding shares. *Id.* ¶ 92. The Cohen Defendants publicly disclosed the purchase to the SEC in a Schedule 13D filing. *Id.*

---

[1] As explained *infra*, p.8, RC Ventures moves to dismiss unilaterally because Mitchell has failed to effect service on or establish personal jurisdiction over Ryan Cohen. This Court's dismissal of the claims against Ryan Cohen, ECF No. 78, will become effective on March 20, 2026, ECF No. 88.

[2] Mitchell expressly incorporated the class complaint by reference, Compl. ¶ 47, and attached it as Exhibit A to his Complaint.

The Cohen Defendants and BBBY executed a Cooperation Agreement later that month. Compl. ¶ 25. Under the terms of the Cooperation Agreement, BBBY agreed to appoint three new, independent directors in exchange for the Cohen Defendants' agreement to be temporarily bound by a set of customary standstill provisions. *Id.*; Class Compl. ¶ 99. The Cooperation Agreement did not oblige, authorize, or contemplate that BBBY would share material nonpublic information with the Cohen Defendants. *See* Ex. 1 (Mar. 25, 2022, RC Ventures Sched. 13D Ex. 99-Cooperation Agreement).[3] The Cooperation Agreement noted the Cohen Defendants' "aware[ness] that the United States securities laws may prohibit any person who has received from an issuer material, nonpublic information from purchasing or selling securities of such issuer." *Id.* at 6. The Cohen Defendants alerted the SEC and the public to the Cooperation Agreement in an amended Schedule 13D filing. Ex. 2 (Mar. 25, 2022, RC Ventures Sched. 13D) at 4.

The Cohen Defendants' investment did not signal a reversal of BBBY's dwindling fortunes. In April 2022, BBBY released financial results for its fourth quarter 2021, revealing net losses that had ballooned from $9 million to $159 million in the last year. Class Compl. ¶ 103. Year-over-year net sales, meanwhile, tumbled 22%. *Id.* In a Form 10-K filed that same month, BBBY warned that its stock price may not reflect the company's performance, explaining the "stock has experienced, and could continue to experience, extreme price and volume fluctuations that may be unrelated to our operating performance, financial position or other business fundamentals." Ex. 3 (Apr. 21, 2022, BBBY 10-K) at 19.

Financial analysts, "now increasingly alarmed" by BBBY's financial condition, predicted that "BBBY's $450M cash balance" might soon "run dry." Class Compl. ¶ 104. Weeks later, BBBY executed a share repurchase program that nudged the Cohen Defendants' percentage of

---

[3] Because the Cohen Defendants' SEC filings are public records that Mitchell expressly incorporated into his Complaint, Compl. ¶¶ 25, 48, this Court may consider such documents on a motion to dismiss. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (in ruling on a motion to dismiss, "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claims; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.").

beneficial ownership in the company past the 10% threshold required to file an SEC Form 3, despite that the Cohen Defendants had not purchased more BBBY stock. *Id.* ¶¶ 106, 107.

BBBY's June 2022 quarterly report once again underscored the company's dire straits. The report disclosed that in the first fiscal quarter of 2022, BBBY's net sales plummeted 25% year-over-year. *Id.* ¶ 114. To make matters worse, BBBY announced that it had managed to lose more than $330 million in just three months. *Id.* ¶¶ 114-15. The same day its failing quarterly report card became public, BBBY announced that it fired its chief executive and hired consultants to "focus on cash, inventory and balance sheet optimization" and prevent "a looming liquidity crisis." *Id.* ¶¶ 112, 121. The shakeup was cold comfort to financial analysts, who opined that BBBY's total free cash flow for fiscal year 2022 sat somewhere between negative $400 million and negative $800 million. *Id.* ¶¶ 115.

BBBY scrambled for cash throughout the summer. On August 3, 2022, Bloomberg reported that the company was "considering tapping the private credit market to boost liquidity as the struggling retailer burns through its cash." *Id.* ¶ 119. Meanwhile, from "July 29 to August 11, BBBY's price jumped from $5.03 to $10.63—a 111 percent increase." *Bratya SPRL v. Bed Bath & Beyond Corp.*, 752 F. Supp. 3d 34, 44 (D.D.C. 2024), *reconsideration denied*, No. 1:22-CV-02541, 2025 WL 721770 (D.D.C. Mar. 6, 2025), and *dismissed sub nom. In re Bratya SPRL*, No. 25-8002, 2025 WL 1354922 (D.C. Cir. May 8, 2025). Financial analysts observing BBBY's erratic market dynamics "began chattering about a possible short squeeze on BBBY stock." *Id.* at 43. On August 12, CNBC tweeted an article about one such analyst:



Loop Capital says Bed Bath & Beyond comeback doesn't make fundamental sense, stock headed to $1

cnbc.com
Loop Capital says Bed Bath & Beyond comeback doesn't make fundamental se...
Even though shares of Bed Bath & Beyond have surged more than 70% this week, Loop Capital isn't upgrading its view on the stock.

6:04 AM · Aug 12, 2022

81 Retweets    43 Quote Tweets    803 Likes

Class Compl. ¶ 147.

In response to this dire prediction in the CNBC tweet, Ryan Cohen sarcastically replied:

 **Ryan Cohen** ✔
@ryancohen

At least her cart is full 🙂

10:42 AM · Aug 12, 2022

**1,617** Reposts    **150** Quotes    **13.5K** Likes    **25** Bookmarks

 25

*Id.*

Days later, the Cohen Defendants submitted three filings to the SEC that enabled him to transact in BBBY shares. *First*, on August 15, 2022, the Cohen Defendants filed a Form 3 triggered by BBBY's share repurchases. *Id.* ¶ 156. Far from an effort to "deceive and trick

investors," Compl. ¶ 49, the Form stated that the Cohen Defendants held the same combination of stock and call options as disclosed in the original Schedule 13D.  Ex. 4 (Aug. 15, 2022, RC Ventures Form 3).  *Second*, the Cohen Defendants filed an amended Schedule 13D on August 16, which similarly reflected that the Cohen Defendants' unchanged holdings in BBBY now corresponded to 11.8% beneficial ownership "solely due to a change in the number of outstanding Shares of the Issuer."  Ex. 5 (Aug. 16, 2022, RC Ventures Amended 13D) at 4; *see also* Class Compl. ¶ 160.  *Third*, on August 16, the Cohen Defendants submitted to the SEC a Form 144 reporting that "Beginning 8/16/22," Cohen may sell up to his entire holding of BBBY securities. Ex. 6 (Aug. 16, 2022, RC Ventures Form 144) at 1; *see also* Class Compl. ¶ 169.

The Cohen Defendants sold their BBBY securities on August 16 and August 17, 2022. Class Compl. ¶¶ 165-67.  On August 17, media reports detailed the Cohen Defendants' exit from BBBY.  *Id.* ¶ 179.

BBBY limped onward.  Bloomberg reported on August 19 that suppliers refused to deliver goods to BBBY because the company could not foot its bills.  *Id*. ¶ 130.  On August 31, BBBY executed "an amended loan agreement that contained extremely onerous restrictions preventing asset sales in excess of an aggregate amount of $10 million."  Compl. ¶ 27.  That same day, BBBY announced that it would terminate 20% of its workforce and close 150 stores.  Class Compl. ¶ 199. BBBY released quarterly financial results in September 2022, showing a whopping 28% decline in net sales compared to the prior year.  *Id.* ¶ 202.  Analysts predicted BBBY lacked sufficient cash to survive the year.  *Id.* ¶ 204.  Sure enough, as the new year dawned, BBBY announced that it defaulted on its credit agreement and was contemplating bankruptcy.  *Id.* ¶¶ 208-09.

"On April 23, 202[3], [BBBY] filed for bankruptcy in New Jersey."  ECF No. 78 at 3 (MTD).  The bankruptcy court confirmed BBBY's plan in September 2023, ECF No. 18-6, extinguishing Mitchell's outstanding shares in the company, Compl. ¶ 19.

But all the above-described events apparently escaped Mitchell's notice.  For his part, Mitchell "purchased 8847 shares of [BBBY] stock … from Robinhood" at some point "[b]etween July 2022 and April 2023."  Compl. ¶ 17.  "On October 20, 2023, [Mitchell] noticed that his 8847 shares were no longer in Robinhood's account and contacted Robinhood's support" to ask what

happened. *Id.* ¶ 18. Mitchell later "discovered that [a] class lawsuit was filed in the United States District Court District of Columbia." *Id.* ¶ 21.

**II.     The Uncertified Class Action**

The putative class action lawsuit that Mitchell "discovered," *id.* ¶ 21, alleged that the Cohen Defendants and others made materially misleading statements that artificially inflated the price of BBBY's securities between August 12 and August 18, 2022, in violation of federal securities laws, Class Compl. ¶ 1. The class complaint asserted seven counts against the Cohen Defendants, for alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5; Section 20A of the Exchange Act, and Sections 9(a)(2)-(4) and 9(f) of the Exchange Act. *Id.* at Counts I-VII. The court dismissed the Section 9(a)(2) claim against the Cohen Defendants but permitted others to proceed based on Ryan Cohen's August 12 tweet, the Cohen Defendants' amended Schedule 13D filed on August 16, and the Cohen Defendants' Form 144 filed on August 16. *In re BBBY*, 687 F. Supp. 3d 1, 10-21 (D.D.C. 2023). The lead plaintiff moved to certify a class of "persons or entities who purchased or otherwise acquired [BBBY's] common stock and long call options between August 12, 2022 and August 18, 2022." Mot. to Certify, *In re BBBY*, 22-cv-02541 (D.D.C. Feb. 15, 2024) (Dkt. 109) at 1.

The court denied certification "because the market for BBBY stock was not efficient during the Class Period." *Bratya SPRL*, 752 F. Supp. at 42. The court explained that certification hinged on the existence of class-wide evidence that could prove "whether plaintiffs relied on defendants' material misrepresentations or omissions." *Id.* at 52. But plaintiffs could not establish class-wide reliance by invoking the so-called *Basic* presumption, which allows a plaintiff to rebuttably prove reliance by showing that the stock market efficiently baked a defendant's alleged misrepresentations into the price of BBBY stock. *Id.* at 64 (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 247 (1988)). Far from informationally efficient, "considerable evidence show[ed] that the market for BBBY stock was in wild flux in the weeks before and during the Class Period," and thus did not incorporate the Cohen Defendants' alleged misstatements into its price. *Id.* at 56. Put differently, "the market for BBBY securities was so volatile and subject to such unusual market dynamics during the Class Period that it cannot

possibly have 'reflected all public, material information' including [the] Cohen[ Defendants'] alleged material misstatements." *Id.*

Unable to presume class-wide reliance, each class member would be individually required to "show[] that he was aware of a company's statement and engaged in a relevant transaction—*e.g.*, purchasing common stock—based on that specific misrepresentation." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011). The necessity of such individualized proof precluded certification. The lead plaintiff thereafter voluntarily dismissed the case with prejudice and without costs. Stipulation of Voluntary Dismissal, *In re BBBY*, 22-cv-02541 (D.D.C. May 6, 2025) (Dkt. 143).

**III.    Procedural History**

In May 2024, Mitchell sued the Cohen Defendants, Overstock.com, Inc., Sue E. Gove, and several other defendants that he later voluntarily dismissed. *See generally* Compl. The seven causes of action that Mitchell levels against the Cohen Defendants are near verbatim recitations of the seven causes of action asserted in the since-dismissed class complaint. *Compare* Compl. at Counts I-VII *with* Class Compl. at Counts I-VII.

The Cohen Defendants entered a limited appearance to seek dismissal under Rule 12(b)(5) for insufficient service of process while expressly preserving "all defenses and objections to Plaintiff's Complaint, including … failure to state a claim upon which relief may be granted." ECF Nos. 43, 46 at 1 n.1. Gove and Overstock likewise moved to dismiss. ECF Nos. 18, 31. This Court uniformly granted defendants' motions on September 30, 2025, while affording Mitchell "10 days to effectuate proper service or the case will be dismissed." ECF No. 78 at 8-9. Despite the Court's mandate, Mitchell thereafter moved to deem the Cohen Defendants served. ECF No. 79. This Court denied Mitchell's request, but nonetheless afforded Mitchell "until March 20, 2026 to accomplish service on" the Cohen Defendants. ECF No. 88 at 6. Mitchell thereafter moved the Court to reconsider its dismissal of the claims against the Cohen Defendants before withdrawing the motion. ECF Nos. 89-92.

Mitchell served RC Ventures on February 24, 2026. ECF No. 93. As of the date of this filing, Mitchell has not served Ryan Cohen. "To avoid a fragmented process with staggered and

unnecessarily duplicative briefing," RC Ventures sought Mitchell's consent to extend the deadline for this motion until 21-days after Mitchell properly served Ryan Cohen (to enable joint briefing), or 21-days after March 20, 2026, if Mitchell never serves Ryan Cohen. ECF 94 at 2. Mitchell did not consent. *Id.*

Because Mitchell properly served only RC Ventures, it is the sole filer of this motion to dismiss. Ryan Cohen does not waive service and expects to be dismissed from this action effective March 20, 2026, while preserving all arguments and defenses to Mitchell's Complaint—including with respect to the glaring deficiencies mandating dismissal that are elucidated by RC Ventures in this motion.

## LEGAL STANDARDS

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) … tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation omitted). On a motion to dismiss, the Court accepts the truth of well-pleaded factual allegations but is not obliged to "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A plaintiff asserting a private securities fraud action also must satisfy the heightened pleading requirements imposed by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Doing so requires a complaint to "allege the time, place, and content of the fraudulent representation." *In re Kimmel*, 324 F. App'x 549, 550-51 (9th Cir. 2008) (citing *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989)). The PSLRA's exacting pleading requirements require a plaintiff to "specify each

statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B).

**ARGUMENT**

Mitchell alleges that the Cohen Defendants violated federal securities laws in two ways. *First*, by making material misrepresentations that inflated the price of BBBY stock between August 12 and August 16, 2022. Compl. ¶¶ 27-28. And *second*, by trading on inside information about BBBY stock on August 16 and August 17, 2022. *Id.* ¶¶ 22-23, 26-27. This conduct, Mitchell alleges, violated Sections 10(b) and 9(a) of the Exchange Act. *Id.* at Counts I-II, IV-VI. Mitchell also brings claims under Sections 20A and 20(a) of the Exchange Act, based on predicate violations of Sections 9(a) and 10(b). *Id*. at Counts III, VII.

To plead a claim under Section 10(b), Mitchell must allege, among other elements: a connection between the Cohen Defendants' alleged misrepresentations and the purchase or sale of a security; reliance upon the Cohen Defendants' alleged misrepresentations; economic loss; and loss causation. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) ("*Halliburton II*"). Mitchell's claims under Section 9(a) require substantially the same elements. *Salvani v. ADVFN PLC*, 50 F. Supp. 3d 459, 476 (S.D.N.Y. 2014), *aff'd sub nom. Salvani v. InvestorsHub.com, Inc.*, 628 F. App'x 784 (2d Cir. 2015) (Section 9(a)(4)); *I.B. Trading, Inc. v. Tripoint Glob. Equities, LLC*, 280 F. Supp. 3d 524, 540 (S.D.N.Y. 2017) (defining § 9(f) as a willful violation of § 9(a)). Mitchell's predicate Section 20A and 20(a) claims, meanwhile, depend on whether he has stated underlying claims for violations of Sections 10(b) or 9(a).

Put simply, this Court must dismiss Mitchell's Complaint unless it plausibly alleges that (1) Mitchell purchased BBBY stock around the time of the Cohen Defendants' alleged misstatements, (2) because he relied on the Cohen Defendants' alleged misstatements, and (3) doing so caused him to lose money. But Mitchell alleges exactly *none* of these essential elements, much less plausibly so. These and other deficiencies mandate dismissal.

**I.    Mitchell Fails to Allege He Purchased Stock During the Relevant Period**

Mitchell cannot seek damages for purchasing BBBY stock at artificially inflated prices because he does not allege that he purchased BBBY stock at artificially inflated prices.

9

A private plaintiff pressing claims under Sections 9 and 10 of the Exchange must allege some connection between the "misrepresentation or omission" he is complaining about and "the purchase or sale of a security." *Halliburton II*, 573 U.S. at 267; *Salvani*, 50 F. Supp. 3d at 476. This is not a heavy lift. Plaintiffs ordinarily establish this connection by stating they purchased stock while (or just after) a defendant was allegedly tampering with the stock market. That's exactly what the putative class did, connecting themselves to the purported misstatements that the Cohen Defendants made in August 2022 by alleging they "purchased or otherwise acquired Bed Bath's common stock or options between August 12, 2022 and August 18, 2022." Class Compl. ¶ 1. But Mitchell, in sharp contrast, alleges no such thing. Mitchell fails to allege that he bought BBBY stock in relation to the Cohen Defendants' alleged misstatements. This dooms Mitchell's claims.

Attempting to avoid this deficiency, Mitchell alleges instead that he "purchased 8847 shares of [BBBY] stock," "[b]etween July 2022 and April 2023." Compl. ¶ 17. The pleading is too clever by half. That Mitchell purchased BBBY shares at some point during the 304-day period spanning July 2022 and April 2023 says nearly nothing about whether he purchased those shares in the five-day trading window spanning August 12 and August 18, 2022. After all, a person observing that it snowed between "July 2022 and April 2023," *id.*, has not alleged that it snowed during a particular week in mid-August 2022. Given the five relevant trading days within the 208 trading-days that transpired between July 2022 and April 2023, Mitchell has alleged that there exists a 2.4% chance he bought BBBY stock during the relevant period. But to survive a motion to dismiss, Mitchell must allege "more than a sheer possibility," that his transaction in BBBY stock is connected to the Cohen Defendants' alleged misstatements. *Iqbal*, 556 U.S. at 678 (citation omitted). Because Mitchell's Complaint "stops short of the line between possibility and plausibility of entitlement to relief," it must be dismissed. *Id.* (cleaned up).

This Court need not grant Mitchell any further leeway to remedy or amend his deficient pleadings. Mitchell does not need discovery or time to investigate when he bought BBBY stock. Mitchell's trading history, and all the facts necessary to plausibly allege a connection to the Cohen Defendants' statements, were entirely available to Mitchell when he filed this lawsuit in June

2024.  But despite parroting much of the Class Action Complaint, Mitchell refuses to recite the allegation contained in its very first paragraph:  That he is a person "who purchased or otherwise acquired Bed Bath's common stock or options between August 12, 2022 and August 18, 2022." Class Compl. ¶ 1.  Because Mitchell failed to allege any connection to the market that the Cohen Defendants allegedly tampered with, this Court should dismiss his Complaint in full without leave to amend.

**II.      Mitchell Fails to Allege He Relied on the Cohen Defendants' Statements**

"Investors can recover damages in a private securities fraud action only if they prove that they relied on the defendant's misrepresentation in deciding to buy or sell a company's stock." *Halliburton II*, 573 U.S. at 258.  A plaintiff ordinarily can allege reliance in two ways.  *First*, "[t]he traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was aware of a [defendant's] statement and engaged in a relevant transaction—*e.g.*, purchasing common stock—based on that specific misrepresentation."  *Id*. at 267.  *Second*, "securities fraud plaintiffs can in certain circumstances satisfy the reliance element … by invoking a rebuttable presumption of reliance … on the integrity of th[e] price" in a market that "reflects all public, material information."  *Id.* at 268.  Mitchell's pleadings, however, foreclose both theories of reliance.

Mitchell himself blocked the "most direct" route to establishing reliance.  *Id.* at 267.  That is true—not just because Mitchell fails to allege that he knew about the Cohen Defendants' statements and bought BBBY because of them—but because Mitchell affirmatively alleges that *he did not know* about the Cohen Defendants' statements.  In Mitchell's retelling, he was ignorant of the Cohen Defendants' August 2022 statements until he "discovered" them during an "investigation" he conducted sometime on or after "October 20, 2023."  Compl. ¶¶ 18, 20.  Absent a foray into the metaphysical, Mitchell could not have executed trades in August 2022 based on statements he "discovered" in October 2023.

The circuitous path to establishing reliance—by invoking *Basic*'s rebuttable presumption—also is unavailable to Mitchell.  Mitchell both paraphrased swaths of, and expressly incorporated, the Class Action Complaint into his own.  *E.g.*, Compl. ¶¶ 21-28.  There, the lead

plaintiff "dedicated considerable resources to" advocating for class certification, including by "fil[ing] four briefs totaling 88 pages in support of its motion," and "participat[ing] in hours of in-person testimony and argument to help clarify the complex issues." *Bratya SPRL v. Bed Bath & Beyond Corp.*, No. 1:22-CV-02541, 2025 WL 721770, at \*3 (D.D.C. Mar. 6, 2025). "A substantial fraction of this paper and presentation was spent belaboring the applicability of the *Basic* presumption." *Id.* Yet the district court rejected the lead plaintiff's invocation of *Basic* in a thoroughly reasoned, 44-page opinion. *See generally Bratya SPRL*, 752 F. Supp. 3d 34. This Court may take judicial notice of this persuasive authority. *See In re Fuleihan*, No. 2:14-CV-2061, 2015 WL 997335, at \*3 (D. Nev. Mar. 6, 2015) ("District court opinions are relevant for their persuasive authority."). Mitchell cannot conjure a principled reason to ignore the district court's comprehensive resolution of factually indistinguishable issues. Nor can he plausibly plead contemporaneous reliance on the Cohen Defendants' alleged misstatements. This Court should therefore dismiss Mitchell's Complaint for failure to plead reliance without leave to amend.

Dismissal without leave to amend is appropriate because any proposed amendment would be futile. Amendment is futile if "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Hunthausen v. Spine Media, LLC*, 678 F. Supp. 3d 1228, 1232 (S.D. Cal. 2023). Having pleaded that he learned of the Cohen Defendants' statements in October 2023, Compl. ¶¶ 18-20, Mitchell cannot now allege that he knew about the Cohen Defendants' statements in August 2022 and purchased BBBY stock based on those specific statements. *Halliburton II*, 573 U.S. at 267 (reciting reliance standard). Nor can he disavow the allegations in the class complaint that form the basis of his pleading and doom any invocation of the *Basic* theory of indirect reliance. Because it is not possible for Mitchell to file an amended complaint that plausibly alleges reliance without contradicting the allegations in his original pleading, this Court should dismiss the Complaint with prejudice and without leave to amend. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) (finding amendment would be futile when "[i]t would not be possible for [plaintiff] to amend his complaint … without contradicting any of the allegations of his original complaint").

## III.    Mitchell Fails to Allege Loss Causation

The same erratic market behavior that foreclosed the *Basic* presumption of reliance renders Mitchell unable to allege that the Cohen Defendants' alleged misstatements caused Mitchell's loss.  In denying class certification, the district court observed that the lead plaintiff "would face similar difficulties in establishing reliable damages calculations as it did in proving an efficient market." *Bratya SPRL*, 752 F. Supp. 3d at 66 n.7.  Put differently, the same "unusual market dynamics," *id.* at 56, that made it impossible to tell whether the market reflected the Cohen Defendants' alleged misstatements had also made it impossible to discern whether those statements caused economic loss.  Mitchell alleges no alternative theory of loss causation and thus cannot state a claim.

## IV.    Mitchell Fails to Allege a Series of Transactions Under Count IV

Mitchell's claim under Section 9(a)(2) of the Exchange Act (Count IV) is recited essentially word-for-word from the Class Action Complaint (Count IV).  *Compare* Compl. ¶¶ 62-66, *with* Class Action Compl. ¶¶ 246-50.  But the district court concluded that the Class Action Complaint failed to allege a "series of transactions" in a security, as Section 9(a)(2) requires.  *In re BBBY*, 687 F. Supp. 3d at 20 (quoting 15 U.S.C. § 78i(a)(2)).  The court therefore dismissed Count IV, *id.*, and this Court should do the same.

The regulatory filings that the Cohen Defendants submitted to the SEC in August 2022 are not equivalent to a "series of transactions" in BBBY stock.  This Court should join the others that "decline[d] … to read 'transaction *in* any security' to include any regulatory filings related to that security." *Id.* at 21.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

13

**CONCLUSION**

RC Ventures respectfully requests that this Court dismiss Mitchell's Complaint, with prejudice and without leave to amend.


Dated: March 17, 2026.                    **EVANS FEARS SCHUTTERT MCNULTY MICKUS**


*/s/ Brennen D Marshall*
Kelly A. Evans, Esq. (SBN 7691)
David W. Gutke, Esq. (SBN 9820)
Brennen D Marshall, Esq. (SBN 16578)
6720 Via Austi Parkway, Suite 300
Las Vegas, NV 89119

Dane H. Butswinkas (*pro hac vice*)
Steven M. Farina (*pro hac vice*)
Madeline C. Prebil (*pro hac vice*)
Jenna L. Romanowski (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave. SW
Washington, DC 20024

*Attorneys for Defendants RC Ventures LLC and Ryan Cohen*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on March 17, 2026, a true and correct copy of the foregoing **DEFENDANT RC VENTURES LLC'S MOTION TO DISMISS** was served electronically on all counsel of record and Plaintiff Anthony Mitchell via CM/ECF.

*/s/ Faith Radford*
An employee of Evans Fears Schuttert McNulty Mickus