Kelly A. Evans, Esq. (SBN 7691)
David W. Gutke, Esq. (SBN 9820)
**EVANS FEARS SCHUTTERT MCNULTY MICKUS**
6720 Via Austi Parkway, Suite 300
Las Vegas, NV 89119
Telephone: (702) 805-0290
kevans@efsmmlaw.com
dgutke@efsmmlaw.com

Dane H. Butswinkas (*pro hac vice*)
Steven M. Farina (*pro hac vice*)
Madeline C. Prebil (*pro hac vice*)
Jenna L. Romanowski (*pro hac vice*)
**WILLIAMS & CONNOLLY LLP**
680 Maine Ave. SW
Washington, DC 20024
Telephone: (202) 434-5000
dbutswinkas@wc.com
sfarina@wc.com
mprebil@wc.com
jromanowski@wc.com
*Attorneys for Defendants RC Ventures LLC*
*and Ryan Cohen*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY MITCHELL, | Case No. 2:24-cv-01042-RFB-DJA |
| Plaintiff, | **DEFENDANT RC VENTURES LLC'S MOTION TO DISMISS** |
| v. | |
| RYAN COHEN, an individual; ROBINHOOD FINANCIAL LLC, a Delaware Limited Liability Company; ROBINHOOD SECURITIES, LLC, a Delaware Limited Liability Company; ROBINHOOD MONEY, LLC, a Delaware Limited Liability Company; THE DEPOSITORY TRUST & CLEARING CORPORATION, a New York Corporation; 20230930-DK-BUTTERFLY-1, INC., a New York Corporation doing business as BED BATH & BEYOND; OVERSTOCK.COM, INC., a Delaware Corporation doing business as BED BATH & BEYOND; RC VENTURES LLC, a Delaware Limited Liability Company; SUE E. GOVE, an individual, | |
| Defendants. | |

# INTRODUCTION

Plaintiff Anthony Mitchell's First Amended Complaint ("FAC") falls somewhere between frivolous and harassing.  Both warrant dismissal with prejudice and without leave to amend.

Four allegations in the FAC resolve this case.  *First*, Mitchell alleges RC Ventures LLC and Ryan Cohen (collectively "Cohen") possessed non-public information about BBBY's calamitous straits but submitted filings to the Securities and Exchange Commission ("SEC") on August 16, 2022 that misleadingly portrayed his confidence in BBBY.[1]  FAC ¶ 26.  *Second*, Cohen sold his entire portfolio of BBBY stock and "disclosed" his "complete sale" in an SEC filing on August 18, 2022.  *Id.* ¶ 5.  *Third*, the market reacted to the revelation of Cohen's exit—"BBBY's stock dropped approximately 52%" on August 18, 2022.  *Id.*  *Fourth*, Mitchell purchased BBBY stock in January 2023.  *Id.* ¶ 6A.  Both the law and common sense make clear that Cohen is not liable for losses from BBBY stock purchases that Mitchell made *five months* after Cohen publicly washed his hands of BBBY.

Mitchell cannot demonstrate any connection between his stock transactions and the events about which he complains.[2]  He cannot establish loss causation because any alleged artificial inflation in BBBY's stock price dissipated five months before his purchases.  Mitchell also cannot demonstrate that he relied on Cohen's alleged misstatements—both because Mitchell lacked contemporaneous knowledge of those statements, and because the public learned of their supposed falsity long before Mitchell bought BBBY stock.  Whatever the wisdom of Mitchell's decision to purchase BBBY stock in the months, weeks, and days before BBBY declared bankruptcy, it had

---

[1] As explained *infra*, p.9, RC Ventures moves to dismiss unilaterally because Mitchell failed to establish personal jurisdiction over Mr. Cohen.  This Court held that dismissal of all claims against Mr. Cohen, ECF No. 78 at 9, would become effective on March 20, 2026, ECF No. 88 at 6.

[2] To the extent Mitchell is connected to the events he complains about, it is because he *benefitted* from them.  Mitchell remarkably discloses that he made money from the market fluctuations that he alleges were fraudulently induced:  Mitchell "purchased 500 shares of BBBY on July 15, 2022 at $4.99 per share and sold all 500 shares on August 16, 2022 … realizing a profit of approximately $8,505."  FAC ¶ 10.  Mitchell's concession forecloses his bid to establish concrete injury.

**RC VENTURES' MOTION TO DISMISS**

nothing to do with Cohen.  Because the FAC is incurably deficient, Cohen respectfully requests that this Court dismiss all claims without leave to amend.

## BACKGROUND

RC Ventures detailed relevant facts and procedural history in its initial motion to dismiss, ECF No. 95 at 1-8, but restates them here for the Court's ease of reference.

## I.    BBBY, Cohen, and Mitchell

In early 2022, the public knew that BBBY was against the ropes.  BBBY filed a quarterly report to the SEC on January 6, 2022, revealing that its net sales had plunged 28% compared to the prior year.  Compl. Ex. A (Second Amended Class Complaint, *In re Bed Bath & Beyond Corp. Sec. Litig.* ("*In re BBBY*"), 22-cv-02541 (D.D.C. Jan. 20, 2023) (Dkt. 66) ("Class Compl.") ¶ 91; *see also* FAC ¶ 24 (incorporating by reference the class complaint).  BBBY's net losses during that same period, by contrast, surged from $75.4 million to $276.4 million.  Class Compl. ¶ 91. Financial analysts observed that BBBY "meaningfully underperformed the industry," particularly given "the extremely robust US housing market and strong F3Q 2021 showings by other home goods purveyors."  *Id.* (citations omitted).

Cohen bought BBBY's slump.  Between January 13 and March 3, 2022, Cohen acquired 9,450,100 shares of BBBY, amounting to 9.8% of the Company's outstanding shares.  *Id.* ¶ 92. Cohen publicly disclosed his purchases to the SEC and the public in a Schedule 13D filing.  *Id.*

Cohen and BBBY executed a Cooperation Agreement later that month.  FAC ¶ 19.  Under the terms of the Cooperation Agreement, BBBY agreed to appoint three new, independent directors in exchange for Cohen's agreement to be temporarily bound by a set of customary standstill provisions.  FAC, Ex. B (Cooperation Agreement).  The Cooperation Agreement did not oblige, authorize, or contemplate that BBBY would share material nonpublic information with Cohen.  *Id.*  The Cooperation Agreement instead noted Cohen's "aware[ness] that the United States securities laws may prohibit any person who has received from an issuer material, nonpublic information from purchasing or selling securities of such issuer."  *Id.* at 6.  Cohen alerted the SEC

and the public to the Cooperation Agreement in an amended Schedule 13D filing.  Ex. 1 (Mar. 25, 2022, RC Ventures Sched. 13D) at 4.[3]

Cohen's investment did not signal a reversal of BBBY's dwindling fortunes.  In April 2022, BBBY released financial results for its fourth quarter 2021, revealing net losses that ballooned from $9 million to $159 million in the prior year.  Class Compl. ¶ 103.  Year-over-year net sales, meanwhile, tumbled 22%.  *Id.*  In a Form 10-K filed that month, BBBY warned that its stock price may not reflect its performance, explaining the "stock has experienced, and could continue to experience, extreme price and volume fluctuations that may be unrelated to our operating performance, financial position or other business fundamentals."  Ex. 2 (Apr. 21, 2022, BBBY 10-K) at 19.

Financial analysts, "now increasingly alarmed" by BBBY's financial condition, predicted that "BBBY's $450M cash balance" might soon "run dry."  Class Compl. ¶ 104.  Weeks later, BBBY executed a share repurchase program that nudged Cohen's percentage of beneficial ownership in the company past the 10% threshold required to file an SEC Form 3, despite that Cohen had not purchased any additional BBBY securities.  *Id.* ¶¶ 106, 107.

BBBY's June 2022 quarterly report once again underscored the company's dire straits.  The report disclosed that in the first fiscal quarter of 2022, BBBY's net sales plummeted 25% year-over-year.  *Id.* ¶ 114.  To make matters worse, BBBY announced that it managed to lose more than $330 million in just three months.  *Id.* ¶¶ 114-15.  The same day its failing quarterly report card became public, BBBY announced that it fired its chief executive and hired consultants to "focus on cash, inventory and balance sheet optimization" and prevent "a looming liquidity crisis."  *Id.* ¶¶ 112, 121.  The shakeup was cold comfort to financial analysts, who opined that BBBY's total free cash flow for fiscal year 2022 sat somewhere between negative $400 million and negative $800 million.  *Id.* ¶ 115.

---

[3] Because Cohen's SEC filings are public records that Mitchell expressly incorporated in his pleading, *see, e.g.*, FAC ¶ 1, this Court may consider them on a motion to dismiss.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

**RC VENTURES' MOTION TO DISMISS**

BBBY scrambled for cash throughout the summer.  On August 3, 2022, Bloomberg reported that BBBY was "considering tapping the private credit market to boost liquidity as the struggling retailer burns through its cash."  *Id.* ¶ 119.  Notwithstanding this concerning news, "BBBY's price jumped from $5.03 to $10.63" between July 29 and August 11, amounting to a meteoric "111 percent increase" in its stock price.  *Bratya SPRL v. Bed Bath & Beyond Corp.*, 752 F. Supp. 3d 34, 44 (D.D.C. 2024), *reconsideration denied*, 2025 WL 721770 (D.D.C. Mar. 6, 2025).  Financial analysts observing these erratic market dynamics warned that BBBY's stock price had disconnected from the company's performance, and "began chattering about a possible short squeeze on BBBY stock."  *Id.* at 43.  On August 12, CNBC tweeted an article about one such analyst, which reported that BBBY's rising share price "doesn't make fundamental sense" and forecasted that BBBY soon would be "headed to $1":



Class Compl. ¶ 147.

In response to CNBC's ominous prediction (the stock was trading around $11 that day, FAC, Ex. G (BBBY Stock Price Chronology) at 1), Mr. Cohen sarcastically replied:

**RC VENTURES' MOTION TO DISMISS**



Class Compl. ¶ 147.

Days later, Cohen submitted three public SEC filings that enabled him to transact in BBBY shares. *First*, on August 15, 2022, Cohen filed a Form 3 triggered by BBBY's share repurchases that had nudged his beneficial ownership above the SEC's 10% reporting threshold. *Id.* ¶ 156. The Form 3 stated that Cohen held the same combination of stock and call options disclosed in the original Schedule 13D, but now "beneficially own[ed] more than 10% of [BBBY's] outstanding shares of Common Stock." Ex. 3 (Aug. 15, 2022, RC Ventures Form 3) at 2. *Second*, Cohen filed an amended Schedule 13D on August 16, which similarly reported that "solely due to a change in the number of outstanding Shares of" BBBY, Cohen's unchanged holdings now "constitute[ed] approximately 11.8% of the Shares outstanding." FAC, Ex. E (Aug. 16, 2022, RC Ventures Amended 13D) at 4; *see also* Class Compl. ¶ 160. *Third*, on August 16, Cohen submitted a Form 144 reporting that "Beginning 8/16/22," Cohen may sell up to his entire holding of BBBY securities. FAC, Ex. D (Aug. 16, 2022, RC Ventures Form 144) at 1. Cohen also certified on the Form 144 "that he does not know any material adverse information in regard to … [BBBY] … has not been publicly disclosed." *Id.* at 2.

Cohen sold BBBY securities on August 16 and August 17, 2022. Class Compl. ¶¶ 165-67. On August 17, media reports detailed Cohen's exit. *Id.* ¶ 179. On August 18, Cohen publicly filed to the SEC a Form 4 and amended Schedule 13D, disclosing he had sold his entire holdings in

**RC VENTURES' MOTION TO DISMISS**

BBBY.  *See* FAC Ex. F (Aug. 18, 2022, RC Ventures 13D); Ex. 4 (Aug. 18, 2022, RC Ventures Form 4).  The day Cohen publicly announced his complete sale of all BBBY holdings, BBBY's stock price tumbled 52%.  FAC ¶ 5  "The 52% decline priced Cohen's departure."  *Id*. ¶ 2.

BBBY limped onward.  Bloomberg reported on August 19, 2022 that suppliers refused to deliver goods to BBBY because the company could not foot its bills.  Class Compl. ¶ 130.  On August 31, BBBY announced that it would terminate 20% of its workforce and close 150 stores.  FAC ¶ 41; Class Compl. ¶ 199.  BBBY released quarterly financial results in September 2022, showing a whopping 28% decline in net sales compared to the prior year.  Class Compl. ¶ 202.  Analysts predicted BBBY lacked sufficient cash to survive the year.  *Id.* ¶ 204.  On January 5, 2023, BBBY announced "that there is substantial doubt about the Company's ability to continue as a going concern."  Ex. 5 (Jan. 5, 2023, BBBY 8-K Ex. 99) at 2; *see also* FAC ¶ 7.

On January 19, 2023—more than five months after Cohen publicly exited his position and two weeks after BBBY announced skepticism about its ability to "continue as a going concern," *id.*—Mitchell executed the first purchase about which he now complains, FAC ¶ 6A.  *But see id*. ¶ 10 (conceding Mitchell made a profit from his BBBY stock sales on August 16, 2022).

BBBY continued its slow demise.  On January 26, 2023, BBBY announced that JPMorgan Chase Bank N.A. provided BBBY with a notice of acceleration on its amended credit agreement.  *Id.* ¶ 7.  BBBY's stock price that day dipped 22%.  FAC, Ex. G (BBBY Stock-Price Chronology) at 2.  On February 7, 2023, BBBY disclosed that it had amended its credit agreement after triggering an event of default.  *Id.*; Ex. 6 (Feb. 7, 2023, BBBY 8-K) at 3.  The filing also noted that BBBY commenced a dilutive offering and observed that a failure to receive full gross proceeds "will likely force it to file for bankruptcy protection."  *Id.*  That day, BBBY's stock price declined 48%.  FAC, Ex. G (BBBY Stock-Price Chronology) at 2.  On March 30, 2023, BBBY announced another amendment to its credit agreement, and publicly warned that "risks related to the failure to receive the full amount of the gross proceeds from the [credit agreement] … will likely force us to file for bankruptcy protection."  Ex. 7 (March 30, 2023, BBBY 8-K) at 4; FAC ¶ 7.  BBBY's stock price that day endured another material decline.  FAC, Ex. G (BBBY Stock-Price

**RC VENTURES' MOTION TO DISMISS**

Chronology) at 2.  On April 5, 2023, BBBY announced that it was initiating a reverse stock split. Ex. 8 (April 11, 2023, BBBY 8-K) at 3; FAC ¶ 7.  The same filing issued another warning about BBBY's impending bankruptcy and made clear that "[h]olders of our common stock would not receive any recovery at all in a bankruptcy scenario." *Id*.  Unsurprisingly, the price of BBBY stock dropped further still.  FAC. Ex. G (BBBY Stock-Price Chronology) at 2; FAC ¶ 7.

Despite this unrelenting stream of dismal news, Mitchell continued his buying spree. "[B]etween January 19 and April 19, 2023," Mitchell "purchased approximately 11,947 shares of BBBY common stock."  FAC ¶ 6A.  Indeed, Mitchell bought BBBY stock on April 19, 2023, just days after BBBY forecasted its demise and expressly warned investors that "[h]olders of our common stock would not receive any recovery at all."  Ex. 8 (April 11, 2023, BBBY 8-K) at 3. None of these purchases had anything to do with Cohen—who had not interacted with BBBY for almost half a year.

BBBY finally filed for bankruptcy on April 23, 2023, four days after Mitchell's last purchase.  FAC ¶ 6A.  The bankruptcy court confirmed BBBY's plan in September 2023, ECF No. 18-6, extinguishing Mitchell's outstanding shares, FAC ¶ 6A.

## II.    The Uncertified Class Action

A putative class filed suit alleging Cohen made materially misleading statements about his bullishness on BBBY, which artificially inflated BBBY's stock price between *August 12 and August 18, 2022*.  Class Compl. ¶ 1.  The putative class complaint made no allegations suggesting BBBY's share price was inflated when Mitchell made his purchases.  In fact, the class complaint alleged that the inflation Cohen supposedly caused had dissipated by August 23, 2022—five days after Cohen announced the complete sale of his BBBY holdings.  *Id*. ¶ 12.

The class complaint alleged seven counts against Cohen, for alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5; Section 20A of the Exchange Act, and Sections 9(a)(2)-(4) and 9(f) of the Exchange Act.  *Id*. at Counts I-VII.  The court dismissed the Section 9(a)(2) claim against Cohen but permitted others to proceed based on Mr. Cohen's August 12 tweet, Cohen's amended Schedule 13D filed on August 16, and Cohen's

Form 144 filed on August 16.  FAC, Ex. H (*In re BBBY*, 687 F. Supp. 3d (D.D.C. 2023)) at 9-27. The lead plaintiff moved to certify a class of "persons or entities who purchased or otherwise acquired [BBBY's] common stock and long call options between August 12, 2022 and August 18, 2022."  Mot. to Certify, *In re BBBY*, 22-cv-02541 (D.D.C. Feb. 15, 2024) (Dkt. 109) at 1.

The court concluded that certification was inappropriate because the putative class could not prove reliance on a class-wide basis.  In so doing, the court rejected the putative class's assertion of the fraud-on-the-market theory of reliance recognized in *Basic v. Levinson*, 485 U.S. 224 (1988).  *Bratya v. SPRL*, 752 F. Supp. 3d at 64.  In *Basic*, the Court held that "reliance of individual plaintiffs on the integrity of the market price may be presumed" if—at the time the defendant's alleged misstatements were made—the stock traded in an informationally efficient market that "reflect[ed] all publicly available information, and, hence, any material misrepresentations."  485 U.S. at 246-47.  But "the market for BBBY stock was not efficient during the Class Period." *Bratya SPRL*, 752 F. Supp. 3d at 42.  Much the contrary, "considerable evidence show[ed] that the market for BBBY stock was in wild flux in the weeks before and during the Class Period," and thus did not incorporate Cohen's alleged misstatements into its price.  *Id.* at 56. Put differently, "the market for BBBY securities was so volatile and subject to such unusual market dynamics during the Class Period that it cannot possibly have 'reflected all public, material information' including Cohen's alleged material misstatements."  *Id.*

Unable to presume class-wide reliance, each class member would be individually required to "show[] that he was aware of a company's statement and engaged in a relevant transaction— *e.g.*, purchasing common stock—based on that specific misrepresentation."  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011).  The necessity of such individualized proof precluded certification.  The lead plaintiff thereafter voluntarily dismissed the case with prejudice and without costs.  Stipulation of Voluntary Dismissal, *In re BBBY*, 22-cv-02541 (D.D.C. May 6, 2025) (Dkt. 143).

## III.    Procedural History

In May 2024, Mitchell sued Cohen, Overstock.com, Inc., Sue Gove, and other defendants that he later voluntarily dismissed. *See generally* Compl.  The seven causes of action that Mitchell leveled in his initial complaint were near verbatim recitations of those in the since-dismissed putative class complaint.  *Compare* Compl. at Counts I-VII *with* Class Compl. at Counts I-VII.

Cohen entered a limited appearance to seek dismissal under Rule 12(b)(5) for insufficient service of process while expressly preserving "all defenses and objections to Plaintiff's Complaint, including … failure to state a claim upon which relief may be granted."  ECF Nos. 43, 46 at 1 n.1. Gove and Overstock likewise moved to dismiss.  ECF Nos. 18, 31.  This Court granted defendants' motions on September 30, 2025, while affording Mitchell "10 days to effectuate proper service or the case will be dismissed."  ECF No. 78 at 8-9.  Despite the Court's mandate, Mitchell thereafter moved to deem Cohen served.  ECF No. 79.  This Court denied Mitchell's request, but nonetheless gave Mitchell "until March 20, 2026 to accomplish service on" Cohen.  ECF No. 88 at 6.  Mitchell thereafter moved the Court to reconsider its dismissal of the claims against Cohen before withdrawing the motion.  ECF Nos. 89-92.

Mitchell served RC Ventures on February 24, 2026.  ECF No. 93.  Mitchell did not serve Mr. Cohen.  "To avoid a fragmented process with staggered and unnecessarily duplicative briefing," RC Ventures sought Mitchell's consent to extend its briefing deadline until 21-days after Mitchell properly served Mr. Cohen (to enable joint briefing), or 21-days after March 20, 2026, if Mitchell never serve[d] Mr. Cohen.  ECF No. 94 at 2.  Mitchell did not consent.  *Id.*

RC Ventures moved to dismiss Mitchell's deficient complaint on March 17, 2026.  ECF No. 95.  Days later, Mitchell filed the FAC.

Because Mitchell properly served only RC Ventures, it is the sole filer of this motion to dismiss.  Mr. Cohen does not waive service and awaits the dismissal of his claims, which the Court held would become effective on March 20, 2026.  ECF No. 88 at 6.  Mr. Cohen preserves all arguments and defenses to Mitchell's FAC—including with respect to the glaring deficiencies mandating dismissal that are elucidated herein.

## LEGAL STANDARDS

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) … tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation omitted). On a motion to dismiss, the Court accepts the truth of well-pleaded factual allegations but does not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A plaintiff asserting a private securities fraud action also must satisfy heightened pleading requirements under Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Doing so requires a complaint to "allege the time, place, and content of the fraudulent representation." *In re Kimmel*, 324 F. App'x 549, 550-51 (9th Cir. 2008) (citing *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989)). The PSLRA's also obliges a plaintiff to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B).

## ARGUMENT

Mitchell does not possess freestanding authority to prosecute perceived legal violations that neither involved nor harmed him. Article III of the Constitution entitles private plaintiffs like Mitchell to seek judicial remedy only if they "suffered an invasion of a legally protected interest that is concrete and particularized." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (cleaned up). Section 10(b) (Counts I-III) requires Mitchell to allege, among other elements: a connection between Cohen's alleged misrepresentations and the purchase or sale of a security, reliance upon Cohen's alleged misrepresentations, economic loss, and loss causation. *Halliburton Co. v. Erica*

*P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) ("*Halliburton II*").  Mitchell's derivative claim under Section 20(a) (Count IV) fails unless Mitchell can "demonstrate[] 'a primary violation of federal securities law,'" here, Section 10(b).  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).  And for his state-law claim (Count V), Mitchell must plausibly plead that he "justifiabl[y] reli[ed]" on Cohen's "false representation" and "[d]amage to [Mitchell] result[ed] from such reliance."  *Bulbman, Inc. v. Nevada Bell*, 108 Nev. 105, 111, 825 P.2d 588, 592 (1992).

Mitchell cannot plausibly allege any connection between his purchases and Cohen's alleged misrepresentations.  Nor can he plausibly allege reliance or loss causation.  Because he cannot establish any of these required elements, Mitchell's claims are hopelessly deficient.

## I.    Mitchell Cannot Allege a Connection Between Cohen's Alleged Misrepresentations and the Purchase of a Security

A private plaintiff pressing claims under Sections 9 and 10 of the Exchange Act must allege "a connection between the misrepresentation or omission" he is complaining about "and the purchase or sale of a security."  *Halliburton II*, 573 U.S. at 267.  This is not a heavy lift.  Plaintiffs ordinarily establish this connection by stating they purchased stock while (or shortly after) a defendant was allegedly tampering with the market.  The putative class offered Mitchell a clear example of how to connect himself to the August 2022 statements that allegedly misrepresented Cohen's optimism and long-term plans for BBBY.  In the very first paragraph of its complaint, the putative class makes clear that they "purchased or otherwise acquired Bed Bath's common stock or options between August 12, 2022 and August 18, 2022."  Class Compl. ¶ 1.

But Mitchell cannot establish "a connection between the misrepresentation or omission and the purchase … of a security."  *Halliburton II*, 573 U.S. at 267.  This is because Mitchell *did not purchase* BBBY stock in "connection" with Cohen's alleged misstatements.  *Id.*  Indeed, Mitchell declares that he did not purchase BBBY stock until January 19, 2023, a full *five months* after Cohen's alleged misrepresentations.  FAC ¶ 6A.  Mitchell's disclosure that he initially purchased BBBY stock on January 19, 2023 amounts to an affirmative concession that he lacks any tangible connection to the alleged misrepresentations forming the basis of his complaint.  This is more than

enough to doom the FAC. Federal courts and federal securities laws do not permit Mitchell to seek recovery for alleged misrepresentations to which he bears no connection.

## II.      Mitchell Cannot Allege Reliance

To state a claim, Mitchell must plausibly allege he relied on Cohen's alleged misstatements. *Halliburton II*, 573 U.S. at 267. But Mitchell cannot demonstrate reliance in "[t]he traditional (and most direct) way," which requires "showing that he was aware of [Cohen's] statement and engaged in a relevant transaction—*e.g.*, purchasing common stock—based on that specific misrepresentation." *Id.* (citation omitted). The FAC makes clear that Mitchell did not purchase BBBY stock contemporaneous with Cohen's alleged misstatements, much less did he purchase stock *based* on those statements. Indeed, it is metaphysically impossible that Mitchell directly relied on Cohen's statements, given that Mitchell did not "discover[]" those statements until *nine months* after purchasing BBBY stock. FAC ¶ 6A (alleging he purchased BBBY stock in January 2023); Compl. ¶¶ 18, 20 (alleging he "discovered" Cohen's conduct in October 2023).

Mitchell therefore alleges two indirect theories of reliance, both of which are barred by the federal court case from which Mitchell borrows and upon which he relies.

Mitchell initially invokes *Basic*, which permits courts to presume reliance if—at the time of a defendant's alleged misstatements—the stock traded in an informationally efficient market that "reflect[ed] all publicly available information, and, hence, any material misrepresentations." 485 U.S. 246-47. Yet the federal case that Mitchell extensively references already held that because "the market for BBBY stock was not efficient" at the time of Cohen's alleged misstatements, plaintiffs are not "entitled to the *Basic* presumption." *Bratya SPRL*, 752 F. Supp. 3d at 42, 64. Mitchell does not acknowledge the court's thoroughly reasoned holding—much less does he provide any rationale from departing from its conclusion.

Mitchell also insists that *Affiliated Ute* presumption of reliance is triggered because the Form 144 that Cohen filed on August 16, 2022 purportedly omitted "five categories of material adverse information about BBBY's operations and financial condition." FAC ¶ 34. But that argument is foreclosed by the federal court opinion that Mitchell appended to his FAC. *See* FAC,

Ex. H (*In re Bed Bath & Beyond Corp.*, 687 F. Supp. 3d 1).  As the court there explained, the alleged deficiency plaguing the Form 144 is *not* that it omitted non-public information about BBBY.  After all, the Form 144 does not request or authorize Cohen to divulge material non-public information about BBBY.  *See* FAC, Ex. D (Aug. 16, 2022, RC Ventures Form 144).  The Form instead requires filers to certify that they do not currently *possess* any such information.  *Id.* at 2.  The gravamen of Mitchell's gripes about the Form 144 is not that Cohen *omitted* non-public information (which Cohen lacked authority to disclose), but instead that Cohen falsely certified "he does not know any material adverse information in regard to the current and prospective operations of" BBBY.  *Id.*  "The heart of [Mitchell's] Form 144 claim is that Cohen lied … and thus *Affiliated Ute* does not apply."  FAC, Ex. H (*In re Bed Bath & Beyond Corp.*, 687 F. Supp. 3d 1) at 20.

## III.    Mitchell Cannot Allege Loss Causation

To be actionable, Mitchell also must plausibly allege loss causation, *i.e.*, that Cohen's purported misstatements or omissions "caused the loss for which [Mitchell] seeks to recover damages."  *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (quoting 15 U.S.C. § 78u-4(b)(4)).  Mitchell attempts to do so in three ways.  None are plausible.

*First*, Mitchell insists his "loss falls within the 'zone of risk' the fraud concealed."  FAC ¶ 60 (incorrectly purporting to quote *First Solar*, 881 F.3d at 753-54).  But Mitchell heartily flunks "a general proximate cause test[,] … the proper test" for securities fraud actions, which asks "whether the defendant's misstatement, *as opposed to some other fact*, foreseeably caused the plaintiff's loss."  *First Solar*, 881 F.3d at 752-53 (emphasis added).  It simply is implausible to suggest that Cohen's August 2022 SEC filings proximately caused losses to Mitchell's stock portfolio in Spring 2023, particularly given the barrage of "other fact[s]," *id.*, released about BBBY during that time.  Common sense cannot countenance Mitchell's assertion that BBBY's plunging stock price in Spring 2023 was caused—not by BBBY's bankruptcy warnings, reverse stock splits, or repeated defaults, FAC ¶ 7—but by Cohen's August 2022 exit or the market's unsupported suspicions that Cohen possessed nonpublic information about these catastrophes.

*Second*, Mitchell appears to allege that Cohen caused him loss because a series of "corrective disclosure[s]" between January and April 2023 "reveal[ed] information that the fraud had concealed, producing an adverse price reaction." FAC ¶ 63. These so-called "corrective disclosures" include that BBBY was a going-concern warning, missed an interest payment on senior secured notes, abandoned its review of strategic alternatives, offered a bankruptcy warning, issued a dilutive registration statement, and finally filed for bankruptcy. *Id.* ¶ 7. This theory conflicts with Mitchell's own allegations and basic logic.

Start with Mitchell's allegations. Mitchell's complaint, the class complaint, and Mitchell's first amended complaint uniformly allege that Cohen purportedly committed "fraud" by making misleading statements that concealed his "specific, present plan to execute a pre-arranged institutional liquidation" of his BBBY holdings. FAC ¶ 1; Class Compl. ¶ 148 (alleging Cohen's statements were misleading because "Cohen had already formed a plan or proposal to sell his holdings"); Compl. ¶ 27 (alleging Cohen "failed to disclose that he had already formed a plan to sell Bed Bath securities"). Put differently, the "fraud" in Mitchell's own telling is that Cohen allegedly misrepresented that he harbored long-term intentions for BBBY.[4] *Id.* The "corrective disclosure"—that is, the "announcement … that reveals to the market the [alleged] falsity of a prior statement," *Arkansas Tchrs. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474, 480 n.3 (2d Cir. 2018)—thus occurred on August 18, 2022, when Cohen declared his exit from BBBY. FAC ¶ 2. That corrective disclosure caused Mitchell no loss because he did not purchase BBBY stock for several months thereafter. *Id.* ¶ 6A.

Mitchell's "corrective disclosure" theory also wars with logic. The disclosures to which Mitchell points cannot be "corrective disclosures" about Cohen because they do not correct any disclosure about Cohen. They do not reveal information about, pertain, mention, or otherwise relate to Cohen; they contain no hint that Cohen possessed information in August 2022 suggesting

---

[4] To the extent Mitchell alleges Cohen committed fraud by refusing to prematurely divulge BBBY's material nonpublic information, Cohen notes that maintaining the confidentiality of BBBY's information is proper corporate practice, not fraud.

these disclosures would eventually come to pass. In short, the adverse announcements that Mitchell characterizes as "corrective disclosures" are just negative news about BBBY's performance, FAC ¶ 7, that predictably precipitated a decline in BBBY's stock price, FAC, Ex. G (BBBY Stock-Price Chronology). These negative news events may have caused Mitchell loss, but "private securities fraud actions" do not "provide investors with broad insurance against market losses." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005). Such claims exist to compensate investors for "economic losses that [a defendant's] misrepresentations actually cause." *Id.*

*Third*, Mitchell attempts to plead loss causation by declaring he "purchase[d] [BBBY] at a price inflated by fraud." FAC ¶ 64. This allegation fails on the facts and the law.

Turning first to the facts: Mitchell did not purchase BBBY stock at inflated prices because Cohen corrected any misconceptions about his plans for BBBY on August 18, 2022, several months before Mitchell's first purchase. FAC, Ex. F (Aug. 18, 2022, RC Ventures 13D). As Mitchell recognizes, "BBBY's stock dropped approximately 52%" on August 18, a decline that "priced Cohen's departure." FAC ¶¶ 2, 26A. The putative class also confirmed that the alleged price inflation dissipated by August 23 at the latest, Class Compl. ¶ 12, and therefore limited its ranks to those that purchased BBBY stock between August 12 and August 18, 2022, *id.* ¶ 1. Mitchell cites no cases (and Cohen is aware of none) holding that a stock could remain inflated *five months* after a corrective disclosure.

Mitchell attempts to escape this reality by recasting Cohen's public breakup from BBBY as a "partial corrective disclosure[]," FAC ¶ 17, supplemented by negative disclosures about BBBY's performance in Spring 2023, *id.* ¶ 7. But as explained above, the announcements in Spring 2023 to which Mitchell points did not *correct* or *disclose* anything that Cohen said (or did not say) about BBBY. Mitchell also claims that Cohen's August 18th disclosures are only "partial[ly] corrective" because they did not reveal Cohen's "prearrangement" or that the amended Schedule 13D on August 16, 2022 "reported 9.8% ownership us[ing] a stale share count" despite that Cohen's "actual beneficial ownership was approximately 11.8%." FAC ¶¶ 2, 5, 26A. But materials properly subject to this Court's judicial notice establish the falsity of those allegations.

**RC VENTURES' MOTION TO DISMISS**

15

*Cf. Gilead Scis.*, 536 F.3d at 1055.  The amended Schedule 13D filed on August 16, 2022, refutes Mitchell's "denominator manipulation" theory because it reflects that Cohen accurately reported his then-11.8% beneficial ownership in BBBY.  FAC, Ex. E (Aug. 16, 2022, RC Ventures Amended 13D) at 4.  Cohen's Form 4 filed on August 18, 2022, also detailed the time of Cohen's transactions—thereby foreclosing the "prearrangement" theory.  Ex. 4 (Aug. 18, 2022, RC Ventures Form 4).  Mitchell also does not plausibly allege that investors—after learning Cohen began selling BBBY stock on August 16, 2022, *id.*—would find material that Cohen allegedly arranged to do so with JP Morgan Securities LLC "[b]efore 9:16 a.m." that morning.  FAC ¶ 31.

On the law, Mitchell fares no better.  The Supreme Court has made clear that Mitchell cannot adequately plead loss causation "simply by alleging in the complaint … that the price of the security on the date of purchase was inflated because of the misrepresentation." *Dura*, 544 U.S. at 338 (cleaned up).  Instead, Mitchell must allege that he sustained loss because the value of his BBBY shares depreciated when Cohen's alleged misrepresentation "bec[a]me generally known." *Id.* at 344.  But Mitchell cannot satisfy the law's demands because the truth about Cohen's alleged misrepresentation "bec[a]me generally known" five months before Mitchell purchased BBBY.

* * *

The well-pleaded facts in the FAC establish that Mitchell did not know about, had no connection to, and suffered no injury from, Cohen's statements or conduct.  Mitchell therefore cannot state a claim for relief against Cohen under federal or state law.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**RC VENTURES' MOTION TO DISMISS**

# CONCLUSION

RC Ventures respectfully requests that this Court dismiss Mitchell's FAC with prejudice and without leave to amend.

Dated: April 13, 2026.

**EVANS FEARS SCHUTTERT MCNULTY MICKUS**

*/s/ David W. Gutke*
Kelly A. Evans, Esq. (SBN 7691)
David W. Gutke, Esq. (SBN 9820)
6720 Via Austi Parkway, Suite 300
Las Vegas, NV 89119

Dane H. Butswinkas (*pro hac vice*)
Steven M. Farina (*pro hac vice*)
Madeline C. Prebil (*pro hac vice*)
Jenna L. Romanowski (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave. SW
Washington, DC 20024

*Attorneys for RC Ventures LLC and Ryan Cohen*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on April 13, 2026, a true and correct copy of the foregoing **RC VENTURES' MOTION TO DISMISS** was served electronically on all counsel of record and Plaintiff Anthony Mitchell via CM-ECF.


/s/ Faith Radford
An employee of Evans Fears Schuttert McNulty Mickus

**RC VENTURES' MOTION TO DISMISS**