Anthony Mitchell

618 Painted Opus Place

North Las Vegas, Nevada 89084

Telephone: (702) 884-0472

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| ANTHONY MITCHELL, | Case No.: |
|---|---|
| Pro Se | 2:24-cv-01042-RFB-DJA |
| Plaintiff, | |
| v. | PLAINTIFF'S OPPOSITION |
| RYAN COHEN, an individual; and RC | TO DEFENDANT RC |
| VENTURES LLC, a Delaware limited | VENTURES LLC'S MOTION |
| liability company, | TO DISMISS [ECF 107] |
| Defendants. | |

TABLE OF CONTENTS

INTRODUCTION ....................................................... 1

STATEMENT OF FACTS ................................................ 3

LEGAL STANDARD .................................................... 5

ARGUMENT .......................................................... 6

I.  MITCHELL'S CLAIMS ARE DISTINCT FROM THE CLASS ACTION .......... 6

OPPOSITION TO MOTION TO DISMISS

II. MITCHELL ADEQUATELY ALLEGES A CONNECTION BETWEEN COHEN'S MISREPRESENTATIONS AND HIS PURCHASES ........................ 7

III. MITCHELL ADEQUATELY ALLEGES RELIANCE ........................ 9

   A. The Basic Presumption Applies During Mitchell's Purchase Period ........................................... 9

   B. The Affiliated Ute Presumption Applies to Count II ......... 12

   C. The Macquarie Half-Truth Doctrine Independently Supports Count II .......................................... 13

   D. Mitchell Pleads Additional Reliance Theories, Including Justifiable Reliance for Count V ................. 14

IV. MITCHELL ADEQUATELY ALLEGES LOSS CAUSATION ................... 16

   A. Track One: Materialization of Concealed Risk ............... 16

   B. Track Two: Corrective Disclosures Revealing Concealed Information ................................................ 17

   C. Track Three: The Persistent Fraud Premium .................. 18

   D. The August 18, 2022 Disclosure Was Not a Complete Corrective Disclosure ...................................... 19

E. The MTD's "Other Facts" Defense Cannot Be Reconciled with Its Own Arguments ..................................... 20

F. BBBY's Bankruptcy Is Not a Superseding Cause ............... 21

V.   THE MTD DOES NOT ADDRESS COUNT III (SCHEME LIABILITY) ........ 21

VI.  THE MTD'S REMAINING ARGUMENTS LACK MERIT .................... 22

A. Mitchell's $8,505 Profit Does Not Defeat Standing .......... 22

B. The Form 4 Timestamps Support -- Not Foreclose -- the Pre-Arrangement Theory ................................. 23

VII. IF THE COURT FINDS ANY DEFICIENCY, LEAVE TO AMEND SHOULD BE GRANTED .................................................... 23

CONCLUSION ......................................................... 24

CERTIFICATE OF SERVICE ........................................... 25

TABLE OF AUTHORITIES

CASES

Affiliated Ute Citizens of Utah v. United States,
   406 U.S. 128 (1972) ........................................ 12, 13

Ashcroft v. Iqbal,
   556 U.S. 662 (2009) ........................................ 5, 23

OPPOSITION TO MOTION TO DISMISS

Barmettler v. Reno Air, Inc.,

114 Nev. 441 (1998) ....................................... 14, 15


Basic Inc. v. Levinson,

485 U.S. 224 (1988) ....................................... 9, 10


Bell Atlantic Corp. v. Twombly,

550 U.S. 544 (2007) ....................................... 5


Binder v. Gillespie,

184 F.3d 1059 (9th Cir. 1999) ............................. 12, 13


Bratya SPRL v. Bed Bath & Beyond Corp.,

752 F. Supp. 3d 34 (D.D.C. 2024) .......................... 6, 9, 10, 11


Cammer v. Bloom,

711 F. Supp. 1264 (D.N.J. 1989) ........................... 10


Dura Pharmaceuticals, Inc. v. Broudo,

544 U.S. 336 (2005) ....................................... 18, 19


Eminence Capital, LLC v. Aspeon, Inc.,

316 F.3d 1048 (9th Cir. 2003) ............................. 23, 24


Erickson v. Pardus,

551 U.S. 89 (2007) ........................................ 6


Foman v. Davis,

OPPOSITION TO MOTION TO DISMISS

371 U.S. 178 (1962) ........................................ 23

GAF Corp. v. Milstein,
  453 F.2d 709 (2d Cir. 1971) ............................... 8

Glickenhaus & Co. v. Household Int'l, Inc.,
  787 F.3d 408 (7th Cir. 2015) .............................. 19

Haines v. Kerner,
  404 U.S. 519 (1972) ........................................ 6

Halliburton Co. v. Erica P. John Fund, Inc.,
  573 U.S. 258 (2014) ........................................ 7, 9, 10, 11

Hebbe v. Pliler,
  627 F.3d 338 (9th Cir. 2010) .............................. 6

In re Alphabet Inc. Sec. Litig.,
  1 F.4th 687 (9th Cir. 2021) ................................ 12, 13, 21, 22

In re Bed Bath & Beyond Corp. Sec. Litig.,
  687 F. Supp. 3d 1 (D.D.C. 2023) ........................... 6, 13, 14

In re BofI Federal Bank Sec. Litig.,
  977 F.3d 781 (9th Cir. 2020) .............................. 8, 9, 17, 18, 20

In re Century Aluminum Co. Sec. Litig.,
  729 F.3d 1104 (9th Cir. 2013) ............................. 5

OPPOSITION TO MOTION TO DISMISS

In re Williams Sec. Litig.,
   558 F.3d 1130 (10th Cir. 2009) ............................. 19

Lloyd v. CVB Financial Corp.,
   811 F.3d 1200 (9th Cir. 2016) ............................. 21

Loos v. Immersion Corp.,
   762 F.3d 880 (9th Cir. 2014) ............................. 17, 18

Lopez v. Smith,
   203 F.3d 1122 (9th Cir. 2000) (en banc) .................... 23

Lorenzo v. SEC,
   587 U.S. 71 (2019) ........................................ 21, 22

Macquarie Infrastructure Corp. v. Moab Partners, L.P.,
   601 U.S. 257 (2024) ....................................... 13, 14, 15

Mineworkers' Pension Scheme v. First Solar Inc.,
   881 F.3d 750 (9th Cir. 2018) ............................. 16, 17, 21

Nathenson v. Zonagen, Inc.,
   267 F.3d 400 (5th Cir. 2001) ............................. 19

Nevada Power Co. v. Monsanto Co.,
   891 F. Supp. 1406 (D. Nev. 1995) .......................... 15

SEC v. Zandford,

  535 U.S. 813 (2002) ........................................ 7, 8


Superintendent of Insurance v. Bankers Life & Casualty Co.,

  404 U.S. 6 (1971) ......................................... 7


Tellabs, Inc. v. Makor Issues & Rights, Ltd.,

  551 U.S. 308 (2007) ....................................... 5


United States v. O'Hagan,

  521 U.S. 642 (1997) ....................................... 22


WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.,

  655 F.3d 1039 (9th Cir. 2011) .............................. 21, 22

## STATUTES AND RULES

15 U.S.C. Section 78bb(f)(1) (SLUSA) ......................... 16 15 U.S.C. Section 78j(b) (Exchange Act Section 10(b)) ........ passim

15 U.S.C. Section 78t(a) (Exchange Act Section 20(a)) ........ 21 17 C.F.R. Section 240.10b-5 (Rule 10b-5) .................... passim

17 C.F.R. Section 240.13d-2(a) ............................... 7, 8

Fed. R. Civ. P. 12(b)(6) ..................................... 5

Fed. R. Civ. P. 15(a)(2) ..................................... 23

================================================================

INTRODUCTION Defendant RC Ventures LLC asks this Court to dismiss an individual securities fraud claim brought by a retail investor who purchased Bed

OPPOSITION TO MOTION TO DISMISS

Bath & Beyond Inc. ("BBBY") stock between January 19 and April 19, 2023 -- five months after the class action's August 2022 class period ended. The Motion to Dismiss ("MTD," ECF 107) rests on a single rhetorical strategy: collapsing Mitchell's First Amended Complaint ("FAC") into the class action complaint, importing findings from the D.D.C. that were made about a different time period and different market conditions, and declaring the case over. That strategy requires this Court to accept three propositions that are factually and legally unsupported. First, the MTD treats the August 18, 2022 52% price drop as a complete cure. It was not. The drop reflected only the fact of Cohen's sale. It did not disclose: (a) whether the sale was pre- arranged before the Amendment No. 2 filing; (b) that Cohen possessed five categories of board-level material nonpublic information ("MNPI") when he certified on Form 144 that he had none; (c) that the Form 144 certification was false; (d) that Cohen failed to amend Item 4 to disclose the material change in his plans; or (e) that the denominator used in Amendment No. 2 was stale. FAC Para. 5. These five facts remained undisclosed throughout Mitchell's purchase period and remain undisclosed today. An efficient market cannot price information it never received. Second, the MTD assumes that the Bratya SPRL court's finding that BBBY's market was "not efficient" during the August 12-18, 2022 meme-stock frenzy governs Mitchell's January-April 2023 purchase period. It does not. Bratya analyzed a seven-day period of extreme meme-stock volatility. 752 F. Supp. 3d 34, 42, 56 (D.D.C. 2024). Mitchell purchased five months later, in a market that was responding to fundamental corporate disclosures with predictable, directionally appropriate price movements -- a 30% decline on the going-concern warning, a 22% decline on the ABL acceleration, a 48% decline on the buybuy BABY abandonment. FAC Paras. 7, 18. Third, the MTD assumes Mitchell's claims are identical to the class action. They are not. Mitchell alleges a persistent fraud premium arising from an incomplete corrective disclosure and continuing omissions -- not a

pump-and-dump during a meme-stock frenzy. Different theory. Different time period. Different reliance mechanisms. Different market conditions. Different plaintiff. The MTD does not address Count III (scheme liability), the Macquarie half-truth doctrine, 601 U.S. 257 (2024), the FAC's Track One loss causation theory, or the scienter allegations. The MTD calls this case "frivolous and harassing" (ECF 107 at 1). The D.D.C. court itself found that Cohen's Form 144 certification was "itself misleading" and that Cohen "just barely beat this bad news, which suggests he saw it coming." In re Bed Bath & Beyond Corp. Sec. Litig., 687 F. Supp. 3d 1, 15 (D.D.C. 2023) ("D.D.C. Opinion"). Claims based on conduct a federal court found misleading are not frivolous. The Court should deny the Motion to Dismiss.

STATEMENT OF FACTS The FAC sets forth the factual allegations in detail. Plaintiff summarizes the facts most relevant to the MTD's arguments.

A. Cohen's SEC Filings and the Uncorrected Fraud On March 7, 2022, RC Ventures filed a Schedule 13D with the SEC. Item 4 of that filing stated verbatim: "No Reporting Person has any present plan or proposal which would relate to or result in any of the matters set forth in subparagraphs (a)-(j) of Item 4 of Schedule 13D except as set forth herein." FAC Para. 26 (the "Item 4 Representation"). Item 4(a) covers "the acquisition by any person of additional securities of the issuer, or the disposition of securities of the issuer." The "except as set forth herein" clause incorporated only the generic contingencies in the cooperation agreement. It did not contemplate a pre-arranged $178 million liquidation. On August 16, 2022, at 9:16 a.m., RC Ventures filed Amendment No. 2 to the Schedule 13D. That amendment changed only Item 5 (reporting updated ownership figures). It did not amend Item 4. FAC Para. 1. By filing an amendment that touched

only Item 5 while leaving Item 4 untouched, Cohen left the Item 4 Representation as the operative public-facing statement on EDGAR. On the same day, Cohen signed a Form 144 certification -- an unqualified, categorical statement -- swearing: "[H]e does not know any material adverse information in regard to the current and prospective operations of the Issuer of the securities to be sold which has not been publicly disclosed." FAC Para. 5(c); Exhibit D at "ATTENTION" block. Unlike the Item 4 language, the Form 144 certification contains no "except as set forth herein" qualifier. That afternoon, Cohen commenced the sale of his entire BBBY position -- approximately 9,450,000 shares and 2,350,000 call options with an aggregate value of approximately $178 million -- through an institutional block trade with JP Morgan Securities LLC. FAC Para. 1. On August 18, 2022, the completed sale was disclosed. BBBY's stock declined approximately 52%. That disclosure revealed one fact: Cohen sold. It did not reveal the five facts identified in FAC Paragraph 5. The Item 4 Representation was never amended. The Form 144 certification was never retracted. The pre-arrangement was never disclosed. FAC Paras. 2, 3, 35.

B. The Persistent Fraud Premium and Mitchell's Purchases Because the fraud was never fully corrected, the market operated on an incomplete information set from August 18, 2022 forward. The market understood that Cohen had sold. It did not understand that his exit was a pre-arranged liquidation by an insider possessing board- level knowledge of BBBY's path to insolvency. FAC Para. 14. The market priced BBBY as a distressed but potentially viable turnaround -- not as a company whose largest outside shareholder had pre-arranged his exit on the basis of undisclosed board-level material nonpublic information. During Mitchell's purchase period, BBBY was actively raising survival capital through at-the-market

equity offerings, and retail investors continued to trade on the expectation that the company might avoid liquidation. FAC Paras. 65(b), 104. Had the market known the full truth -- that Cohen possessed board- level MNPI, pre-arranged his exit, and falsely certified he had no adverse information -- a rational investor would have demanded a steeper risk discount. The difference between the hypothetical fully informed price and the actual price Mitchell paid is the fraud premium. FAC Paras. 14-15, 58. That premium survived despite months of negative public information because the particular facts that would have eliminated it -- the prearrangement, the false certification, and the five MNPI categories -- were never disclosed. Between January 19 and April 19, 2023, Mitchell purchased approximately 11,947 shares of BBBY common stock at prices ranging from $0.45 to $3.96 per share, resulting in approximately $23,400 in total out-of-pocket losses when BBBY filed for Chapter 11 bankruptcy on April 23, 2023. FAC Para. 6A.

C. The Stepwise Correction Map The FAC identifies ten market events between January 5 and April 23, 2023, each of which revealed or confirmed risks previously concealed by Defendants. FAC Para. 7. Each produced a material, directionally appropriate price decline -- empirical evidence that (a) the market was efficiently processing fundamental information during Mitchell's purchase period, and (b) previously concealed information was entering the market stepwise. Id.

LEGAL STANDARD To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court must "accept all factual allegations in the complaint as

true and construe the pleadings in the light most favorable to the nonmoving party." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Securities fraud claims under the PSLRA must be pleaded with particularity. 15 U.S.C. Section 78u-4(b)(1)-(2). Even under the PSLRA's heightened standards, the FAC satisfies the requirements through its identification of specific misstatements (FAC Paras. 26-35), specific MNPI categories (FAC Paras. 38-42), and extensive scienter allegations (FAC Paras. 50-54A). Pro se pleadings are "to be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

ARGUMENT

## I.  MITCHELL'S CLAIMS ARE DISTINCT FROM THE CLASS ACTION

Before addressing the MTD's principal arguments, the Court should recognize the foundational flaw in its architecture: every argument depends on collapsing Mitchell's individual claims into the class action. That conflation does not hold because the claims differ in every material respect: Purchase Period: The class action covered August 12-18, 2022 (6 days during a meme-stock frenzy). Mitchell covers January 19 through April 19, 2023 (3 months during normalized fundamental trading). Theory: The class alleged a pump-and-dump with a single full corrective disclosure on August 18, 2022. Mitchell alleges a persistent fraud premium from an incomplete correction, with stepwise partial corrections during his purchase period. FAC Paras. 2, 7, 14. Reliance: The class sought class-wide Basic presumption. Mitchell pleads individual Basic (Count I), Affiliated Ute (Count II), direct reliance (Count V), and a composite theory. FAC Paras. 55-58. Market Conditions: The class

period featured a meme-stock frenzy with 111% price swings. Mitchell's purchase period features fundamental corporate disclosures producing predictable price reactions. FAC Para. 7. Legal Framework: The class action was litigated before Macquarie, 601 U.S. 257 (2024), which changes the Form 144 analysis. The class action was resolved on a class-certification problem, not on the merits. Mitchell is an individual plaintiff with individual reliance theories.

## II. MITCHELL ADEQUATELY ALLEGES A CONNECTION BETWEEN COHEN'S MISREPRESENTATIONS AND HIS PURCHASES

The MTD's first argument is that there is no "connection between the misrepresentation or omission" and Mitchell's purchases because Mitchell purchased BBBY stock five months after Cohen's August 2022 filings. ECF 107 at 11 (quoting Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 267 (2014)). This argument rests on a misapplication of the "in connection with" standard.

A. The Standard Is Broad, Not Temporal The Supreme Court has "repeatedly" interpreted Section 10(b)'s "in connection with the purchase or sale of any security" requirement broadly. SEC v. Zandford, 535 U.S. 813, 819 (2002). The phrase is to be "construed not technically and restrictively, but flexibly to effectuate its remedial purposes." Id. at 819-20. See also Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 12 (1971). The "in connection with" requirement is met whenever the fraud and the securities transaction "coincide." Zandford, 535 U.S. at 822. The Halliburton II passage the MTD quotes is a general recitation of the Section 10(b) elements -- not a temporal proximity requirement. 573 U.S. at 267.

Halliburton II's actual holding addressed the Basic presumption at class certification, not the "in connection with" element at the pleading stage.

B. The Fraud Was Continuing, Not Historical The MTD's "five-month gap" framing assumes the fraud was a discrete, completed event in August 2022. It was not. The Item 4 Representation was not a historical event that faded into the past. It was an operative, uncorrected filing that remained the current, authoritative statement of Cohen's plans on EDGAR throughout Mitchell's purchase period. FAC Para. 26. The Form 144 certification was never retracted. FAC Para. 5(c). The pre-arrangement was never disclosed. FAC Para. 3. The relevant temporal connection is not between the filing date and the purchase date, but between the operative misrepresentation and the purchase. When Cohen filed Amendment No. 2 on August 16, 2022, he re-filed the entire Schedule 13D -- including the unamended Item 4. By its silence on Item 4, Amendment No. 2 continued to represent that Cohen had no plan to dispose of his shares. That representation was false when filed and remained false on every day of Mitchell's purchase period. Under 17 C.F.R. Section 240.13d-2(a), a Schedule 13D filer must "promptly" amend whenever "any material change occurs in the facts set forth" in the original filing. Cohen filed Amendment No. 2 on August 16, 2022 -- amending Item 5 while leaving Item 4 unamended. FAC Para. 1. "A false filing may be more detrimental to the informed operation of the securities markets than no filing at all." GAF Corp. v. Milstein, 453 F.2d 709, 720 (2d Cir. 1971). By leaving the Item 4 Representation operative while amending Item 5, Cohen conveyed that his plans remained as previously described. Every day the unamended Item 4 Representation remained on EDGAR was a new day of actionable misrepresentation -- a continuing fraud, not a historical event. The MTD's implicit suggestion that the Item 4 Representation lost

OPPOSITION TO MOTION TO DISMISS

"informational weight" over the five months between filing and Mitchell's purchases inverts the logic of the 13D regime. The entire purpose of Section 13(d) is to inform investors about beneficial owners' plans so they can make informed trading decisions. The SEC requires "prompt" amendment upon any material change precisely because the market relies on these filings as current representations of beneficial owners' intentions. If 13D filings lost informational weight after a few months of silence, the prompt-amendment obligation would be superfluous -- there would be nothing to correct. Moreover, Cohen was not just any former holder. He was the activist who forced board changes, installed three directors, and held a Cooperation Agreement granting access to board-level information. FAC Paras.

22-24. His 13D was uniquely informative about BBBY's governance and insider alignment -- precisely the information investors needed most during the company's distress. And the filing's continued informational weight was itself a product of the fraud: Cohen never disclosed his pre-arranged exit, so the market never received the signal that would have reduced the filing's relevance. The Ninth Circuit does not impose a temporal proximity requirement for the "in connection with" element. In re BofI Fed. Bank Sec. Litig., 977 F.3d 781, 797 (9th Cir. 2020) (rejecting argument that temporal gap between misstatement and purchase defeated the "in connection with" requirement). Mitchell purchased at prices affected by Cohen's uncorrected filings. FAC Paras. 14-16. Whether the persistent fraud premium survived the partial correction on August 18, 2022 is a fact-intensive question not resolvable at the pleading stage. The appropriate remedy for the Court's uncertainty about the five-month gap is discovery, not dismissal.

III. MITCHELL ADEQUATELY ALLEGES RELIANCE The MTD attacks reliance on three grounds: (a) Mitchell did not directly rely on Cohen's

statements; (b) the Basic presumption does not apply because Bratya SPRL found BBBY's market "inefficient"; and (c) the Affiliated Ute presumption does not apply. ECF 107 at 12-14. None succeeds.

A. The Basic Presumption Applies During Mitchell's Purchase Period

1. Bratya SPRL Analyzed a Different Market The MTD's reliance on Bratya SPRL, 752 F. Supp. 3d 34 (D.D.C. 2024), rests on a misapplication of that decision. Bratya found BBBY's market "not efficient" during the August 12-18, 2022 class period -- a seven-day meme-stock frenzy. The court found the market was "in wild flux" and "so volatile" that it "cannot possibly have reflected all public, material information." Id. at 42, 56. Mitchell's purchase period is January 19 through April 19, 2023 -- five months after the meme frenzy subsided. The FAC alleges that during this period, BBBY's stock responded to fundamental corporate disclosures with predictable, material, directionally appropriate price movements. FAC Para. 7.

2. The FAC Alleges All Five Cammer Factors with Specificity The FAC specifically pleads market efficiency during the January- April 2023 purchase period through all five Cammer factors (FAC Para. 18), and the MTD does not contest these allegations: (1) Trading Volume: Average weekly trading volume exceeded 5% of outstanding shares -- more than double the Cammer 2% threshold for presumptive efficiency. Average daily volume exceeded 50 million shares on multiple trading days during the purchase period. FAC Para. 18(a). (2) Analyst Coverage: Multiple securities analysts at major investment banks published research on BBBY, which was the subject of extensive financial media coverage and continuous SEC reporting through regular 10-K and 10-Q filings. FAC Para. 18(b). (3) Form S-3 Eligibility: BBBY was eligible to register securities on Form S-3 and in

fact conducted at-the-market equity offerings during the purchase period. FAC Para. 18(c). (4) Rapid Price Reaction to Fundamental Disclosures: BBBY's stock declined approximately 30% on the January 5, 2023 going-concern warning, approximately 22% on the January 25-26 ABL acceleration, and approximately 48% on the February 7-8 buybuy BABY abandonment -- each a directionally appropriate, material response to fundamental corporate information. FAC Paras. 7, 18(d). (5) Market Maker Presence: Registered market makers maintained continuous two-sided quotes in BBBY throughout the purchase period. FAC Para. 18(e). At the 12(b)(6) stage, these well-pleaded allegations are accepted as true. The MTD offers no counter-allegations and invokes Bratya -- a decision about a different period, in a different circuit, not binding on this Court.

3. The MTD's Own Narrative Proves Efficiency The MTD's loss causation argument is irreconcilable with its reliance argument. In attacking loss causation, the MTD recounts how BBBY's stock declined on the going-concern warning, the ABL acceleration, and the buybuy BABY abandonment. ECF 107 at 14-16. A market that moves 22-48% on fundamental disclosures is efficient by definition. The MTD cannot simultaneously argue that (a) the market efficiently processed negative BBBY news (for loss causation) and (b) the market was too inefficient to process Cohen's misstatements (for reliance). This internal contradiction presents a factual issue not resolvable at 12(b)(6).

4. Bratya Is Not Binding and Collateral Estoppel Does Not Apply Bratya was decided by the D.D.C. -- not binding in the Ninth Circuit. Halliburton II, 573 U.S. at 279-81, requires this Court to conduct its own efficiency analysis. Collateral estoppel does not apply: Mitchell was not a party to the class action and is litigating a different time period.

B. The Affiliated Ute Presumption Applies to Count II The MTD argues that Affiliated Ute does not apply because the D.D.C. characterized the Form 144 claim as one where "Cohen lied." ECF 107 at 13. This argument does not succeed for three reasons. First, the FAC frames Count II as a half-truth claim where the center of gravity is the omission. The Form 144 certification states a single generic proposition; the omitted information encompasses five detailed categories: (A) supplier payment failures; (B) ABL facility deterioration; (C) buybuy BABY strategic nonviability; (D) imminent restructuring; and (E) the Cooperation Agreement's information pipeline. FAC Paras. 38-42. The omission carries the informational weight, not the certification's literal words.

Under Binder v. Gillespie, 184 F.3d 1059, 1064 (9th Cir. 1999), the Affiliated Ute presumption applies where the claim is "primarily" based on omissions. In re Alphabet, 1 F.4th 687, 698 (9th Cir. 2021), permitted the presumption where falsity "derived from" omitted information. Count II satisfies this: the certification's falsity derives entirely from the five categories of MNPI Cohen omitted. Second, the D.D.C.'s characterization -- that "Cohen lied" -- describes a differently pleaded claim; the In re BBBY court never considered Mitchell's half-truth framing. Third, In re BBBY is a D.D.C. district court decision analyzing a pre-Macquarie complaint, not binding on this Court.

C. The Macquarie Half-Truth Doctrine Independently Supports Count II The MTD does not cite Macquarie Infrastructure Corp. v. Moab Partners, L.P., 601 U.S. 257 (2024) -- the Supreme Court's most significant securities fraud decision since Halliburton II, and it directly governs Count II. Macquarie drew a critical distinction: "pure omissions" (complete silence where there is no duty to speak) are not actionable under Rule 10b-5(b). 601 U.S. at 262-63. But "half-truths" -- statements rendered misleading by omission --

are actionable. Id. at 263. The Court held: "Rule 10b-5(b) requires disclosure of information necessary to make statements made not misleading." Id. The Form 144 certification is a textbook Macquarie half-truth. Cohen chose to sign and file the Form 144. No one compelled him. By voluntarily signing a certification that stated "[h]e does not know any material adverse information" about BBBY, Cohen made an affirmative representation. That representation triggered a duty under Macquarie to disclose "information necessary to make [the] statement[] made not misleading." 601 U.S. at 263. The MTD may seek to invoke the D.D.C.'s pre-Macquarie reasoning that the Form 144 does not "request or authorize" MNPI disclosure. Under Macquarie, the duty does not arise from the form's purpose but from the act of speaking. Cohen certified he had no MNPI. Having made that voluntary affirmative representation, he was required under Rule 10b-5(b) to disclose facts necessary to make it not misleading. The D.D.C.'s pre-Macquarie analysis would come out differently under Macquarie's holding that the duty runs to statements, not to forms. The half-truth is concrete. Cohen certified he had no "material adverse information ... which has not been publicly disclosed." At the time he signed, he possessed knowledge of five categories of precisely such information: (A) supplier payment failures (disclosed 3 days later); (B) ABL facility deterioration (confirmed January 26, 2023); (C) buybuy BABY strategic nonviability (confirmed February 7-8, 2023); (D) imminent store closures (announced 15 days later); and (E) the MNPI pipeline established by the Cooperation Agreement (confirmed by the D.D.C. court). FAC Paras. 38-42; D.D.C. Opinion at 16. Each category was "material adverse information ... which has not been publicly disclosed" -- the precise information the certification denied. Under Macquarie, this is actionable. If Cohen could not disclose BBBY's confidential information, the solution

was to not sign the certification -- not to sign it falsely.

D. Mitchell Pleads Additional Reliance Theories, Including Justifiable Reliance for Count V The Basic presumption (Count I) is Mitchell's primary reliance theory. The Affiliated Ute presumption (Count II) applies to the omission-based half-truth claim as a secondary theory. In the alternative, the FAC pleads direct reliance for Count V (Nevada intentional misrepresentation): Mitchell researched BBBY's SEC filings before each purchase and relied on the absence of any corrective filing. FAC Para. 104. Mitchell's reliance for Count V was justifiable as a matter of law. SEC filings are precisely the type of document that investors are supposed to rely on. The entire purpose of the Section 13(d) regime is to inform investors about large beneficial owners' plans and intentions so that investors can make informed trading decisions. When Cohen filed Amendment No. 2 on August 16, 2022, he re-filed the entire Schedule 13D -- including the unamended Item 4 -- making Amendment No. 2 the current, operative filing on EDGAR. Mitchell did not rely on stale information. He relied on the most recent operative filing -- Amendment No. 2 -- which by its silence on Item 4 continued to represent that Cohen had no plan to dispose of his shares. Reliance on the most recent SEC filing of a company's largest outside shareholder is the definition of justifiable reliance under Barmettler v. Reno Air, Inc., 114 Nev. 441, 956 P.2d 1382, 1386-87 (1998). The FAC specifically alleges that Mitchell researched BBBY's SEC filings before each purchase and relied on the absence of any corrective filing. FAC Para. 104. At the 12(b)(6) stage, this well- pleaded allegation must be accepted as true. Iqbal, 556 U.S. at 678. The MTD's implicit argument -- that Mitchell's reliance was not justifiable because of intervening negative disclosures about BBBY -- conflates two distinct categories of information and gets the

inference backwards. The negative disclosures related to BBBY's financial condition. They did not disclose that Cohen had pre-arranged his exit with board-level MNPI. Mitchell could justifiably believe that BBBY was in financial trouble -- indeed, his restructuring thesis depended on that recognition -- while simultaneously relying on the absence of any disclosure that the company's largest outside shareholder had pre-arranged his exit on the basis of undisclosed adverse information. The worse BBBY's public condition became, the more significant the absence of any disclosure of Cohen's pre-arranged exit. An investor evaluating a distressed company's turnaround prospects naturally considers whether the company's largest shareholder exited as a spontaneous market sale or as a pre-arranged liquidation informed by material nonpublic information. Cohen's uncorrected filings -- which concealed the pre-arranged, MNPI-driven character of his exit -- were directly relevant to that calculus. BBBY's distress did not make the filing "stale"; it made the filing more important. FAC Para. 104. The question whether Mitchell's reliance was justifiable is, in all events, a fact-intensive inquiry almost never resolved at 12(b)(6). Nevada Power Co. v. Monsanto Co., 891 F. Supp. 1406, 1415 (D. Nev. 1995). Count V is brought as an individual claim by an individual plaintiff, not as a covered class action, and thus falls outside SLUSA's preemption scope. See 15 U.S.C. Section 78bb(f)(1).

IV. MITCHELL ADEQUATELY ALLEGES LOSS CAUSATION Mitchell alleges three independent loss causation tracks, any one of which is sufficient. FAC Para. 59. The MTD does not address Track One. Because the market lacked the five categories of information in FAC Paragraph 5, it mispriced BBBY throughout Mitchell's purchase period. Mitchell purchased at prices that would have been materially lower had the pre-arrangement, false certification, MNPI

OPPOSITION TO MOTION TO DISMISS

possession, Item 4 non-amendment, and denominator manipulation been disclosed. That mispricing is the causal link between Defendants' omissions and Mitchell's loss, satisfying the Dura requirement that the plaintiff allege a connection between the fraud and the economic harm.

A. Track One: Materialization of Concealed Risk (First Solar) Under Mineworkers' Pension Scheme v. First Solar Inc., 881 F.3d 750 (9th Cir. 2018), loss causation is established when "the risk that caused the loss was within the zone of risk concealed by the misrepresentations." Id. at 753-54. The plaintiff "need not show that a misrepresentation was the sole reason for the investment's decline in value." Id. at 753. Cohen concealed five categories of operational and financial risk. FAC Paras. 38-42. BBBY's Chapter 11 filing on April 23, 2023 was the terminal materialization of those concealed risks. The risks that materialized -- liquidity collapse, operational failure, and bankruptcy -- fall squarely within the zone of risk concealed by Defendants' omissions. The concealed risks are the realized losses. The MTD does not cite First Solar or argue that BBBY's bankruptcy falls outside the zone of risk Cohen concealed.

B. Track Two: Corrective Disclosures Revealing Concealed Information (Loos / BofI) Under Loos v. Immersion Corp., 762 F.3d 880, 890 (9th Cir. 2014), a corrective disclosure "need not precisely mirror the earlier misrepresentation" -- it must "reveal the pertinent truth that was previously concealed." Under In re BofI, 977 F.3d at 797, what matters is whether the disclosure reveals or confirms risks previously concealed by the fraud. Each January-April 2023 disclosure revealed or confirmed risks previously concealed by Defendants: the going-concern warning (January 5, ~30% decline, MNPI Category B); the ABL acceleration (January 25-26, ~22%

decline, Category B); the buybuy BABY abandonment (February 7-8, ~48% decline, Category C); the bankruptcy warning (March 30, Categories A, B, D); and the Chapter 11 filing (April 23, all five categories). FAC Paras. 7, 62(b)-(d). Each produced a material, directionally appropriate price decline. The nexus is not that each disclosure mentions Cohen -- the Ninth Circuit has never required that (Loos, 762 F.3d at 890) -- but that each reveals information within the categories Cohen certified he did not possess. The MTD's characterization of these as "just negative BBBY news" (ECF 107 at 15) raises a factual question. Cohen knew this "negative news" before anyone else, certified that he did not know it, and sold before the market learned it. The "negative news" is the concealed information.

C. Track Three: The Persistent Fraud Premium Under Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005), a plaintiff must allege more than purchasing at an inflated price -- the plaintiff must also allege a subsequent loss causally connected to the inflation. Id. at 342-44. Mitchell satisfies both requirements. The MTD argues that "the alleged price inflation dissipated by August 23 at the latest" (ECF 107 at 16), relying on the class action's class period end date. This assumes August 18 was a complete correction -- the central factual question in this case. The persistent fraud premium theory has doctrinal support. Nathenson v. Zonagen, Inc., 267 F.3d 400, 415 (5th Cir. 2001) (residual inflation persists where corrective disclosures are incomplete); In re Williams Sec. Litig., 558 F.3d 1130, 1137-39 (10th Cir. 2009) (partial disclosures leave residual inflation because the market adjusts only to information actually revealed). Under the inflation maintenance theory in Glickenhaus & Co. v. Household Int'l, Inc., 787 F.3d 408, 415-18 (7th Cir. 2015), a misstatement can maintain preexisting inflation by preventing the market from correcting to the true value -- which is what

Cohen's uncorrected filings accomplished during Mitchell's purchase period. If August 18, 2022 was only a partial correction -- as the FAC alleges (Paras. 2, 5-7) -- then only the inflation attributable to the single disclosed fact (Cohen sold) was removed. The remaining fraud premium -- attributable to the still-undisclosed pre- arrangement, MNPI possession, false certification, denominator manipulation, and non-amendment of Item 4 -- persisted. Whether August 18 was a full or partial correction is a factual question not resolvable at 12(b)(6).

D. The August 18, 2022 Disclosure Was Not a Complete Corrective Disclosure This is the MTD's strongest argument, and it does not succeed. The August 18 disclosure told the market one fact: Cohen sold his entire position. FAC Para. 2. The 52% decline priced the surprise of Cohen's departure. It could not price facts the market never received. Five categories of information remained undisclosed: (a) the pre-arrangement before the Amendment No. 2 filing; (b) Cohen's possession of board-level MNPI; (c) the falsity of the Form 144 certification; (d) the failure to amend Item 4; and (e) the denominator manipulation. FAC Para. 5. These are not peripheral details. They distinguish a lawful insider sale from a fraudulent one. An investor who knows only that Cohen sold sees a legitimate exit; an investor who knows he pre-arranged his sale while certifying he had no adverse information sees a fraud. See In re BofI, 977 F.3d at 797 (a false or incomplete filing that remains uncorrected on EDGAR continues to mislead).

E. The MTD's "Other Facts" Defense Cannot Be Reconciled with Its Own Arguments The MTD argues that Mitchell's losses were caused by "other facts" -- going-concern warnings, ABL defaults, and other negative BBBY

developments. ECF 107 at 14. But the MTD simultaneously contends that these same disclosures do not "correct or disclose" anything about Cohen's fraud. These positions cannot coexist. If the disclosures reveal the content of Cohen's concealed MNPI -- which they do, as each corresponds to a specific MNPI Category (FAC Para. 62) -- then they are corrective disclosures, not independent "other facts." Moreover, First Solar does not require the misstatement to be the sole cause. 881 F.3d at 753. Whether the January-April 2023 disclosures constituted independent market events or corrective revelations of concealed fraud is the type of fact-intensive inquiry that requires discovery, not dismissal.

F. BBBY's Bankruptcy Is Not a Superseding Cause A superseding cause must be unforeseeable. Lloyd v. CVB Financial Corp., 811 F.3d 1200, 1210 (9th Cir. 2016). BBBY's bankruptcy was the specific event Cohen anticipated, acted upon, and concealed. FAC Para. 65. The D.D.C. court found Cohen "just barely beat this bad news, which suggests he saw it coming." D.D.C. Opinion at 15. A defendant who foresees and conceals a risk cannot invoke its materialization as a superseding cause.

V.    THE MTD DOES NOT ADDRESS COUNT III (SCHEME LIABILITY)
The MTD devotes no substantive argument to Count III, which alleges independent deceptive conduct beyond any single misstatement. Scheme liability under Rule 10b-5(a) and (c) does not require the same showing of reliance as Rule 10b-5(b) claims, and the "in connection with" requirement is satisfied independently by the deceptive conduct alleged. Count III alleges four independent acts of deceptive conduct, each satisfying the WPP Luxembourg independence test. WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc., 655 F.3d 1039, 1057 (9th Cir. 2011): (1) Private

compliance misrepresentations to JP Morgan regarding Cohen's MNPI status -- bilateral, non-public communications distinct from any public filing. FAC Para. 45. (2) MNPI-informed exercise of approximately 2,350,000 call options while possessing board-level MNPI. FAC Para. 46. See United States v. O'Hagan, 521 U.S. 642 (1997). (3) Deliberate three-document regulatory sequencing designed to make the pre-arranged liquidation appear spontaneous. FAC Para. 47. (4) Denominator manipulation: use of a stale denominator to report ownership at 9.8% when actual ownership was 11.8%. FAC Para. 47A. Under Lorenzo v. SEC, 587 U.S. 71 (2019), and In re Alphabet Inc. Securities Litigation, 1 F.4th 687 (9th Cir. 2021), scheme liability encompasses deceptive conduct operating independently of any particular statement. Even if the Court construes the MTD's general arguments as reaching Count III, each scheme act is independently deceptive conduct distinct from the alleged misstatements in Counts I and II, and whether they constitute deceptive conduct presents a fact-intensive question not resolvable at 12(b)(6).

## VI.  THE MTD'S REMAINING ARGUMENTS LACK MERIT

A. Mitchell's $8,505 Profit Does Not Defeat Standing The MTD suggests that Mitchell's $8,505 profit from July 2022 BBBY trades undermines his concrete injury. ECF 107 at 1. Mitchell does not seek recovery for his July 2022 trades; the FAC expressly disclaims those transactions (FAC Para. 10). Mitchell's claimed injury is approximately $23,400 in losses from his January-April 2023 purchases -- a concrete, particularized economic harm satisfying Article III standing. FAC Para. 6A. A prior profitable trade does not negate a subsequent concrete injury, and the MTD cites no authority for the contrary proposition.

B. The Form 4 Timestamps Support -- Not Foreclose -- the Pre- Arrangement Theory The MTD argues that the Form 4 "detailed the time of Cohen's transactions -- thereby foreclosing the 'prearrangement' theory." ECF 107 at 17. This confuses execution with arrangement. The Form 4 shows when trades were executed, not when the arrangement with JP Morgan was initiated. The FAC's compliance timeline (Charts 1 and 2) demonstrates that a $178 million institutional block trade requires pre-trade compliance review, beneficial ownership verification, regulatory filing preparation, counterparty solicitation, and bookbuilding -- a process requiring days, not hours. FAC Paras. 29(a), Charts 1-2. The compressed execution window -- selling $178 million within approximately 36 hours of the Amendment No. 2 filing -- supports prearrangement rather than foreclosing it. Whether the trade was pre-arranged is a factual question requiring discovery.

VII. IF THE COURT FINDS ANY DEFICIENCY, LEAVE TO AMEND SHOULD BE GRANTED

The MTD requests dismissal "with prejudice and without leave to amend" -- an extraordinary request directed at a pro se plaintiff's first amended complaint that has never been dismissed on the merits. Leave to amend "shall be freely given when justice so requires." Fed.

R. Civ. P. 15(a)(2); Foman v. Davis, 371 U.S. 178, 182 (1962). "A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc); accord Eminence Capital, LLC

v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). The MTD does not argue amendment would be futile. If the Court identifies any deficiency, Mitchell can amend to add transaction-level reliance detail, additional market-efficiency statistics, and any other particularization the Court requires.

CONCLUSION The MTD asks this Court to dismiss an individual fraud claim based on a different case, a different time period, and a different theory. Mitchell's FAC alleges that Cohen certified under oath that he possessed no material adverse information about BBBY when he possessed five categories of it, sold his entire $178 million position before the market learned what he knew, and never corrected the false filings that remained operative on EDGAR throughout Mitchell's purchase period. The D.D.C. court found the certification was "itself misleading" and that Cohen "just barely beat this bad news." The MTD does not challenge scienter. It does not address Count III. It does not cite Macquarie. It does not engage with the materialization-of-risk theory. Mitchell is not the class action plaintiffs. His claims are not those claims. His theory is not that theory. His purchase period is not that purchase period. The Court should deny the Motion to Dismiss in its entirety. In the alternative, the Court should grant leave to amend.

DATED: April 14, 2026

Respectfully submitted,

/s/ Anthony Mitchell

_____

ANTHONY MITCHELL, Pro Se

618 Painted Opus Place

North Las Vegas, Nevada 89084 Telephone: (702) 884-0472 Email: RealAnthonyMitchell@gmail.com

CERTIFICATE OF SERVICE I, the undersigned, hereby certify that on April 14, 2026, a true and correct copy of the foregoing OPPOSITION TO DEFENDANT RC VENTURES LLC'S MOTION TO DISMISS was served electronically on all counsel of record and Defendant RC Ventures via CM-ECF.

Dated: April 14, 2026

/s/ Anthony Mitchell

Anthony Mitchell, Pro Se

618 Painted Opus Place

North Las Vegas, Nevada 89084

Tel: (702) 884-0472 Email: RealAnthonyMitchell@gmail.com