Kelly A. Evans, Esq. (SBN 7691)
David W. Gutke, Esq. (SBN 9820)
**EVANS FEARS SCHUTTERT MCNULTY MICKUS**
6720 Via Austi Parkway, Suite 300
Las Vegas, NV 89119
Telephone: (702) 805-0290
kevans@efsmmlaw.com
dgutke@efsmmlaw.com

Dane H. Butswinkas (*pro hac vice*)
Steven M. Farina (*pro hac vice*)
Madeline C. Prebil (*pro hac vice*)
Jenna L. Romanowski (*pro hac vice*)
**WILLIAMS & CONNOLLY LLP**
680 Maine Ave. SW
Washington, DC 20024
Telephone: (202) 434-5000
dbutswinkas@wc.com
sfarina@wc.com
mprebil@wc.com
jromanowski@wc.com
*Attorneys for Defendants RC Ventures LLC*
*and Ryan Cohen*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY MITCHELL, | Case No. 2:24-cv-01042-RFB-DJA |
| Plaintiff, | **DEFENDANT RC VENTURES LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS** |
| v. | |
| RYAN COHEN, an individual; ROBINHOOD FINANCIAL LLC, a Delaware Limited Liability Company; ROBINHOOD SECURITIES, LLC, a Delaware Limited Liability Company; ROBINHOOD MONEY, LLC, a Delaware Limited Liability Company; THE DEPOSITORY TRUST & CLEARING CORPORATION, a New York Corporation; 20230930-DK-BUTTERFLY-1, INC., a New York Corporation doing business as BED BATH & BEYOND; OVERSTOCK.COM, INC., a Delaware Corporation doing business as BED BATH & BEYOND; RC VENTURES LLC, a Delaware Limited Liability Company; SUE E. GOVE, an individual, | |
| Defendants. | |

## INTRODUCTION

Plaintiff Anthony Mitchell's opposition brief, ECF No. 108 ("Opp."), does not grapple with the authorities foreclosing his First Amended Complaint ("FAC"), instead regurgitating allegations that are too conclusory to be presumed true or demonstrably disproved by public records properly subject to judicial notice. Because the well-pled factual allegations in the FAC do not plausibly establish Mitchell's entitlement to relief, RC Ventures LLC requests the Court dismiss the FAC with prejudice.

## ARGUMENT

The allegations in Mitchell's FAC are self-defeating. Mitchell contends that Cohen submitted public forms with the Securities and Exchange Commission ("SEC") on August 16, 2022, which allegedly contained actionable misrepresentations. Specifically, Mitchell complains that the amended Schedule 13D (which Mitchell sometimes calls "Amendment No. 2") allegedly failed to disclose Cohen's "specific present plan … to dispose of BBBY securities" and the Form 144 allegedly falsely certified that Cohen did not possess material non-public information. FAC ¶¶ 26, 30. But Mitchell was unaware of the statements in Cohen's August 16th SEC filings. Compl. ¶¶ 18, 20-21. And Cohen's alleged failure to disclose his liquidation plan *did not* inspire Mitchell to hold or buy BBBY. Much the contrary, on the same day that Cohen filed the allegedly misleading SEC filings, Mitchell "sold all 500" of his BBBY shares, thereby "realizing a profit of approximately $8,505." FAC ¶ 10. Cohen then corrected the alleged falsity of the SEC filings on August 18, 2022, when he submitted SEC filings that "disclosed" the "complete sale" of his entire BBBY portfolio. *Id.* ¶ 5. That day, the market "priced Cohen's departure," and "BBBY's stock dropped approximately 52%." *Id.* ¶¶ 2, 5.

Mitchell cannot plausibly allege any cause of action based on alleged misstatements that Cohen made in August 2022 because Mitchell has no connection to, did not rely upon, and suffered no injury from those statements. Nor can Mitchell plausibly allege that any continuing fraud inflated the purchase price of BBBY stock between January and April 2023, because any supposedly concealed "misrepresentations" were immaterial as a matter of law. The scattershot protests in Mitchell's opposition brief do nothing to displace this commonsense conclusion.

1

## I.    The FAC Fails to Plausibly Allege Any Fraud That Continued After August 2022

Mitchell ironically disclaims any resemblance to the class action lawsuit on which he based his initial complaint, while in the same paragraph, relying on the class action lawsuit.  Opp. at 8-9 (quoting *In re Bed Bath & Beyond Corp. Sec. Litig.*, 687 F. Supp. 3d 1, 15 (D.D.C. 2023)). Nonetheless, the "[d]ifferent theory" Mitchell concocts to defend the FAC—that Cohen's statements caused a "persistent fraud premium arising from an incomplete corrective disclosure and continuing omissions"—is as deficient as those underlying his initial complaint.  *Id.*

Mitchell now contends that the SEC filings on August 18th, which declared Cohen's exit from BBBY, did not "complete[ly] cure" Cohen's alleged failure on August 16th to disclose his possession of nonpublic information and his plan to sell his BBBY holdings.  Opp. at 8.  This is because, in Mitchell's telling, Cohen's widely publicized departure did not reveal five alleged "facts":

(a) [that] the sale was pre-arranged before the Amendment No. 2 filing;

(b) that Cohen possessed five categories of board-level material nonpublic information ("MNPI") when he certified on Form 144 that he had none;

(c) that the Form 144 certification was false;

(d) that Cohen failed to amend Item 4 [on his Schedule 13D] to disclose the material change in his plans; or

(e) that the denominator used in Amendment No. 2 was stale.

*Id.*  Public records that are properly subject to this Court's judicial notice disentitle one of those "facts" to the presumption of truth.  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  And Mitchell failed to allege that the remaining allegations, taken as true, are material.

Start with the demonstrable inaccuracy.  Mitchell asserts that Cohen's August 16th Schedule 13D reported that Cohen owned 9.8% of BBBY's outstanding shares and was never corrected to reflect that Cohen beneficially owned 11.8% of BBBY.  FAC ¶ 5(e).  But that is false. In the Schedule 13D filed on August 16, 2022, Cohen accurately reported his then-11.8%

beneficial ownership in BBBY.  FAC, Ex. E (Aug. 16, 2022, RC Ventures Amended 13D) at 4. There is no secret "stale" "denominator."

That leaves four alleged undisclosed "facts," which Mitchell claims tainted the market for BBBY stock between January and April 2023.  The first pair of allegations contend that the market never learned Cohen was privy to "five categories of board-level material nonpublic information" on August 16, 2022, the day Cohen filed a Form 144 certifying he possessed no such information. Opp. at 8 (listing "facts" (b)-(c)).  The second pair of allegations insist that the market was unaware that Cohen "pre-arranged" the sale of his BBBY holdings and did not disclose the planned sale in the Schedule 13D filed on August 16, 2022.  *Id.* (listing "facts" (a), (d)).  Mitchell asserts that he purchased BBBY stock at artificially inflated prices between January and April 2023 because the market never learned these alleged details about Cohen's August 2022 SEC filings.  But taken as true, these allegations resoundingly fail to state a plausible claim for relief.

Turn initially to the Form 144 certification.  Under binding Ninth Circuit precedent, Mitchell failed to adequately plead that Cohen possessed material nonpublic information about BBBY.  A securities plaintiff must "state with particularity all facts" forming the basis of his complaint.  15 U.S.C. § 78u-4(b)(1).  "To plead possession" of material nonpublic information, the Ninth Circuit thus maintains "a plaintiff must allege specifically what information a defendant obtained, when and from whom he obtained it, and how he used it for his own advantage." *In re Silver Lake Grp., LLC Sec. Litig.*, 108 F.4th 1178, 1191 (9th Cir. 2024) (cleaned up).  A plaintiff cannot state a claim under this "stringent pleading standard," by alleging merely that a defendant was "entitled to special Board-level information" and obtained "material non-public information … in the context of their roles as insiders." *Id.* at 1191-92.  "Otherwise, a defendant could not respond to the complaint other than by generally denying that he ever obtained any material, adverse nonpublic information ... which he then used to trade ... securities for his own benefit." *Id.* at 1191 (cleaned up) (alterations in original).

The barebones pleadings in the FAC are legally insufficient to plead Cohen possessed material non-public information.  In an uncanny resemblance to the allegations deemed deficient in *In re Silver Lake*, the FAC conclusorily alleges that Cohen "receive[d] material, nonpublic

3

information" because he "entered a Cooperation Agreement with BBBY's board of directors on March 6, 2022." FAC ¶ 11. The FAC also alleges that "Cohen possessed, through his three Cooperation Agreement board designees, at minimum five categories of material nonpublic information about BBBY." *Id.* ¶ 83. These allegations, however, do not allege with specificity the information that Cohen received, who provided the information, when they allegedly did so, or for what purpose. Because it fails to "specifically allege the who, what, when, where, or how" that Cohen learned nonpublic information about BBBY, the FAC does not "lead[] to the strong inference that [Cohen] must have known any material non-public information." *In re Silver Lake*, 108 F.4th at 1191-92.

Allegations about the Form 144 suffer a second, fatal deficiency: Cohen's alleged possession of nonpublic information or the details of his Form 144 became completely immaterial to any reasonable investor after August 18, 2022.

Section 10(b) prohibits only *material* misstatements or omissions made in connection with the purchase or sale of securities. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) ("*Halliburton II*"). To be material "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988). This is not, as Mitchell insists, a "fact-intensive question." Opp. at 21. Courts may and do resolve materiality on a motion to dismiss. *E.g.*, *In re Silver Lake*, 108 F.4th at 1193-94. To do so, courts ask whether "there is a substantial likelihood that a reasonable shareholder would consider" the information "important" to his investment decisions. *Id.* (cleaned up).

Mitchell fails to plausibly allege that any reasonable person considering a purchase of BBBY stock in January 2023 would give any thought to—much less "consider[] it useful or significant" to know—whether Cohen possessed material nonpublic information in August 2022. *United States v. Jenkins*, 633 F.3d 788, 802 (9th Cir. 2011) (quotations omitted). Cohen's alleged possession of inside information in August 2022 says nothing about BBBY's financial performance, strategic plans, or long-term prospects in Spring 2023. It likewise bears no relevance to the wisdom of investing in BBBY in Spring 2023. Put differently, investors cared about

4

BBBY's countless dysfunctions in Spring 2023; they certainly did not care whether Cohen knew of these dysfunctions in August 2022. And to the extent that Cohen's opinion of BBBY mattered to investors in Spring 2023, the fact that Cohen sold his entire portfolio of BBBY stock and never purchased another share would have told them everything they needed to know. Mitchell therefore fails to plausibly allege that the fact of Cohen's alleged possession of nonpublic information "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic*, 485 U.S. at 231-32.

As for the second pair of allegations: Mitchell fails to adequately allege that the purported deficiencies in Cohen's August 16th Schedule 13D were material to investors after August 18th. Opp. at 8 (listing "facts" (a),(d)). The SEC filings that Cohen submitted on August 16 were rendered irrelevant two days later, when Cohen submitted SEC filings declaring he had dumped BBBY. Mitchell offers no plausible explanation why a reasonable investor in January 2023 would care whether outdated SEC filings, submitted before Cohen abandoned BBBY, contained technical deficiencies.

The legal immateriality of Mitchell's allegedly undisclosed "facts" is underscored by the deluge of material negative information that BBBY released between August 2022 and January 2023. Investors during this time learned that suppliers refused to deliver goods because BBBY could not foot its bills. Class Compl. ¶ 130. That BBBY terminated a fifth of its workforce and closed 150 stores. FAC ¶ 41; Class Compl. ¶ 199. That BBBY's sales declined 28% compared to the prior year. Class Compl. ¶ 202. And that BBBY itself doubted "the Company's ability to continue as a going concern." MTD, Ex. 5 (Jan. 5, 2023, BBBY 8-K Ex. 99) at 2; *see also* FAC ¶ 7. Against this depressing backdrop, it is simply implausible that a reasonable investor in early 2023—many months after Cohen announced his sales—would have based an investment decision on whether Cohen was obliged to disclose his sales plan on August 16, 2022.

Without an operative material misstatement or omission in effect between January 19 and April 19, 2023, Mitchell cannot sufficiently plead a securities fraud claim based on his trades during this time.

5

## II.  The FAC Fails to Plausibly Allege a Connection Between Any Alleged Misrepresentation and the Purchase of a Security

To state a claim under Section 10(b), Mitchell must allege "a connection between the misrepresentation or omission and the purchase or sale of a security." *Halliburton II*, 573 U.S. at 267.  Mitchell's attempt to establish the requisite connection is foreclosed by his concession that he did not purchase BBBY stock until five months after Cohen uttered the allegedly offending statements.  *See* MTD at 11-12.

Mitchell resists this conclusion by arguing that "[t]he Ninth Circuit does not impose a temporal proximity requirement for the 'in connection with' element." Opp. at 15 (citing *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 797 (9th Cir. 2020)).  But *In re BofI* did not say that. To the contrary, while discussing loss causation (not the "in connection with" element), the Ninth Circuit explained that "[t]he determination of whether there is a causal link includes a temporal component." *In re BofI*, 977 F.3d at 790.  True, the court cautioned that "a limited temporal gap" does not render "a plaintiff's theory … per se implausible," *id.*, but it certainly did not bless Mitchell's attempts to claim a connection to statements issued almost half a year before he purchased stock.

Mitchell also tellingly recites the Supreme Court's assertion that an allegedly fraudulent scheme is perpetrated "in connection with" the purchase of securities when the two "coincide." Opp. at 13 (quoting *S.E.C. v. Zandford*, 535 U.S. 813, 822 (2002)).  And an event "coincides" with things that "happen at the same time." Coincide, Black's Law Dictionary (12th ed. 2024). Mitchell's purchases of BBBY stock did not "happen at the same time," *id.*, as Cohen's alleged statements.  Mitchell therefore cannot establish a connection between the two.

## III.  The FAC Fails to Plausibly Allege Reliance

"Investors can recover damages in a private securities fraud action only if they prove that they relied on the defendant's misrepresentation in deciding to buy or sell a company's stock." *Halliburton II*, 573 U.S. at 263.

Mitchell cannot establish direct reliance because his complaint included allegations—which he is not at liberty to disavow—establishing that Mitchell knew nothing about Cohen's

statements until he "discovered" them during an "investigation" he conducted on or after "October 20, 2023." Compl. ¶¶ 18, 20-21; *see Reddy v. Litton Indus. Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) (holding that a plaintiff may not "contradict[] any of the allegations of his original complaint"). Mitchell also now claims that he researched BBBY's SEC filings before purchasing shares of BBBY stock. Opp. at 20. But even if Mitchell *had* contemporaneously researched BBBY's filings, it would make no difference: Cohen is responsible for the veracity of his *own* filings, not BBBY's.

Mitchell's arguments about indirect reliance fare no better. The *Basic* presumption assesses the integrity of the market at the time the defendant uttered the alleged misstatements. *See Bratya SPRL v. Bed Bath & Beyond Corp.*, 752 F. Supp. 3d 34, 63 (D.D.C. 2024). Because Cohen spoke in August 2022, *Basic* hinges on market conditions in August 2022. And Mitchell concedes that the erratic market conditions in August 2022 preclude invocation of the *Basic* presumption of reliance. Opp. at 16.

Mitchell next argues (at 18-19) that because the FAC frames Cohen's alleged misstatements as "half-truths" like those in *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257 (2024), the FAC may proceed under *Affiliated Ute*—a theory of indirect reliance reserved for claims based primarily on the omissions of material facts. *See Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999) (explaining *Affiliated Ute*). But "*Macquarie* establishes that half-truths are misrepresentations." *In re FirstEnergy Corp. Sec. Litig.*, 149 F.4th 587, 609 (6th Cir. 2025). And *Affiliated Ute* does not apply to misrepresentations. Indeed, "[e]xpanding *Affiliated Ute*" from pure omissions to misrepresentations or "half-truths would improperly grant a presumption of reliance solely by virtue of crafty pleading and claim design." *Id.* at 610. To the extent Mitchell alleged any half-truths under *Macquarie*,[1] his indirect reliance on those half-truths would be governed by *Basic*, not *Affiliated Ute*.

---

[1] As best RC Ventures can tell, the FAC *did not* allege any *Macquarie* half-truths because it does not suggest that Cohen omitted "critical qualifying information" that rendered his SEC filings misleading. 601 U.S. at 263. As Mitchell himself admits, the "solution" to this alleged

7

## IV.    The FAC Fails to Plausibly Allege Loss Causation

Mitchell's opposition underscores the FAC's fatal failure to plausibly allege loss causation. *Halliburton II*, 573 U.S. 258, 267 (2014).

Initially, Mitchell curiously complains that RC Ventures' motion to dismiss "does not address Track One" of his loss causation theory. Opp. at 21. This is not correct. The motion to dismiss comprehensively debunked Mitchell's "First Solar" "zone of risk" theory. MTD at 13 (quoting FAC ¶ 60, a paragraph entitled "TRACK ONE"). But the FAC does not allege that Cohen was at liberty—much less obligated—to disclose material nonpublic information about BBBY in his SEC filings. And the events described in "Track One" do not suggest that Cohen improperly concealed any risk. Instead, they are material negative news events concerning BBBY's failing operations, which depressed BBBY's stock price. *See* FAC ¶ 7.

Mitchell's arguments in defense of Tracks Two and Three are similarly unpersuasive.

For "Track Two," Mitchell insists that the negative news reported about BBBY from January to April of 2023 were "corrective disclosures." Opp. at 22-23. But Mitchell again fails to explain how this news corrected anything about *Cohen's* alleged misstatements. News about BBBY's "going-concern warning[,] … ABL acceleration[,] … buybuy BABY abandonment[,] … bankruptcy warning[,] … and Chapter 11 filing," Opp. at 22-23, have nothing to do with Cohen. The events certainly do not "correct" the alleged misstatement in Cohen's Schedule 13D—that he had no present plan to dispose of BBBY stock—or the allegedly false certification in his Form 144 that he did not possess material nonpublic information.

Finally, for "Track Three," Mitchell bases his "Persistent Fraud Premium" theory on the allegation that Cohen's alleged "continuing" misstatements caused an inflation of BBBY's stock price in January through April of 2023. Opp. at 23-24. But as already explained, the alleged persisting misstatements—that Cohen prearranged his stock sale or that he sold his stock while

---

misstatement "was to not sign the certification," not to disclose BBBY's nonpublic information without authority. Opp. at 19-20.

in possession of nonpublic information—were not plausibly material in January 2023 and therefore would have no effect on the stock price. *See*, *supra* pp. 4-6.

## V.    Cohen's Motion to Dismiss Addressed Count III

Mitchell cites no authority to support his incorrect assertion that "[s]cheme liability under Rule 10b-5(a) and (c) does not require the same showing of reliance as Rule 10b-5(b) claims." Opp. at 25.  In fact, "a plaintiff alleging a violation of Rule 10b-5(a) or (c) must show 'the same elements as a Rule 10b-5(b) claim.'"  *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1180 (9th Cir. 2024).  The deficiencies described in RC Ventures' motion to dismiss thus doom Count III to the same extent as Counts I-II, IV.

## CONCLUSION

For the foregoing reasons, the claims asserted against RC Ventures should be dismissed with prejudice and without leave to amend.

Dated: April 21, 2026

**EVANS FEARS SCHUTTERT MCNULTY MICKUS**

 */s/ David W. Gutke*
Kelly A. Evans, Esq. (SBN 7691)
David W. Gutke, Esq. (SBN 9820)
6720 Via Austi Parkway, Suite 300
Las Vegas, NV 89119

Dane H. Butswinkas (*pro hac vice*)
Steven M. Farina (*pro hac vice*)
Madeline C. Prebil (*pro hac vice*)
Jenna L. Romanowski (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave. SW
Washington, DC 20024

*Attorneys for Defendants RC Ventures LLC and Ryan Cohen*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on April 21, 2026, a true and correct copy of the foregoing **DEFENDANT RC VENTURES LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS** was served electronically on all counsel of record and Plaintiff Anthony Mitchell via CM-ECF.

*/s/ Faith Radford*
An employee of Evans Fears Schuttert McNulty Mickus

10